UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VANESSA BROWN, <br> as parent and next friend of the minor child, <br> E.M., <br> and <br> E.M., individually <br> 2700 Bruce Place, SE <br> Washington, DC 20020 <br><br> Plaintiff <br><br> v. <br><br> GOVERNMENT OF THE DISTRICT OF COLUMBIA: <br> A Municipal Corporation <br><br> Defendant. <br><br> Serve: <br> Robert Spagnoletti, <br> Attorney General <br> District of Columbia <br> 441 4th Street, N.W. <br> Washington, DC 20001 <br><br> and <br><br> Mayor Adrian Fenty <br> Office of the Secretary <br> 1350 Pennsylvania Avenue, N.W. <br> Washington, DC 20004 | CIVIL ACTION NO. |

**COMPLAINT**

**<u>JURISDICTION</u>**

1. Plaintiff brings this Complaint seeking relief from an adverse decision regarding the provision of a free appropriate public education, pursuant to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C.§§ 1400 *et seq*. This Court

      has jurisdiction pursuant to 28 U.S.C.§§ 1331 and 1343; and pendant jurisdiction pursuant to 5 D.C.Mun. Regs.§§ 3000 *et seq*. Declaratory relief is authorized by 28 U.S.C.§§ 2201 and 2202.

2. Plaintiff is the mother of the minor child, E.M., and they have resided in the District of Columbia during the time of the underlying administrative proceedings.

3. Defendant is a municipal corporation. As one of its governmental functions, Defendant operates the District of Columbia Public Schools System ("DCPS"). DCPS is responsible for affording children with disabilities in the District of Columbia all rights pursuant to IDEIA.

## FACTS

4. E.M.. is a twelve year-old student who was attending Stanton Elementary School in the District of Columbia at the time of the hearing.

5. The student has been determined eligible for special education services with a disability classification of Learning Disability ("LD").

6. The student's individualized education program ("IEP"), dated March 17, 2005, prescribed the following weekly services: 10 hours of specialized instruction and no related services.

7. The parent filed a due process complaint on December 20, 2005, asserting that DCPS had failed to: conduct a comprehensive occupational therapy evaluation, conduct a comprehensive adaptive vineland assessment, conduct a comprehensive psycho-educational evaluation, provide special education instruction and services while attending Orr ES, properly program the student's IEP to reflect his disability of ADHD, convene

      and conduct an appropriate IEP meeting on March 17, 2005, and develop an appropriate IEP for the 2004 and 2005 school years.

8. On March 06, 2006, a Hearing Officer's Determination ("HOD") was issued, ordering DCPS to fund the following independent evaluations: psycho-educational, Adaptive Vineland Assessment, and occupational therapy evaluation. Within 15 school days of the receipt of the last evaluation, DCPS was ordered to convene a meeting to review and revise the IEP, discuss and determine placement, discuss and determine whether compensatory education is warranted, and develop a compensatory education plan if necessary. DCPS was ordered to issue a Prior Notice of Placement within five calendar days if Placement was to a DCPS public school, thirty calendar days if Placement was to a non-public or private school, or sixty calendar days if Placement was to a residential facility.

9. The psycho-educational and occupational therapy evaluations were completed and forwarded to Stanton Elementary School.

10. The MDT convened on September 29, 2006 to review the independent evaluations and to revise the IEP. The team determined that the student required a full time, 100% Out of General Education IEP, including 27 hours a week of specialized instruction and one half hour a week of occupational therapy.

11. DCPS failed to issue an appropriate Notice of Placement at this meeting or anytime thereafter.

12. The parent filed a due process complaint on October 16, 2006, asserting that DCPS denied the student a FAPE by failing to issue an appropriate Notice of Placement, and by

      failing to discuss and determine a compensatory education plan, as prescribed in the March 06, 2006 HOD.

13. Subsequently, DCPS did convene a Resolution Meeting and did discuss compensatory education, offering 70 hours of one-on-one tutoring.

14. On December 12, 2006, a Due Process Hearing was held before Hearing Officer Terry Banks.

15. The parent presented evidence that Stanton Elementary School was an inappropriate placement, as it was "virtually impossible"[1] for Stanton to provide the services prescribed in the student's IEP.

16. The parent also submitted to the Hearing Officer that DCPS had no appropriate placement available for the student at any MDT meeting prior to the hearing, which was substantiated by the admission of the Principal of Stanton Elementary School.

17. It was also shown that the student failed to make progress at Stanton Elementary School, and in fact regressed, as evidenced by the significant decline in his educational achievement scores between his 2004 and 2006 psycho-educational evaluations.

18. Dr. Booker, an educational advocate qualified as an expert witness testified that the student's standard scores as well as his grade equivalent scores went down between 2004 and 2006. His reading score, for example, declined from 61 in 2004 to 48 in 2006, while Mathematics dropped from 69 to 58, and Written Language dropped from 73 to 68.

19. The student was accepted at Accotink Academy in Springfield, VA, where the specialized instruction and related services listed on the student's IEP could be implemented.

---

[1] HOD, December 14, 2006, at 4.

20. The Hearing Officer found that the student was denied a FAPE by the DCPS failure to provide an appropriate placement for the 2006-2007 school year, and that Accotink Academy would be an appropriate placement for the student.

21. The Hearing Officer also found that, "[i]n light of DCPS' violation of IDEIA by failing to provide an appropriate placement, Petitioner would be eligible for compensatory education services."[2]

22. Dr. Booker explained that, according to the March 17, 2005 IEP, the student had not made progress since the 2004 testing given his scores under the present levels of performance on page 2 of the IEP.

23. In her expert opinion, Dr. Booker testified that if the student had been in a full-time placement since the development of his 2005 IEP, she would have expected six months of grade equivalence improvement, instead of the regression shown in the student's testing.

24. Dr. Booker further testified that, in order to place the student in the position he would have been in but for the denial of services, the student needed a full-time specialized instructional program for specific learning disabled children, as well as a reading program in the form of tutorial services.

25. When Dr. Booker was asked whether a DCPS offer of 70 hours of one-on-one tutoring for the student as compensatory education was appropriate, she responded with a vigorous no.

26. Parent's counsel asked Dr. Booker to state with specificity what the student would need in order to place the student in the position he would have been in but for the denial of

---

[2] Id. at 5.

services.

27. In her expert opinion, Dr. Booker stated that the student required at a minimum three hours of tutorial services or reading program for every day he was not receiving the appropriate level of services.

28. Taking into account both the academic years, as well as extended school year ("ESY") services, Dr. Booker concluded that the student was owed at the very least 633 hours of compensatory education.

29. Counsel for DCPS, on cross-examination never questioned the assertions of Dr. Booker with regards to how much compensatory education was needed.

30. Counsel for DCPS confirmed that the student needed compensatory education in the form of one-on-one tutoring when he referenced the compensatory education plan offered by DCPS.

31. DCPS failed to present any witnesses to testify on the issue of compensatory education. Dr. Booker was the only witness to testify on this issue during the hearing.

32. An HOD was issued on December 14, 2006, ordering that DCPS shall issue a Prior Notice placing the student at Accotink Academy.

33. The HOD also required DCPS to convene an MDT meeting on or before February 16, 2007 at Accotink to review all current assessments, review the student's progress at Accotink, and update the IEP if necessary.  review the independent clinical evaluation and convene a MDT/IEP meeting within 15 school days.

34. The Hearing Officer failed to grant any relief in the form of compensatory education, nor did he order DCPS to convene a meeting to discuss and determine a compensatory

education plan.

## COUNT I

34. Plaintiff repeats and realleges paragraphs 1 - 33.

35. Hearing Officer Banks erred in finding that Petitioner did not allege in the Complaint that the 2005 IEP was inappropriate. In the earlier Complaint filed on December 20, 2005 the parent alleged that the 2005 IEP was inappropriate. More specifically, the Complaint alleged that DCPS failed to develop an appropriate IEP for both the 2004 and 2005 school years. The March 06, 2006 HOD that resulted from this Complaint, ordered DCPS to, among other things, convene a meeting to review and revise the IEP and discuss and determine whether compensatory education is warranted. In the October 16, 2006 Complaint in question the parent alleged that DCPS denied FAPE by failing to adhere to the February 17, 2006 HOD. The allegation that the 2005 IEP was inappropriate, therefore, was preserved by incorporation of the earlier Complaint into the current Complaint. Furthermore, Hearing Office Banks states in the HOD that in her opening statement, Petitioner's counsel stipulated that the issue of non-compliance with an HOD was no longer at issue. This is simply incorrect. In fact, there were no opening statements at the hearing, as they were waived by both parties.

## COUNT II

36. Plaintiff repeats and realleges paragraphs 1 - 35.

37. Hearing Officer Banks erred when he found that a claim for compensatory education cannot be grounded on DCPS' failure to prescribe a full-time special education program in March 2005 for the 2005-2006 school year. This assertion appears to be based on the

false conclusion that Petitioner did not allege in the Complaint that the 2005 IEP was inappropriate and the fact that the Petitioner's mother consented to the 2005 IEP. As explained above, the Complaint does allege the 2005 IEP was inappropriate. Furthermore, the mother did not retain counsel until after the 2005 IEP was drafted, and therefore she was not fully aware of the inappropriateness of the IEP, nor her ability to challenge it.

## COUNT III

38. Plaintiff repeats and realleges paragraphs 1 - 37.

39. Hearing Officer Banks erred when he denied the Petitioner compensatory education services for DCPS' failure to provide an appropriate placement for the 2006-2007 school year. The Hearing Officer incorrectly found that the Petitioner did not meet the standard for compensatory education under *Reid v. District of Columbia*.[3] Petitioner in this case, however, presented indisputable evidence in the form of expert testimony that as a result of DCPS' violation of IDEIA, the student suffered an educational deficiency, but for the violation, he would have progressed to a certain academic level, and there exists a type and amount of compensatory education that would bring him to the level he would have been but for DCPS' violation. The evidence presented by the Petitioner met the standard according to *Reid*, and as a result compensatory education should have been awarded.

## COUNT IV

40. Plaintiff repeats and realleges paragraphs 1 - 39.

41. Hearing Officer Banks erred when he found Dr. Booker's testimony violates the "hour-

---

[3] 401 F.3d 516.

for-hour" approach criticized in *Reid*, while at the same time found that her testimony was not based on empirical evidence and did not offer proof that the services would cure the deficiency. The Court in *Reid* did strike down an hour-for-hour formula approach because compensatory education awards must be based on the specific needs of the child. Dr. Booker, an educational expert, observed the student and reviewed all relevant documents in order to formulate a compensatory education plan that suits the specific needs of this child. Her recommendation was not based on a "one size fits all" formula. Furthermore, Dr. Booker testified as to how much progress the student should have made but for DCPS' violation, and that the recommended services would bring the student to the level he would have been in but for DCPS' violation, which is all that is required by *Reid*.

## COUNT V

42. Plaintiff repeats and realleges paragraphs 1 - 41.

43. Hearing Officer Banks erred when he failed to order any amount of compensatory education services, despite a previous DCPS offer for such services, simply because he did not agree with the amount of services recommended by the expert witness. When the court in *Reid* did not find the amount of compensatory education requested by the Petitioner to be appropriate, it remanded the case to the District Court in order to hear additional evidence and formulate an appropriate award. Hearing Officer Banks stated several times in the HOD that there had been a denial of FAPE, and that as a result the student suffered academic deficiencies, yet he refused to use his discretion to formulate a compensatory education plan to remedy these deficiencies.

**WHEREFORE**, Plaintiff respectfully requests this court to:

1. Issue a judgment for Plaintiff and against Defendants on all aforementioned counts;

2. Order that the December 14, 2006, Hearing Officer's Decision be reversed in part, ordering DCPS to provide compensatory education services for the period of the denial of FAPE in the amount of 633 hours as was testified to by the expert, Dr. Ava Hughes Booker.

3. Order an award of attorneys fees and costs to Plaintiff; and

4. Grant such other and further relief as the Court deems just and proper.

                      Respectfully submitted,

                      _____
                      Ellen Douglass Dalton, Esq.
                      D.C. Bar No. 411612
                      Dalton, Dalton, & Houston, P.C.
                      1008 Pendleton Street
                      Alexandria, Virginia 22314
                      (703) 739-4300 (O)
                      (703) 739-2323 (F)

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Vanessa Brown, E.M. | Government of the District of Columbia |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   D.C.
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Ellen Douglass Dalton<br>Dalton, Dalton, & Houston, P.C.<br>1008 Pendleton Street<br>Alexandria, Virginia 22314<br>(703) 739-4300 | Robert Spagnoletti,<br>Attorney General<br>District of Columbia<br>441 4th Street, N.W.<br>Washington, DC 20001 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br>Social Security:<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>Other Statutes<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | | OR | ○ F. *Pro Se General Civil* | |
|---|---|---|---|---|
| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ⦿ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
20 USC Sec 1400 et seq, Appeal of administrative due process hearing.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 2/13/07   SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# District of Columbia Public Schools

## State Enforcement and Investigation Division

Terry Michael Banks, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

Confidential

| | | |
|---|---|---|
| E̶̶̶̶ M̶̶̶̶ STUDENT | ) | Hearing Date: December 12, 2006 |
| | ) | |
| Date of Birth: March 13, 1994 | ) | |
| | ) | |
| Petitioner, | ) | Complaint Filed: October 16, 2006 |
| | ) | |
| v. | ) | |
| | ) | Held at: 825 North Capitol Street, N.E. |
| DISTRICT OF COLUMBIA | ) | 8th Floor |
| PUBLIC SCHOOLS | ) | Washington, D.C. 20002 |
| | ) | |
| Respondent. | ) | |
| | ) | |
| Student Attending: | ) | |
| Stanton Elementary School | ) | |

## HEARING OFFICER'S DECISION

Parents:  Ms. Vanessa Brown, Mother
2700 Bruce Place, S.E.
Washington, D.C. 20020

Counsel for the Petitioner:  Ellen Douglass Dalton, Esquire
Dalton, Dalton & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300; Fax: (703)739-2323

Counsel for DCPS:  Saurabh Gupta, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

An index of names is attached hereto for the benefit of the parties. The index will permit the parties to identify specific witnesses and other relevant persons. The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | E████ M████ |
| Child's Parent(s) (specific relationship) | Vanessa Brown |
| Child/Parent's Representative | Ellen Douglass Dalton, Esquire |
| School System's Representative | Saurabh Gupta, Esquire |
| Educational Advocate | Dr. Ava Booker, SASCI, Inc. |
| Principal or Desginee | Anne Warnke, Assistant Educational Director, Accotink Academy<br>Norman Brooks, Principal, Stanton E.S. |

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is a twelve year-old student attending Stanton Elementary School ("Stanton"). On October 16, 2006, Petitioner filed a Due Process Complaint ("Complaint") alleging that the District of Columbia Public Schools ("DCPS") had failed to (1) provide an appropriate placement, (2) comply with a Hearing Officer's Decision ("HOD"), and (3) provide compensatory education services. The due process hearing was convened on December 12, 2006. The parties' Five-Day Disclosure Notice were admitted into evidence. In her opening statement, Petitioner's counsel stipulated that the issue of non-compliance with an HOD was no longer at issue.

**Witnesses for Petitioner**

>Dr. Ava Booker, Educational Advocate, SASCI, Inc.
>Petitioner's Mother
>Anne Warnke, Assistant Educational Director, Accotink Academy

**Witnesses for DCPS**

>Norman Brooks, Principal, Stanton E.S.

**Findings of Fact**

1. Petitioner is a twelve year-old student attending Stanton.[1]

2. On March 17, 2005, DCPS convened a Multidisciplinary Team ("MDT") meeting. The MDT classified Petitioner with a Learning Disability ("LD") and prescribed 10 hours per week of specialized instruction. Petitioner's mother signed the Individualized Education Program ("IEP"), indicating her agreement with its provisions.[2]

3. On September 29, 2006, DCPS convened a Multidisciplinary Team ("MDT") meeting. The MDT classified Petitioner with a Learning Disability ("LD") and prescribed

---

[1] *Complaint* at 1.
[2] Petitioner's Exhibit ("P.Exh.") No. 3 at 1.

27 hours per week of specialized instruction and 30 minutes per week of occupational therapy.[3] The MDT determined that Petitioner "requires out of general ed. placement due to lack of improvement."[4] The MDT meeting notes make no mention of a discussion of an appropriate educational placement.[5]

4. It is "virtually impossible" for Stanton to provide the services prescribed in Petitioner's IEP.[6]

5. DCPS had no appropriate placement available for Petitioner at any recent MDT meeting at Stanton.[7]

6. Petitioner's educational achievement scores declined over the two year period between his 2004 and 2006 psychoeducational evaluations.[8]

7. Petitioner has been accepted at Accotink Academy in Springfield, Virginia.[9] Accotink is a private school offering special education services to children aged 5-21. All of Accotink's teachers are certified in special education by Virginia. If Petitioner were to attend Accotink, he would be in a self-contained class of eight students. His teacher would be certified in special education with a post-graduate certificate. The class includes a co-teacher who is also certified and a teacher's assistant. Petitioner would be in a language-based program where lessons are presented in a multi-sensory format. All of the students in Petitioner's class range between the first and third grade in terms of academic proficiency. Accotink employs three full-time occupational therapists who would provide the related services prescribed in Petitioner's IEP.[10]

**Conclusions of Law**

1. DCPS denied Petitioner a free appropriate public education ("FAPE") by failing to provide an appropriate placement for the 2006-2007 school year. The MDT determined at its September 29, 2006 meeting that Petitioner required a full-time special education placement. Mr. Brooks, the principal at Stanton, testified that Stanton could not meet Petitioner's needs. This is apparent from the lack of progress Petitioner made at Stanton as reflected in his declining academic achievement evaluation scores between 2004 and 2006. Mr. Brooks admitted that over two months after the MDT meeting, DCPS has not made an appropriate placement available to Petitioner. Thus, DCPS denied Petitioner FAPE.

---

[3] Petitioner's Exhibit ("P.Exh.") No. 10 at 1.
[4] Id., ¶ IX.
[5] Id., Meeting Notes.
[6] Testimony of Mr. Brooks.
[7] Id.
[8] Testimony of Dr. Booker.
[9] P.Exh. No. 17.
[10] Testimony of Ms. Warnke.

4

2. Accotink Academy would be an appropriate placement for Petitioner. It offers full-time special education services in a small-class environment with an extremely low student to teacher ratio. Thus, Petitioner will receive significant individual attention. Accotink also employs occupational therapists who can provide the related services Petitioner requires.

When a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."[11] "[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.' '...[E]quitable considerations are relevant in fashioning relief'... and the court enjoys 'broad discretion' in so doing."[12]

3. In light of DCPS' violation of IDEIA by failing to provide an appropriate placement, Petitioner would be eligible for compensatory education services.[13] Under *Reid v. District of Columbia*,[14] Petitioner had the burden of showing (1) that as a result of DCPS' violation of IDEIA, he suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation.

Hearing officers may not award compensatory education services based solely on the amount of services DCPS failed to provide.

More specifically, as the Fourth Circuit has explained, "compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student... Overlooking this equitable focus, the Reids' hour-for-hour formula in effect treats compensatory education as a form of damages – a charge on school districts equal to expenditures they should have made previously. Yet "the essence of equity jurisdiction" is "to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it..." In keeping with that principle of case-specific flexibility, we agree with the Ninth Circuit that "there is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of IDEA..."[15]

---

[11] *Florence County School District Four v. Carter*, 510 U.S. 7, 11 (1993).
[12] *Id.*, 510 U.S. at 15-16.
[13] *Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005).
[14] *Id.*
[15] *Id.*, 401 F.3d at 523-24, citations omitted.

5

Petitioner has the burden of establishing the type and amount of compensatory services that will compensate the student for the services that were denied. Absent such a showing, any award by the hearing officer would be arbitrary.

In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.[16]

Dr. Booker testified that if Petitioner had been in a full-time placement since the development of his 2005 IEP, Dr. Booker would have expected six months of grade equivalence improvement instead of the regression shown in Petitioner's 2004 and 2006 achievement scores. However, Petitioner did not allege in the *Complaint* that the 2005 IEP was inappropriate. Moreover, Petitioner's mother consented to the 2005 IEP which prescribed but ten hours of specialized instruction. Thus, a claim for compensatory education cannot be grounded on DCPS' failure to prescribe a full-time special education program in March 2005 for the 2005-2006 school year.

Petitioner would be entitled to compensatory education services for DCPS' failure to provide an appropriate placement for the 2006-2007 school year, a four month period of time. This claim is also based on Dr. Booker's testimony that she would expect Petitioner to demonstrate quantifiable progress in a full-time placement. However, Dr. Booker offered no empirical basis for her opinion. The only data available on Petitioner evinces regression over the last two years. There is no evidence of the progress Petitioner is likely to show over a finite period of time with the benefit of full-time specialized instruction. Dr. Booker testified that Petitioner is entitled to three hours of tutoring for each day Petitioner did not receive full-time services. This formulation specifically violates the "hour-for-hour" approach criticized in *Reid*. There is also no proof that these services would cure the deficiency caused by the four month denial of services. Therefore, Petitioner has not shown (1) that but for DCPS' violation, he would have progressed to a certain academic level, and (2) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation.

4. Petitioner is the prevailing party in this proceeding.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five-Day Disclosure Notices, the testimony presented at the hearing, and the representations of the parties' counsel at the hearings, this 14th day of December 2006, it is hereby

---

[16] *Id.*, 401 F.3d at 524.

6

**ORDERED**, that Petitioner is hereby placed at Accotink Academy. DCPS shall immediately issue a Prior Notice placing Petitioner at Accotink, including transportation and all other appropriate related services.

**IT IS FURTHER ORDERED**, that on or before February 16, 2007, DCPS shall convene an MDT meeting at Accotink. The MDT shall review all current assessments, review Petitioner's progress at Accotink, and update the IEP as necessary. DCPS will coordinate scheduling the MDT meeting, and any meeting in which Petitioner's placement is discussed or determined, with Petitioner's counsel, Ellen Douglas Dalton, Esquire.

**IT IS FURTHER ORDERED**, that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate Placement Specialist and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply.[17]

**IT IS FURTHER ORDERED**, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED**, that this Order is effective immediately.

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

_____
Terry Michael Banks
Hearing Officer

Date: December 14, 2006

Issued: 12/14/06

---

[17] If DCPS fails to contact counsel for Petitioner to coordinate scheduling the MDT meeting by a date that would make compliance with this Order feasible, Petitioner's counsel shall initiate telephone calls and electronic correspondence to attempt to effect compliance within the timelines set out herein.

Copies to:

Ellen Douglass Dalton, Esquire
Dalton, Dalton & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300; Fax: (703)739-2323

Saurabh Gupta, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002