UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
VANESSA BROWN, et al.,

                              )

        Plaintiffs,

        v.             )        Civil Action No.07-0368 (JDB)
DISTRICT OF COLUMBIA,

                              )

        Defendant.
_____)

## NOTICE OF FILING ADMINISTRATIVE RECORD

Defendant hereby files the administrative record in the above captioned case.

Respectfully submitted,

LINDA SINGER
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Edward P. Taptich
EDWARD P. TAPTICH [012914]
Chief, Equity, Section 2

/s/ Maria L. Merkowitz
MARIA L. MERKOWITZ [312967]
Senior Litigation Counsel
441 4th Street, N.W.
Sixth Floor North
Washington, DC 20001
(202) 442-9842
FAX - (202) 727-3625
E-mail – maria.merkowitz@dc.gov

August 13, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Vanessa Brown, as parent and next
friend of minor child, E.M., and
E.M., individually

        Plaintiffs,

        v.

District of Columbia,

        Defendant.

Civil Action No.07-0368 (JDB)

### INDEX OF RECORD

| | | |
|---|---|---|
| Certificate of Record | - | 1 |
| Hearing Officer's Determination (HOD) dated 12/14/06 | - | 2 |
| Due Process Hearing Attendance Sheet dated 12/12/06 | - | 10 |
| DCPS 5-Day Disclosure letter dated 12/5/06 w/att. | - | 11 |
|     Compensatory Education Plan dated 11/13/06 | - | 13 |
|     Site Review Consideration Form 9/29/06 | - | 14 |
|     Speech and Language Evaluation dated 10/16/06 | - | 17 |
|     Comprehensive Occupational Therapy Evaluation, 4/4/06 | - | 21 |
|     Occupational Therapy Record Review dated 4/4/06 | - | 27 |
|     Psycho-educational Evaluation dated 3/28/06 | - | 28 |
| Plaintiffs 5-Day Disclosure letter dated 12/5/06 w/att. | - | 36 |
|     Psycho-educational Evaluation dated 3/2/04 | - | 39 |

IEP dated 3/17/04 - 51

IEP dated 3/17/04 - 56

HOD issued 3/6/04 - 71

Letter from E. Douglas to Stanton ES dated 8/23/06 - 75

Psycho-educational Evaluation dated 3/28/06 - 80

Comprehensive Occupational Therapy Evaluation, 4/4/06 - 87

Email confirmation of MDT/IEP meeting dated 9/25/06 - 94

MDT/IEP meeting notes dated 9/29/06 - 95

IEP dated 9/29/06 - 97

Speech and Language Evaluation dated 10/16/06 - 104

Due Process Complaint Notice dated 10/16/06 - 108

DCPS Response to Due Process Complaint Notice - 112

Letter of Invitation dated 11/2/06 - 114

Letter from E. Douglas to Stanton ES dated 11/3/06 - 117

MDT Meeting Notes dated 11/13/06 - 118

Letter of Acceptance to Accotink Academy dated 10/24/06 - 130

Ava Hughes-Booker's Curriculum Vita - 131

Kristin Conaboy's Curriculum Vita - 134

Hearing Notice dated 11/16/06 - 138

DCPS Response to Due Process Complaint Notice, 11/2/06 - 139

Scheduling Memorandum - 144

Due Process Complaint Notice dated 10/16/06 - 147

Transcript of Hearing dated 12/12/06 - 152

# CERTIFICATION OF RECORD

### INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## *STUDENT HEARING OFFICE*
### SPECIAL EDUCATION

In the Matter RE:      M█████, E█████ vs. DCPS

Case Information:      Hearing Dates: **12/12/2006**
                       Held at: **District of Columbia Public Schools Headquarters**
                                **825 N. Capitol Street, N.E.**
                                **Washington, D.C. 20002**
                       Student Identification Number: **9059776**
                       Student's Date of Birth: █████/1994
                       Attending School: **Stanton Elementary School**
                       Managing School: **Stanton Elementary School**
                       Hearing Request Date(s): **10/16/2006**

## <u>CERTIFICATION OF RECORD</u>

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office**,

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting of all letters, pleadings, orders,

exhibits and depositions.

I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Monday, June 04, 2007.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

1

# District of Columbia Public Schools

## State Enforcement and Investigation Division

**Terry Michael Banks, Due Process Hearing Officer**
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(571) 437-7381
Facsimile: (202) 442-5556

### Confidential

|  |  |  |
|---|---|---|
| E██████ M██████, STUDENT | ) | Hearing Date: December 12, 2006 |
|  | ) |  |
| Date of Birth: ████████, 1994 | ) |  |
|  | ) |  |
| Petitioner, | ) | Complaint Filed: October 16, 2006 |
|  | ) |  |
| v. | ) |  |
|  | ) | Held at: 825 North Capitol Street, N.E. |
| DISTRICT OF COLUMBIA | ) | 8th Floor |
| PUBLIC SCHOOLS | ) | Washington, D.C. 20002 |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |
| Student Attending: | ) |  |
| Stanton Elementary School | ) |  |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| **Parents:** | Ms. Vanessa Brown, Mother<br>2700 Bruce Place, S.E.<br>Washington, D.C. 20020 |
| **Counsel for the Petitioner:** | Ellen Douglass Dalton, Esquire<br>Dalton, Dalton & Houston, P.C.<br>1008 Pendleton Street<br>Alexandria, Virginia 22314-1837<br>(703) 739-4300; Fax: (703)739-2323 |
| **Counsel for DCPS:** | Saurabh Gupta, Esquire<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E.<br>9th Floor<br>Washington, D.C. 20002 |

2

An index of names is attached hereto for the benefit of the parties.  The index will permit the parties to identify specific witnesses and other relevant persons.  The index is designed to be detached before release of this Decision as a public record.

## INDEX OF NAMES

| | |
|---|---|
| Child | E████ M█████ |
| Child's Parent(s) (specific relationship) | Vanessa Brown |
| Child/Parent's Representative | Ellen Douglass Dalton, Esquire |
| School System's Representative | Saurabh Gupta, Esquire |
| Educational Advocate | Dr. Ava Booker, SASCI, Inc. |
| Principal or Desginee | Anne Warnke, Assistant Educational Director, Accotink Academy<br>Norman Brooks, Principal, Stanton E.S. |

**Jurisdiction**

This hearing was conducted in accordance with the rights established under the Individuals With Disabilities Education Improvement Act of 2004 ("IDEIA"), 20 U.S.C. Sections 1400 et seq., Title 34 of the Code of Federal Regulations, Part 300; Title V of the District of Columbia ("District") Municipal Regulations ("DCMR"), re-promulgated on February 19, 2003; and Title 38 of the D.C. Code, Subtitle VII, Chapter 25.

**Introduction**

Petitioner is a twelve year-old student attending Stanton Elementary School ("Stanton"). On October 16, 2006, Petitioner filed a Due Process Complaint ("*Complaint*") alleging that the District of Columbia Public Schools ("DCPS") had failed to (1) provide an appropriate placement, (2) comply with a Hearing Officer's Decision ("HOD"), and (3) provide compensatory education services. The due process hearing was convened on December 12, 2006. The parties' Five-Day Disclosure Notice were admitted into evidence. In her opening statement, Petitioner's counsel stipulated that the issue of non-compliance with an HOD was no longer at issue.

**Witnesses for Petitioner**

Dr. Ava Booker, Educational Advocate, SASCI, Inc.
Petitioner's Mother
Anne Warnke, Assistant Educational Director, Accotink Academy

**Witnesses for DCPS**

Norman Brooks, Principal, Stanton E.S.

**Findings of Fact**

1. Petitioner is a twelve year-old student attending Stanton.[1]

2. On March 17, 2005, DCPS convened a Multidisciplinary Team ("MDT") meeting. The MDT classified Petitioner with a Learning Disability ("LD") and prescribed 10 hours per week of specialized instruction. Petitioner's mother signed the Individualized Education Program ("IEP"), indicating her agreement with its provisions.[2]

3. On September 29, 2006, DCPS convened a Multidisciplinary Team ("MDT") meeting. The MDT classified Petitioner with a Learning Disability ("LD") and prescribed

---

[1] *Complaint* at 1.
[2] Petitioner's Exhibit ("P.Exh.") No. 3 at 1.

27 hours per week of specialized instruction and 30 minutes per week of occupational therapy.[3] The MDT determined that Petitioner "requires out of general ed. placement due to lack of improvement."[4] The MDT meeting notes make no mention of a discussion of an appropriate educational placement.[5]

4. It is "virtually impossible" for Stanton to provide the services prescribed in Petitioner's IEP.[6]

5. DCPS had no appropriate placement available for Petitioner at any recent MDT meeting at Stanton.[7]

6. Petitioner's educational achievement scores declined over the two year period between his 2004 and 2006 psychoeducational evaluations.[8]

7. Petitioner has been accepted at Accotink Academy in Springfield, Virginia.[9] Accotink is a private school offering special education services to children aged 5-21. All of Accotink's teachers are certified in special education by Virginia. If Petitioner were to attend Accotink, he would be in a self-contained class of eight students. His teacher would be certified in special education with a post-graduate certificate. The class includes a co-teacher who is also certified and a teacher's assistant. Petitioner would be in a language-based program where lessons are presented in a multi-sensory format. All of the students in Petitioner's class range between the first and third grade in terms of academic proficiency. Accotink employs three full-time occupational therapists who would provide the related services prescribed in Petitioner's IEP.[10]

**Conclusions of Law**

1. DCPS denied Petitioner a free appropriate public education ("FAPE") by failing to provide an appropriate placement for the 2006-2007 school year. The MDT determined at its September 29, 2006 meeting that Petitioner required a full-time special education placement. Mr. Brooks, the principal at Stanton, testified that Stanton could not meet Petitioner's needs. This is apparent from the lack of progress Petitioner made at Stanton as reflected in his declining academic achievement evaluation scores between 2004 and 2006. Mr. Brooks admitted that over two months after the MDT meeting, DCPS has not made an appropriate placement available to Petitioner. Thus, DCPS denied Petitioner FAPE.

---

[3] Petitioner's Exhibit ("P.Exh.") No. 10 at 1.
[4] *Id.*, ¶ IX.
[5] *Id.*, Meeting Notes.
[6] Testimony of Mr. Brooks.
[7] *Id.*
[8] Testimony of Dr. Booker.
[9] P.Exh. No. 17.
[10] Testimony of Ms. Warnke.

5

2. Accotink Academy would be an appropriate placement for Petitioner. It offers full-time special education services in a small-class environment with an extremely low student to teacher ratio. Thus, Petitioner will receive significant individual attention. Accotink also employs occupational therapists who can provide the related services Petitioner requires.

When a public school system has defaulted on its obligations under the Act, a private school placement is "proper under the Act" if the education provided by the private school is "reasonably calculated to enable the child to receive educational benefits."[11] "[O]nce a court holds that the public placement violated IDEA, it is authorized to 'grant such relief as the court determines is appropriate.' '…[E]quitable considerations are relevant in fashioning relief'… and the court enjoys 'broad discretion' in so doing."[12]

3. In light of DCPS' violation of IDEIA by failing to provide an appropriate placement, Petitioner would be eligible for compensatory education services.[13] Under *Reid v. District of Columbia*,[14] Petitioner had the burden of showing (1) that as a result of DCPS' violation of IDEIA, he suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation.

Hearing officers may not award compensatory education services based solely on the amount of services DCPS failed to provide.

More specifically, as the Fourth Circuit has explained, "compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a give period of time to provide a FAPE to a student… Overlooking this equitable focus, the Reids' hour-for-hour formula in effect treats compensatory education as a form of damages – a charge on school districts equal to expenditures they should have made previously. Yet "the essence of equity jurisdiction" is "to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it…" In keeping with that principle of case-specific flexibility, we agree with the Ninth Circuit that "there is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of IDEA…"[15]

---

[11] *Florence County School District Four v. Carter,* 510 U.S. 7, 11 (1993).
[12] *Id.,* 510 U.S. at 15-16.
[13] *Reid v. District of Columbia,* 401 F.3d 516, 518 (D.C. Cir. 2005).
[14] *Id.*
[15] *Id.,* 401 F.3d at 523-24, citations omitted.

6

Petitioner has the burden of establishing the type and amount of compensatory services that will compensate the student for the services that were denied. Absent such a showing, any award by the hearing officer would be arbitrary.

> In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.[16]

Dr. Booker testified that if Petitioner had been in a full-time placement since the development of his 2005 IEP, Dr. Booker would have expected six months of grade equivalence improvement instead of the regression shown in Petitioner's 2004 and 2006 achievement scores. However, Petitioner did not allege in the *Complaint* that the 2005 IEP was inappropriate. Moreover, Petitioner's mother consented to the 2005 IEP which prescribed but ten hours of specialized instruction. Thus, a claim for compensatory education cannot be grounded on DCPS' failure to prescribe a full-time special education program in March 2005 for the 2005-2006 school year.

Petitioner would be entitled to compensatory education services for DCPS' failure to provide an appropriate placement for the 2006-2007 school year, a four month period of time. This claim is also based on Dr. Booker's testimony that she would expect Petitioner to demonstrate quantifiable progress in a full-time placement. However, Dr. Booker offered no empirical basis for her opinion. The only data available on Petitioner evinces regression over the last two years. There is no evidence of the progress Petitioner is likely to show over a finite period of time with the benefit of full-time specialized instruction. Dr. Booker testified that Petitioner is entitled to three hours of tutoring for each day Petitioner did not receive full-time services. This formulation specifically violates the "hour-for-hour" approach criticized in *Reid*. There is also no proof that these services would cure the deficiency caused by the four month denial of services. Therefore, Petitioner has not shown (1) that but for DCPS' violation, he would have progressed to a certain academic level, and (2) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for DCPS' violation.

4. Petitioner is the prevailing party in this proceeding.

## ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five-Day Disclosure Notices, the testimony presented at the hearing, and the representations of the parties' counsel at the hearings, this 14th day of December 2006, it is hereby

---

[16] *Id.*, 401 F.3d at 524.

**ORDERED,** that Petitioner is hereby placed at Accotink Academy. DCPS shall immediately issue a Prior Notice placing Petitioner at Accotink, including transportation and all other appropriate related services.

**IT IS FURTHER ORDERED,** that on or before February 16, 2007, DCPS shall convene an MDT meeting at Accotink. The MDT shall review all current assessments, review Petitioner's progress at Accotink, and update the IEP as necessary. DCPS will coordinate scheduling the MDT meeting, and any meeting in which Petitioner's placement is discussed or determined, with Petitioner's counsel, Ellen Douglas Dalton, Esquire.

**IT IS FURTHER ORDERED,** that in the event of DCPS' failure to comply with the terms of this Order, Petitioner's counsel will contact the appropriate Placement Specialist and the DCPS Office of Mediation & Compliance to attempt to bring the case into compliance prior to filing a hearing request alleging DCPS' failure to comply. [17]

**IT IS FURTHER ORDERED,** that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED,** that this Order is effective immediately.

**Notice of Right to Appeal Hearing Officer's Decision and Order**

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy within ninety (90) days of the entry of the Hearing Officer's Decision, in accordance with 20 U.S.C. Section 1415(i)(2)(B).

_Terry Michael Banks_
Terry Michael Banks
Hearing Officer

Date: December 14, 2006

Issued: _____

---

[17] If DCPS fails to contact counsel for Petitioner to coordinate scheduling the MDT meeting by a date that would make compliance with this Order feasible, Petitioner's counsel shall initiate telephone calls and electronic correspondence to attempt to effect compliance within the timelines set out herein.

Copies to:

Ellen Douglass Dalton, Esquire
Dalton, Dalton & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
(703) 739-4300; Fax: (703)739-2323

Saurabh Gupta, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

## ATTENDANCE SHEET

**STUDENT'S NAME:** E~~█████~~ M~~██████~~

**SCHOOL OF ATTENDANCE:** Stanton Elementary

**D.O.B:** ~~████~~194

| | | |
|---|---|---|
| **HEARING DATE:** 12/12/06 | **ROOM:** 8115 | **TIME:** 9:17 ~~A.M.~~/P.M. |

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Ellen Douglass Dalton | Student | Attorney |
| Vanessa Brown | student | Mother |
| Saurabh Gupta | DCPS | Attorney |
| Dr. Ava Hughes Booker | Student | Educational Advocate |
| Anne Wernke | Student | Asst. Ed. Dir., Accotink |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

_Terry M. Banks_
Impartial Hearing Officer

Revised 10/17/2006                10



*SHO*

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

**Office of the Superintendent**
Office of the General Counsel
825 North Capitol Street, N.E., 9ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-5000   Fax: 202-442-5098
www.k12.dc.us

December 5, 2006

Ellen Douglas Dalton
1008 Pendleton Street
Alexandria, VA 22314-1827

**5 – DAY DISCLOSURES**

**VIA FACSIMILE (703) 739-2323**

| | |
|---|---|
| **Subject:** | **Due Process Complaint for E▮▮▮ M▮▮▮** |
| **DOB:** | ▮▮▮94 |
| **Attending School:** | **Stanton Elementary School (ES)** |

Dear Ms. Dalton:

At the upcoming due process hearing in the above-referenced matter scheduled for Monday, December 5, 2006 at 9:00 a.m. or any subsequent hearing, and pursuant to 20 USC § 1214 (Individuals with Disabilities Education Improvement Act of 2004) and 34 C.F.R. 300.509(a)(3), in addition to any documents and witnesses disclosed by the parent, DCPS may rely upon any of the following witnesses/documents[1], in addition to any documents and/or witnesses previously disclosed by any party for any earlier hearing for this student and/or compelled below:

**Witnesses:**

1. Marla C. Oakes, Director of Special Education, DCPS and/or designee(s) - 825 North Capitol Street, N.E., Washington, D.C.  20002; (202) 442-4800 – *same for all Central Office staff*;
2. Michael Snipes, Assistant Superintendent, Division 6, DCPS and/or designee(s) - *Central Office staff*
3. Norman Brooks, Principal Stanton ES, and/or designee(s) – *2701 Naylor Rd., 20020, 202-645-3255- same for all Stanton ES staff*;
4. Brenda Kelly, Special Education Coordinator, Stanton ES, and/or designee(s) - *Stanton ES staff*;
5. Occupational Therapists, Stanton ES, and/or designee(s) - *Stanton ES staff*;
6. Enoch's current and/or former Special Education Teacher(s), and/or designee(s) - *Stanton ES staff*;
7. Registrar and/or Attendance Counselor or equivalent(s), and/or designee(s) - *Stanton ES staff*;

**Pursuant to 34 C.F.R. 300.509(a)(2) and 5DCMR 3031.1(b), DCPS hereby compels the attendance of the below named individual as a necessary and material witness(es):**

---

[1] Witnesses may testify by telephone.

11

Page Two
December 5, 2006
RE:   Due Process Hearing for E█████ M█████

1.    Ms. Vanessa Brown, Parent/Guardian

**Documents:**

| | |
|---|---|
| DCPS-01 | Compensatory Education Plan (11/13/2006) |
| DCPS-02 | Site Review Consideration Form (9/29/2006) |
| DCPS-03 | Speech and Language (10/16/2006) |
| DCPS-04 | Comprehensive Occupational Therapy (4/4/2006) |
| DCPS-05 | Occupational Therapy Record Review (4/4/2006) |
| DCPS-06 | Psychoeducational Evaluation (3/28/2006 |

DCPS reserves the right to object to expert testimony by any witness whose curriculum vitae has not been disclosed to the Office of the General Counsel for DCPS at least five (5) business days prior to the hearing.

DCPS also reserves the right to examine any witnesses called or identified as a potential witness by the representative of the student as though the witness was called by DCPS.

DCPS furthermore reserves the right to rely upon and /or use any documents/witnesses presented and/or disclosed by the parent that DCPS deems relevant in this case.  Also, DCPS reserves the right to call rebuttal witnesses in its case.

If you wish to discuss any aspect of this case further, or have questions, please contact me at (202) 442-5178.

Sincerely,

Saurabh Gupta
Attorney Advisor

cc: Student Hearing Office

## COMPENSATORY EDUCATION PLAN*

**Section 1.**

Student Name ~~E____ M____~~ DOB ~~__/__/94~~ Sex _Male_ Grade _6th_

Age _12_ Date of IEP _9/29/06_ Date of Proposal _11/13/06_ Home School _Stanton_

Attending School: _Stanton_ Disability: _Learning Disability_

Language _English_ Address: _2700 Bruce Place, SE_

Parent Name: _Vanessa Brown_ Phone(H): _202 610-4760_ (w): ___

Instructional/Related Services Missed: _Specialized Instruction_

Time Period for Delay/Disruption: _March 2004 - November 2006_

Description of Compensatory Education due to ___ HOD** ___ SA** ___ other: DCPS agrees to provide

_Student will receive one-to-one tutoring for time missed in specialized instruction [and 8 hours of compensary time in OT_

**Section II- Compensatory Education Services to be Provided:**

| Skill Areas | Provider | Beginning Date | Duration |
|---|---|---|---|
| Reading | Special Education | 12-2006 | ~~70 hrs. for~~ all areas |
| Math | Special Education Tcuh | 12-2006 | ~~70 hrs.~~ 8/R |
| Written Expression | special Education Tcuh | 12-2006 | ~~70 hrs.~~ 8/R. |
| | | | |

Parent Signature: _____  Principal Signature: _____

MDT Members: _Brenda Kelly_   Position: _Special Ed. Coordinator_
_Wilbert Jones_   _Special Education Teacher_
_E-7 Program Head_   _School Psychologist_
_Annette Dot_   _Social Worker_

**Section III- Signatures for Services Rendered:**

| Provider | Service | Total Hrs. Recd | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Principal Signature: _____  Date _____

**Section IV-** If the services on the plan are not completed by the end of the school year, or if the student transfers before the services are concluded, the IEP/MDT completes the bottom portion of this proposal, attaches the proposal, lesson objectives, and progress report to the new or current IEP, and files the IEP in the student's special education folder. For the transferring student, the special education records, inclusive of the IEP and compensatory education documents, are forwarded to the receiving school. Copies of documents must be forwarded to the Mediation and Compliance Unit.

| Services | Frequency Hr/Min Wk/Mo | Setting | Total Hrs. or Wks. Of Service Remaining |
|---|---|---|---|
| Specialized Instruction | | | |
| | | | |
| | | | |

*Complete a MDT/IEP Meeting Note Page and attach meeting page and Compensatory Education Plan to IEP. Copy of the Plan must be forwarded to the Mediation and Compliance Unit, Division of Special Education within five (5) school days. **HOD/SA must be attached.

*Parent was present along w/ her attorney and will notify DCPS whether she agrees to Comp Ed Plan

_Vanessa Brown_
_Ellen Douglass Dalton_

13

# District of Columbia Public Schools
## Site Review Consideration Form
### SRC Attachment A

**Student Demographic Information:**
Student Last Name: M▮▮▮  First Name: E▮▮▮
DOB: ▮▮-94  Age: 12  Student ID#: 9059776  Grade: 6th
Current School: Stanton  Current Disability: Learning Disability
Neighborhood School: Stanton ES  Is the Student a Ward? _____

**Upcoming Meeting Information:**
What is the purpose of the next meeting?    What is the date of the next meeting?
_____ Review/Revise IEP                   _____
__✓__ Discuss Placement
_____ Possible Change in Disability
_____ Possible Change in Setting (in general ed/combination/out of general ed)

**Most Recent IEP Information:**
What is the date of the most recent IEP: 9/29/06
What are the total hours of service on the current IEP: 27.5
What is the % of time NOT in general education on the current IEP: 100%

**Current Evaluation Information:**
What evaluations are included in the current packet?

| | Within 1 Year | Within 3 years | | Within 1 year | Within 3 years |
|---|---|---|---|---|---|
| Educational Evals | | | Psychological Eval | 3/28/06 | |
| Speech/Language | 10/22/2006 | | Occupational Ther. | 4/4/06 | |
| Social History | | | Clinical Eval. | | |
| Physical Therapy | | | Audiological | | |
| Psychiatric | | | Neurological | | |
| Functional Bx (FBA) | | | Adaptive Bx (Vineland) | | |
| Vocational Assmt | | | Other: | | |

**Pending Evaluation Information:**
What evaluations are in process and will be completed for review prior to the next meeting?

| | | | | | |
|---|---|---|---|---|---|
| Educational Evals | _____ | Psychological Eval | ____ | Speech/Language | ____ |
| Occupational Ther. | _____ | Social History | _____ | Clinical Eval. | _____ |
| Physical Therapy | _____ | Audiological | _____ | Psychiatric | _____ |
| Neurological | _____ | Functional Bx (FBA) | ___ | Adaptive (Vineland) | ___ |
| Vocational Assmt | _____ | Other: | _____ | Other: | _____ |

**Legal Information:**
Are there any legal action(s) on this case?
_____ Complaint Filed    _____ Pending Hearing    _____ Family/Court Case

Please list any sites to be considered as identified by the parents or through legal action (listed in HOD or Complaint Notice):

**PAGE 2 of THIS FORM MUST BE COMPLETED AND INCLUDED WITH SUBMISSION**

## District of Columbia Public Schools
## Site Review Consideration Form
### SRC Attachment A

Student Name: ~~F█████ M█████~~          Student ID#: 9059776

Does the team anticipate that any of the following will occur at the next meeting:
Change in Disability:  From _____  To _Full time Placement_
Change in Setting:  From: _____  In General Ed          To: _____  In General Ed
                    _____  Combination                  _____  Combination
                    ✓  Out of General Ed                 _____  Out of General Ed
Other Factors that would Impact Site (Please describe in detail):

If the team anticipates that the student will require a **more restrictive environment**, please indicate what interventions have been attempted and the outcomes by completing the following chart:

If the team anticipates that the student will require a **lesser restrictive environment**, please indicate what interventions have been successful in the current setting by checking interventions used:

| (X) | Interventions | Duration | Results |
|---|---|---|---|
| X | Instructional Accommodations (Specify): | Daily for 10 mths | Modifications, assistance with level assignments |
| X | Modified Curriculum (Specify): Special Education | Daily | More classroom Participation |
| X | Modified Materials (Specify): | Daily for 10 mths | Complets more classroom assignments |
| | Daily Homework Chart | | |
| X | Evidence of Differentiated Instruction (Specify): | Daily | assistance |
| | Modified Schedule (Specify): | | |
| X | Review/Revise IEP (prior to request for change in LRE) | 10 mnths | |
| | Functional Behavior Assessment | | |
| | Implementation of Behavior Intervention Plan | | |
| | Revision of Behavior Intervention Plan | | |
| | Referral for Community Based Services | | |
| | Daily Behavior Chart | | |
| | Behavioral Contract | | |
| X | Positive Reward System | ✓ | helpful for student (motivation) |
| X | Flexible Seating | Daily | |
| | Rearranging Physical Setting | | |
| | Peer Mentoring | | |
| | Self or Assisted Time Out System | | |
| | Parent Conferences | | |

The student packet must contain documented evidence that the interventions identified have been implemented in order for the packet to be considered sufficient.

Is attendance an issue with this student?  _____ YES    ✗ NO

# District of Columbia Public Schools
## Site Review Consideration Form
### SRC Attachment A

**Page Three**

Name: E███ M███            Student ID#: _9059776_

**Please provide any additional comments or information that will assist in determining an appropriate site:**

**Recent Behavior:** E███ is normally friendly, outgoing and outspoken. E███ disability sometimes impacts his behavior and classroom performance. He is not violent or disrespectful but, defiant.

**Recent Academic Functioning:** E███ is functioning below grade level in all academic areas (Math, Reading and Written Expression).

**Current Medication:** N/A

**Current Other Health Needs:** N/A

**Other Relevant Information:**

Updated October 11, 2005          Private and Confidential – For Internal Use Only          3 of 4

16

# SPEECH AND LANGUAGE EVALUATION
## Department of Special Education

Name: ██████ M██████
Date of Birth: ████/1994
Chronological Age: 12;7
School: Stanton Elementary School
Date of Evaluation: 10/16/2006
Date of Report: 10/22/2006

**Reason for Referral:**
E████ is a 12;7 month old male who was referred for a speech/language evaluation due to academic concerns and to determine the current special education needs of this student, if warranted.

**Behavioral Observations:**
E████ accompanied this clinician to the testing room without difficulties. He responded to and initiated conversation with this examiner and was cooperative throughout the session. At times, he appeared to be easily distracted. However, he was easily redirected back to all tasks presented.

**Tests Administered:**
*Clinical Evaluation of Language Fundamentals-Fourth Ed.* (CELF-4)
*Expressive One-Word Picture Vocabulary Test* (EOWPVT)
*Receptive One-Word Picture Vocabulary Test* (ROWPVT)
Language Sample

## VOCABULARY

The *Receptive One-Word Picture Vocabulary Test* was administered to the student. The student is presented with a series of test plates that show four illustrations. The examiner orally presents a stimulus word and the student must identify the illustration that shows the meaning of the word.

Mean: = 100; Standard Deviation: = 15
Average Score: = 85- 110
Standard Score = 83

**DCPS - 03**

Interpretations/Comments: E████ achieved a standard score of 84, indicating slightly below average performance in receptive vocabulary skills.

The *Expressive One-Word Picture Vocabulary Test* (EOWPVT)
The student was presented with a series of illustrations that each depicts an object, action, or concept. The student is asked to name each illustration.

Mean: = 100; Standard Deviation: = 15
Average Score = 85-100

Standard Score: = 73

Interpretation/ Comments: The EOWPVT was administered to assess single word expressive vocabulary. B████ achieved a standard score of 73, indicating below average performance in expressive vocabulary skills. During the administration of the test, E████ was able to label some illustrations up to the 9-year old range. He often verbalized details about the picture (i.e., that's the thing you put on the horse instead of using the word saddle). E████ was engaged throughout the administration of this test.

LANGUAGE

The *Clinical Evaluation of Language Fundamentals-4* (CELF-4) was administered to assess E████ receptive and expressive language skills, especially word meanings (semantics), word and sentence structure (morphology and syntax), and recall and retrieval (memory). The scores were as follows:

| SUBTESTS | Scaled Scores Average score= 10 +/- 3 |
|---|---|
| Recall Sentences | 7 |
| Formulated Sentences | 9 |
| Word Classes – Total | 4 |
| Concepts and Following Directions | 7 |
| Word Definitions | 6 |
| Understanding Spoken Paragraphs | 5 |
| Core Language Score = 79 | |

Average = 100 +/- 15

Receptive Language Score = 70

Expressive Language Score = 83

Language Content = 66

Language Memory = 84

Overall, E███ presented with a mild-to-moderate delay on this test of receptive and expressive language. While E███ presented with stronger skills in language structure,

The Recalling Sentences subtest asks the student to repeat verbatim sentences of increasing length ad linguistic complexity. It is designed to examine short-term auditory memory for sentences and to provide a glimpse of underlying syntactic knowledge. Enoch scored in the average range on this subtest.

The Formulated Sentences subtest assesses the student's ability to formulate simple, compound and complex sentences given one-word stimuli and later short phrases. For each item, the student is shown a picture and is asked to use the stimulus word or phrase in a sentence about the picture. The sentences are scored for being semantically meaningful and grammatically correct. E███ scored in the average range for his age indicating a strength in organizing and producing sentences.

On the Word Classes subtest, for each stimulus item, the student is orally presented with three, and later, four words. The student is asked to choose the two that go together best (receptive) and how they are related (expressive). The relationship between the words may be part/whole, semantic class, synonym, or antonym. E███ scored in the moderate low range for his age.

Word Definitions subtest for each stimulus item is presented orally in a sentence. The student is then instructed to define the word or tell what the word means by either telling what kind of thing it is or telling some things about it. E███ scored below average on this subtest. Weaknesses in this area suggest that he has difficulty with knowledge of definitions of words without context.

The Understanding of Spoken Paragraphs subtest was administered to examine the student's ability to interpret factual and inferential information presented in spoken paragraphs. The student is presented with three paragraphs read orally which may not be repeated. Then five questions pertaining to each paragraph are read orally. These questions may be repeated in association with the paragraph. E███ performed in the moderately low range and indicates difficulty with comprehension of main ideas. It is the

opinion of this examiner that E███ did not listen actively on this subtest due to the content of the story. He stated that it was boring and was observed looking around the room as the story was read aloud.

The clinician later read 2 additional stories aloud that were of interest to E███ and he performed within the average range. Therefore, it is the opinion of this examiner that E███ score on the spoken paragraphs subtest is not a reflection of his true abilities.

## LANGUAGE SAMPLE

An informal sample was obtained throughout this assessment during rapport building and in-between test and/or subtests. E███ articulation was judged to be good and he spoke in simple and complex sentences. Based on his spontaneous sample, E███ ability to communicate his ideas was age-appropriate.

The areas of voice and fluency are within normal limits as determined by this assessment data and observations.

## SUMMARY AND IMPRESSIONS

E███ is a 12 year 7 month old male sixth grade student who is currently attending Stanton Elementary School. Overall, E███ presented with significant deficits in the area of vocabulary. Receptive and expressive language abilities also fell within the mild-to-moderate range. Strengths were revealed in his ability to follow directions, recall sentences, formulate sentences and understand orally presented information. Weaknesses were demonstrated in the areas of word definitions, receptive and expressive vocabulary skills.

Based on today's findings, E███ presents with vocabulary and reading weaknesses that impact on his educational performance in the classroom. It is suggested that he participate in a language arts program that will enhance his reading and vocabulary awareness. Speech and language intervention is not recommended at this time.

Respectfully submitted,

Ingrid L. Goganious
**Speech and Language Therapist**

**CONABOY AND ASSOCIATES, INC.**
*Resources for Children and Families*
705 8th St. SE
Suite 200
Washington, D.C. 20003
Kristin@conaboy.com – www.conaboy.com
Phone 202.544.2320 Fax 202.544 2321

## COMPREHENSIVE OCCUPATIONAL THERAPY EVALUATION

**Name:** E███ M█████
**Date of Birth:** ███/94
**Chronological Age:** 12 years, 1 month

**School:** Stanton E.S.
**Therapist:** Lori C. Plumb, OTR/L
**Date of Evaluation:** 04/04/06

**Background Information:** E███ is a twelve year, one month old student who is currently attending Stanton Elementary School in Washington, D.C. E███ was evaluated at the request his attorney, Talib Abdus Shahid, Esq. Records indicate E███ has had difficulty with academic progression within the school environment. A Psycho-Educational Evaluation administered on March 2, 2004 found E███ cognitive functioning in the Borderline Range and his academic achievement scores between the Borderline and Deficient Ranges. Records indicate E███ has a history of Attention Deficit Hyperactivity Disorder and he has taken medication for this condition in the past. E███ reported he is currently taking medication once a day.

A Comprehensive Occupational Therapy Evaluation was recommended to identify E███ current levels of functioning and to determine his need for Occupational Therapy Intervention. This evaluation should be used in part to support E███ educational needs and to enhance his classroom performance.

### Evaluations Administered:
- Clinical Observations
- Review of records
- School Age Checklist for Occupational Therapy—not returned by school
- Bruininks-Oseretsky Test of Motor Proficiency- Fine Motor Subtests
- The Beery-Buktenica Developmental Test of Visual Motor Integration (VMI)
- The Test of Visual Perceptual Skills (non-motor)– Revised (TVPS)
- Items from the Evaluation Tool of Children's Handwriting – (ETCH)

**Clinical Observations:** E███ was evaluated within his school environment. He transitioned willingly to the testing room and to this unfamiliar examiner. E███ was cooperative, friendly, and polite. He demonstrated no difficulty remaining on task or remaining appropriately in the chair. He appeared focused and concentrated on each item presented to him. E███ was helpful with the set-up and clean-up of the testing materials. He negotiated the testing and school environments independently. Throughout the evaluation, E███ attempted all tasks presented to him and appeared to be trying his best. Therefore, the following is felt to be an accurate reflection of E███ true abilities.

E███ M█████
Occupational Therapy Evaluation
Page 2 of 7

- **Behavior:** In the one on one, quiet testing environment, E████ responded appropriately to this examiner. At times, E████ required clarification on multi-step directions. He appropriately asked for clarification when needed. During the two hour duration of testing, E████ demonstrated no difficulty following the behavioral expectations of the evaluation. E██████ cooperation, politeness, and eagerness make him a pleasure to test.

- **Sensorimotor Functioning:** Successful sensorimotor functioning is the ability to take in, interpret, and use information from the environment appropriately. E████ is able to process and respond appropriately to sensory information (tactile/touch, vestibular/movement, proprioceptive/information from muscles and joints, and visual information) from his environment.

- **Motor Proficiency:** Gross motor skills (movements of the large muscles) were informally assessed through the use of consultation and observations. E████ demonstrated appropriate gross motor skills to function within the school environment. E████ displayed the ability to independently ambulate to and from the main office and the testing environment. He ascended and descended two flights of stairs independently and safely without difficulty. Continued exposure to sports and physical activity is crucial to help ensure appropriate development of gross motor skills.

Fine motor skills (movements of small muscles) were assessed using the Bruininks-Oseretsky Test of Motor Proficiency.    When compared to other students his age, Enoch achieved skills as follows:

Bruininks-Oseretsky Test of Motor Proficiency

| SUBTEST | AGE EQUIVALENT | STANDARD SCORE | DEFINITION OF TERMS | PERFORMANCE RANGE |
|---------|----------------|----------------|---------------------|-------------------|
| Response Speed | 15 years, 11 months+ | 26 | Ability to respond quickly to a moving stimulus | High |
| Visual Motor Control | 15 years, 8 months | 18 | Cutting and drawing lines within narrow boundaries. Copying geometric shapes. | Average |
| Upper-Limb Speed and Dexterity | 17years, 2 months | 12 | Arm and hand speed and control with small items: pegs, coins, cards, beads, and quick pencil tasks. | Average |
| | | | Overall Fine Motor Skill Performance  = | Above Average |

- **Interpretation:** According to the Bruininks-Oseretsky Test of Motor Proficiency, E██████ overall fine motor skills fall within the above average range when compared to other children his age. He demonstrates right hand dominance and holds his pencil with a functional quadropod (pencil resting on ring finger) grasp. E████ displayed proper posture for table-top tasks and stabilization of the paper with his left hand. E████ displayed age appropriate scissor skills while cutting out a two inch circle. He held the scissors in his right hand with a proper grasp. While cutting, E████ demonstrated proper manipulation of the paper with his left hand. He cut out a two inch circle along a thin bold line with no deviations. While drawing through narrow paths, E████ demonstrated no deviations off basic crooked and straight paths and one deviation off a basic curved path. He was able to copy a circle, triangle, and horizontal diamond with full credit but had more difficulty copying the more complex overlapping pencils. On the Upper Limb Speed and Dexterity subtest, E████ was able to complete all the tasks

E████ M████
Occupational Therapy Evaluation
Page 4 of 7

The Developmental Test of Visual-Motor Integration

| Category | VMI Overall | Visual Percept. Section | Motor Section |
|---|---|---|---|
| Raw Scores | 17 | 20 | 22 |
| Standard Scores | 69 | 75 | 81 |
| Scaled Scores | 4 | 5 | 6 |
| Percentiles | 2 | 5 | 10 |
| Age Equivalents | 6 years, 3 months | 7 years, 0 months | 8 years, 0 months |
| Performance Range | Very Low | Low | Below Average |

- **Interpretation:** As revealed in E████ scores, he exhibits overall visual motor integration skills within the very low range. The overall VMI required E████ to integrate both visual and motor information to copy a series of increasingly complex shapes. The visual component required E████ to choose one geometric form among competing forms to match the initial stimulus. The motor component required him to trace the stimulus forms accurately, without going outside double-lined paths. On the overall section, E████ required verbal cues to take his time on each item. He demonstrated difficulty on forms with overlapping shapes and more complex angles and scored within the very low range. He had difficulty integrating both visual and motor information. E████ scored in the low range on the visual perceptual section indicating difficulty attending to specific details and matching. On the motor section, E████ had difficulty with refined pencil control and scored within the below average range. Throughout, the visual perception and motor coordination sections, E████ required verbal cues to take his time and maintain an organized approach to the tasks. When more specifically assessed, his visual motor integration is found to be within the very low range. This is consistent with the quality of his output observed on the Bruininks-Oseretsky Test of Motor Proficiency. Difficulties in the area of visual motor integration, may impact E████ ability to copy items off the board, line-up math problems, complete graphs and charts, organize materials, and overall handwriting production.

The TVPS-R was additionally administered to assess further E████ visual perceptual skills. Visual perceptual skills are the ability to perceive, process, and respond to objects. It is the capacity to interpret or give meaning to what is seen. E████ was asked to look at several pictures, listen to specific directions, and choose the appropriate answer. The results are as follows:

Test of Visual Perceptual Skills (non-motor) – Revised

| Category | Standard Scores AVG=100 | Scaled Scores AVG=10 | Percentile Ranks AVG=50 | Definition of Terms |
|---|---|---|---|---|
| Visual Discrim. | 99 | 10 | 47 | To visually perceive differences and match forms. |
| Visual Memory | 101 | 10 | 53 | Remember characteristics of form for immediate recall and being able to find among other forms. |

E█████ M█████
Occupational Therapy Evaluation
Page 5 of 7

| Visual Spatial Relations | 109 | 12 | 73 | To be able to differentiate among similar forms which form or part is going in a different direction. |
|---|---|---|---|---|
| Visual Form-Constancy | 102 | 10 | 55 | Ability to recognize basic form despite difference in size, shape, and/or orientation. |
| Vis. Seq. Memory | 122 | 14 | 93 | Remember series of forms for immediate recall to find among competing series. |
| Visual Fig. Ground | 105 | 11 | 63 | Perceive form visually and to find hidden among other forms. |
| Visual Closure | 84 | 7 | 14 | Determine among unfinished forms the one that is the same as a completed form. |

- **Interpretation**: According to the TVPS-R, E████ presents with overall visual perceptual skills in the average range when compared to other children his age. He received a Perceptual Quotient of 104, placing him in the 60th percentile. E████ scored within the average range on six of the seven subtests. Relative weakness was noted in the area of Visual Closure as he scored within the below average range. E████ seems to have difficulty with closure on related school based tasks such as handwriting. This relative weakness may impact his ability to be efficient with writing and related tasks.

- **Summary**: E████ is a twelve year, two month old student who currently attends Stanton Elementary School in Washington, DC. According to records, E████ has demonstrated difficulty with academic progression within the classroom. Throughout the evaluation in the one to one environment, E████ was cooperative, friendly, polite, and well behaved. E████ displays adequate sensory processing skills. His gross motor skills appear to be within the average range and are functional for the school environment. E████ overall fine motor skills are within the above average range, however the quality of his performance on the visual motor subtest is below what would be expected of student's his age. When more specifically assessed, his overall visual motor integration is found to be within the very low range and can negatively impact upon his ability to produce written work or to copy accurately. Visual perceptual skills are felt to be in the average range when compared to other children his age with a relative weakness noted in visual closure skills. E████ presents with low average manuscript handwriting skills, however has difficulty with letter formation and uses an inefficient bottom to top approach when writing. Rate of production and writing fluency is below what would be expected. It should be noted that many student's E████ age have learned to use cursive writing.

E████ appears as a compliant student who responded well to support, verbal encouragement, and positive reinforcement. E████ currently presents as a student with visual motor integration within the very low range, below average writing fluency, and difficulties with academic progression. Therefore, he will benefit from school based Occupational Therapy one time a week for 30 minutes. Occupational therapy service should be incorporated within E████ classroom and home environments to increase his overall functioning and improve performance within school.

- **Recommendations:**
1. Team: Review of this report with classroom staff, related service providers, and caregivers.

E███ M█████
Occupational Therapy Evaluation
Page 6 of 7

2. **Occupational Therapy:**
   An Occupational Therapist should provide direct OT services for 1 x 30 minutes a week to improve E█████ visual motor integration and writing fluency to assist with improving academic progression. The Occupational Therapist should collaborate with E█████ teacher to discuss compensatory strategies for classroom assignments to improve success in academics and functional classroom performance.
   Intervention should be well integrated into the classroom and home environments to promote carryover and skill development. The focus of the intervention should be:
   a. Improve Visual Motor Integration.
   b. Improve overall handwriting, closure, and fluency. The use of a structured cursive program is recommended. *Handwriting Without Tears* is one good option and is available at www.hwtears.com, phone 301-983-8409, and fax 301-983-6821.
   c. Improve organizational skills.

3. **Classroom Accommodations:**
   a. Encouragement to maintain proper desk and writing posture (appropriate chair and desk height, hips and knees at ninety degrees, feet flat on the floor, upright trunk, opposite hand stabilizing paper, proper paper tilt).
   b. Positive reinforcement (i.e. small rewards, movement breaks) when work is completed in an accurate and efficient way.
   c. E█████ may benefit from preferential seating at the front of the class.
   d. A clear letter strip to reference for letter formation.
   e. A near-point model for E█████ to work from to assist with copying items from the board.
   f. A well organized, neat, and clear chalkboard or dry erase board.
   g. Increased time to complete and proofread writing assignments.
   h. Adapted paper to assist with lining up math calculations. Try math organizers from www.do2learn.com
   i. Provide verbal or visual cues to move the guide along as he listens to the teachers read.
   j. Incorporate visual aids (i.e., proof-reading checklists, graphic organizers, word banks) to assist with written output. Try graphic organizers from www.teach-nology.com
   k. Rest and movement breaks within the classroom and between lessons throughout the day.
   l. Limit excessive materials on desk/ table/ working area.
   m. Incorporate time to clean up and organize desk to help E█████ maintain a neat working area.
   n. Increased opportunities to utilize keyboarding and word processing. *Mavis Beacon Teaches Typing* is one good option available at most computer/software supply stores. Another good option is *Keyboarding Skills* by Diana Hanbury King available at 1-800-225-5750.

E███ M█████
Occupational Therapy Evaluation
Page 7 of 7

3.  **Medical Recommendations**
    a.  An Ophthalmologic Evaluation is recommended to rule out any vision difficulties.
    b.  An Audiological Evaluation is recommended to rule out any hearing difficulties.

It has been a pleasure working with E████. If I can be of further assistance, please do not hesitate to contact me at (202) 302-0961.

Lori C. Plumb, OTR/L
Occupational Therapist
Evaluator

Kristin S. Conaboy, OTR/L
Occupational Therapist
Board Certified Disability Analyst

26

SEP 29,2006 09:03  Lambert                301-772-6268                        Page 2

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
DEPARTMENT OF SPECIAL EDUCATION
OCCUPATIONAL AND PHYSICAL THERAPY PROGRAMS
(202) 576-5422, FAX # (202) 576-7250

## OCCUPATIONAL THERAPY RECORD REVIEW

**Student Name:** E█████ N█████
**D.O.B.** ███/94
**School:** Stanton ES
**Date of Evaluation:** 4/4/06
**Evaluating Agency:** Conaboy and Associates
**Reviewing Therapist:** Cynthia A. Lambert, OTR/L

**Background Information:**
Student is a 12 year 7 month old male student who attends Stanton ES.  He
was tested when he was 12 year 1 month by Conaboy and Associates.
E████ is reported to have difficulty with academic progression in school
setting.  He has a history of Attention Deficit and hyperactivity which he has
been medicated for in the past.

**Review of Findings:**
In reviewing report it appears that the evaluating agency used appropriate
testing tools and testing environment to determine students need for school
based OT.  It is important for the reviewing therapist to note that the student
has not been seen or observed in school setting.

**Recommendations:**
As the reviewing therapist I will agree to the terms and recommendations of
the evaluating therapist to administer school based therapy to E████ for 30
minutes of skilled OT services.

Cynthia A. Lambert, OTR/L

**End-to-End Solutions for Special Education**
**1720 Florida Ave., NW**
**Washington, DC 20009**
**(202) 797-2694 ♦ (202) 797-7176 fax**

## PSYCHOEDUCATIONAL EVALUATION

NAME: E███ M█████

AGE: 12 years– 0 months

D.O.B.: ███/94

D.O.E. 3/28/06

GUARDIAN: Vanessa Brown

GRADE PLACEMENT: 5th

PSYCHOLOGICAL EVALUATOR: Edgar A. Stewart, Jr., Ph.D.


REFERRAL QUESTION:

E████ was referred for a psycho-educational assessment by his mother's attorney, Talib Abdus-Shahid as part of a Hearing Officer's Decision (HOD) to determine his current academic functioning. Specific concerns noted include E██████ his continued poor academic performance and comprehension difficulties.


EVALUATION PROCEDURES:

Clinical interview with E████ M████
Wechsler Individual Achievement Test – Second Edition (WIAT-2)
Wechsler Intelligence Scale for Children – Fourth Edition (WISC-4)
Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Vineland Test of Adaptive Behavior


Behavioral Observations:

E████ was tested over the course of the one session that took place in his home. He was introduced to this writer by his mother, Ms. Vanessa Brown. E████ readily came with this writer and was placed at the kitchen table to begin testing. His mother had informed of the purpose of this

meeting which seemed to reassure E████. The purpose of testing was explained to E████, and testing began without incident. Rapport was easily established, however, E████ did not present elaborate answers to questions asked. He appeared to have difficulty communicating his answers verbally. He was cooperative with the interview. He readily engaged in all task demands. E████ was observed to be a well mannered, pleasant boy. He spoke with a normal voice rate and tone but had a low voice volume. Several times this writer asked E████ to repeat himself as his answers were unintelligible due to low volume of his voice. Of significant interest, when E████ did not appear to know an answer to a test item he sat quietly and did not offer any response at all. Even when encourage to inform this writer that it was acceptable to say he did not know or to request to move on to the next item, E████ continued to sit quietly and not respond at all. During these occurrences it was difficult to determine whether E████ was carefully and thoughtfully choosing his response or that he had determined that he did not know the answer and was not responding due to this. E████ appeared to have word finding or verbal expression difficulties in producing answers to test items, as evidenced by the considerable amount of time that he took to formulate his answers (even on correct test items).

E████ made adequate eye contact. He did not display any hypo- or hyper-active motor behavior and was able to remain seated properly in his chair throughout the testing. He was able to remaining focused throughout testing and was on task. He displayed no tics or other abnormal motor behavior. His mood was reported "fine" and affect appropriate with a narrow range in emotions displayed. E████ approached the testing situation with appropriate motivation and persistence and completed all task demands. As such, this evaluation is considered to be a valid assessment of E████ current intellectual functioning.

## COGNITIVE FUNCTIONING:

| WISC-IV COMPOSITE | SCORE | WIAT-II COMPOSITE | SCORE |
|---|---|---|---|
| Verbal Comprehension Index (VCI) | 67 | Reading | 48 |
| Perceptual Reasoning Index (PRI) | 82 | Mathematics | 58 |
| Working Memory Index (WMI) | 91 | Written Language | 59 |
| Processing Speed Index (PSI) | 85 | | |
| Full Scale IQ (FSIQ) | 75 | | |

E████ overall intellectual functioning was assessed using the Wechsler Intelligence Scale for Children (WISC-IV). E████ obtained the following scores on the WISC-IV: Verbal Comprehension Index (VCI) of 67, a Perceptual Reasoning Index (PRI) of 82, Working Memory Index (WMI) of 91, a Processing Speed Index (PSI) of 85, and a Full Scale IQ (FSIQ) of 75. E████ overall cognitive ability cannot be accurately summarized by the FSIQ due to the clinically significant 15-point discrepancy. E████ clearly demonstrated stronger nonverbal, working memory and visual-motor processing speeds compared to significantly weaker verbal reasoning abilities. As such, the Full Scale IQ should not be considered as the most accurate measure of h████ overall level of intellectual functioning. Instead, a more meaningful measure of his cognitive potential can be obtained by examining his individual strengths and weaknesses.

AUG-23-2006 12:33 P.02    Aug.23. 2006  6:36PM    Dalton, Dalton,& Houston    To:7036423100  No.5933    P. 10/21

Exxxxxx verbal reasoning abilities, as measured by the VCI, were found to be in the Extremely Low range. Skills in this area measure verbal reasoning and concept formation. Within the nonverbal reasoning area, as measured by the PRI, Exxxxx performance was solidly in the Low Average. The PRI is designed to assess fluid reasoning (abstract reasoning and problem solving), visual-perceptual organization, simultaneous processing, visual-motor coordination and learning. Exxxxx overall ability to maintain his attention and concentrate fell in the Average range. His working memory (ability to keep his attention, concentrate, and exert mental control) and his ability to process simple or routine visual material without making errors both fell in the Low Average range.

Exxxxx current performance on the WISC-IV subscales is presented below:

| Verbal Comprehension Subtests | Subscale Score |
|---|---|
| Similarities | 5 |
| Vocabulary | 5 |
| Comprehension | 3 |

| Perceptual Reasoning Subtest | Subscale Score |
|---|---|
| Block Design | 6 |
| Picture Concepts | 8 |
| Matrix Reasoning | 7 |

| Processing Speed Subtest | Subscale Score |
|---|---|
| Coding | 6 |
| Symbol Search | 9 |

| Working Memory Subtest | |
|---|---|
| Digit Span | 9 |
| Letter-Number Sequencing | 8 |

Within the verbal domain when compared to same age peers, Exxxx had very poor performance in all areas including abstract reasoning, common sense reasoning, word reasoning, and general word knowledge. Exxxx had difficulty with the abstract reasoning task of determining how two words presented were similar (e.g., red and blue;colors). He also had significant difficulty on a task of practical situations and social judgment where he was asked questions like "*why do cars have seatbelts?*" His general knowledge of vocabulary words was also very poor. In all of the verbal subtests, Exxxx was observed to have difficulty comprehending the information required and communicating the required response. He seemed to have more difficulty with his verbal expressive skills compared to his verbal comprehension skills.

Overall, Exxxxx nonverbal reasoning abilities were much better developed when compared to his verbal reasoning abilities. On a task of visual information processing and abstract reasoning he scored solidly within normal limits. His spatial relation abilities on a task

where he was required to view a picture and use red-and-white blocks to re-create the design with time limits, he demonstrated below average abilities. Additionally, E████ categorical reasoning ability on a task with rows of pictures that he was required to choose one picture from each row to form a group with a common characteristic, was indicative of adequate performance in this area.

His working memory abilities, including his immediate working memory fell in the Average range with solid performance when he was required to recall numbers and numbers and letters presented either forwards or backwards. With the number and letter part of the task, E████ demonstrated a relative strength in his ability to recall both numbers and letters in order and use his auditory memory, mental manipulation, and concentration skills.

E████ processing speed abilities, as measured by the PSI, were variable. He had relatively weaker performance on an ability task of visual-motor coordination and processing speed compared to very solid performance on a task mainly requiring scanning and analyzing ability.

## VISUAL-MOTOR INTEGRATION:

The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI) was administered to assess E████ visual-motor abilities. He was asked to copy a series of designs to measure his ability to coordinate what he sees with his hand-finger movements. E████ earned a score within the Average range (ss–95) and his performance was within age expected limits.

## ACADEMIC ACHIEVEMENT:

The Wechsler Individual Achievement Test – 2nd Edition (WIAT-2) was administered to assess E████ academic achievement. Age-based norms were used to calculate E████ performance in comparison to same age peers.

## WIAT-2 Scores (age norms):

|  | Standard Score | Grade Equiv. | Age Equiv. |
|---|---|---|---|
| *Reading* | 48 | — | -- |
| Word Reading | 57 | 1.8 | 7-4 |
| Pseudoword Decoding | 64 | K.0 | 4-8 |
| Reading Comprehension | 47 | 1.2 | 6-0 |
|  |  |  |  |
| *Mathematics* | 58 | — | -- |
| Numerical Operations | 86 | 5.2 | 10-4 |
| Math Reasoning | 40 | Pre-K5:2 | 5-0 |
|  |  |  |  |
| *Written Language* | 68 | -- | -- |
| Spelling | 62 | 2.1 | 7-4 |

Aug. 23. 2006  6:36PM    Dalton, Dalton,& Houston        No. 5933    P. 12/21
AUG-23-2006 16:33 From:                                To:70364231C

| | | | |
|---|---|---|---|
| Written Expression | 59 | 1.8 | 7-0 |

E█████ overall reading abilities fell in the Extremely Low range. Within the area of reading, E█████ had very poor basic reading decoding skills on a task assessed his ability to read printed words. Additionally, on a task that required E█████ to apply phonetic decoding rules to decode "nonsense" words, he was able to perform slightly higher with **Borderline** performance. Thus, it appeared that E████ attempts to use the phonetic decoding rules to sound out and read words that he is not familiar with. Given his basic reading difficulties, when the task was to read sentences and paragraphs and answer questions about what he had read, E█████ had significant difficulty with reading comprehension. These skills also fell in the Extremely Low range.

E█████ mathematical abilities fell solidly within the Extremely Low range, with significant variability in his mathematical abilities. There was significant difference in his ability to complete practical math application compared to his ability to complete math calculation with addition, subtraction, multiplication and division. Because of the considerable differences in subtest scores in math, his skills in this area may not be adequately summarized by a single number. E█████ ability to apply the numerical operations of addition, subtraction, multiplication and division to 1-3-digit numbers, fractions, and decimals fell in the Low Average range. He had considerably lower mathematical reasoning tasks (basic number concepts, including unit and geometric measurement, and solve one-step word problems) with fell in the Extremely Low range. He had more difficulty with the math reasoning due to the reading involved in solving the problems.

E█████ Written Language abilities also fell in the Extremely Low range. E█████ written expression skills (including tasks that required his to write organized and persuasive sentences and an essay topic) and spelling skills were both considerably weak. He did not have any idea of the steps involved to complete the written assignment. He also was not able to write two or three short sentences into one coherent sentence that meant the same. E█████ spelling abilities were also poor and did not demonstrated age appropriate functioning in spelling.

## ADAPTIVE FUNCTIONING:

Due to E█████ lowered scores on the WISC-IV, the Vineland Adaptive Behavior Scale was given to assess E█████ overall adaptive functioning. The Vineland assesses personal and social sufficiency in the following areas: Communication, involving the skills required for receptive, expressive, and written language communication; Daily Living Skills, including practical skills that are needed to take care of oneself, contribute to a household, and get along in the community; and Socialization, which pertains to those skills needed to get along with others. Standard scores are calculated based on an average (i.e., mean) of 100 and a standard deviation of 15. Standard scores are presented below:

| | Std. Score | Age Equivalent | Adaptive Level |
|---|---|---|---|
| Communication | 62 | 7-9 | Low |

32

AUG.23. 2006  6:37PM   Dalton, Dalton,& Houston              No.5933   P. 13/21
AUG-23-2006 12:55 From:                            To:70364231C

| | | | |
|---|---|---|---|
| Receptive | — | 7-10 | Low |
| Expressive | — | 7-7 | Low |
| Written | — | 7-6 | Low |
| | | | |
| **Daily Living Skills** | **88** | **10-4** | **Adequate** |
| Personal | — | 11-6 | Adequate |
| Domestic | — | 10-0 | Adequate |
| Community | — | 10-2 | Adequate |
| | | | |
| **Socialization** | **89** | **10-0** | **Adequate** |
| Interpersonal Relationships | — | 11-6 | Adequate |
| Play & Leisure Time | — | 10-1 | Adequate |
| Coping Skills | — | 10-0 | Adequate |

Results from E█████ adaptive functioning assessment indicate that he is currently functioning in the Adequate range in his social relationships and daily living skills, however the domain of communication indicates that E███ is having difficulties using his communication skills (both expressive and receptive) to address his needs. Given that the only area of adaptive behavior that is low is communication, and that F████ appears to have a language-based communication disorder, the diagnosis of mental retardation is not appropriate.

## DIAGNOSTIC IMPRESSION:

Axis I:   Mixed Expressive-Receptive Language Disorder, Reading Disorder, Math Learning
          Disorder, Disorder of Written Expression
Axis II:  No Diagnosis on Axis II
AxisIII:  None reported
Axis IV:  School academic difficulties
Axis V:   75 (current)

## SUMMARY & RECOMMENDATIONS:

E███ is a quiet, well-mannered twelve year old boy who reportedly is continuing to experience frustration with his academic difficulties. He demonstrates stronger nonverbal cognitive ability, but it appears from this evaluation that there are language-based expressive (both written and verbal) and receptive difficulties that are significantly negatively impacting his classroom performance. E███ academic abilities as measured by the WIAT indicated well below age-expected functioning in all areas except for basic mathematical numerical operations, as E███ advances through school and the academic demands for verbal and written expression increase he is at risk for developing more serious deficits in his learning and continued poor academic expression.

The following recommendations are offered for consideration by the multidisciplinary team

(MDT) based on the information obtained in this evaluation. Final decisions about eligibility determination, special education services, and interventions should be made at the MDT meeting in conjunction with results from any other evaluations conducted along with input from the parent and other members of the MDT.

1. The diagnoses of Learning Disabled (Math, Reading, Written Expression) suggest that Enoch would benefit from special education services as a student classified as Learning Disabled. As such, the results of this evaluation should be shared with the MDT to make a team determination about eligibility classification, proper educational placement and content of educational services.

2. A speech/language evaluation is also recommended to more fully explore the extent of his expressive and receptive language difficulties and to better understand their impact on his academic performance.

3. Enoch teachers and parents are encouraged to use concise verbal directions by explaining tasks with as few words as possible. Verbal directions may also be clarified with visual cues and demonstrations.

4. Enoch language development may be enhanced through writing activities. For example, Enoch could write a short story and then rewrite the story by substituting synonyms or rhyming words for existing words.

5. Because Enoch has difficulty in processing language formed as questions, teachers could limit direct questioning as a teaching technique.

6. Visual cues may be presented with verbal material to assist Enoch acquisition of verbal concepts.

It was a pleasure working with Enoch If you have any questions about this report, please feel free to contact me at (202) 797-2694

Edgar A. Stewart Jr., Ph.D.
Licensed Clinical Psychologist

# hp LaserJet 9050mfp series

| Fax Call Report | 1 |

DCPS Office of General Counsel
2024425098
05-Dec-2006 07:13 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 2038 | 05-Dec-2006 07:05 PM | Send | 97037392323 | 7:25 | 26 | Success |





# Fax

**To:**  E. Dalton       **From:** Saurabh Gupta, Esq.

**Fax:**  (703) 739-2323       **Date:** December 5, 2006

**Phone:**        **Pages:** (Including cover page)

**Re:**  E████ M████       **CC:**

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

•**Comments:**

DCPS 5 Day Disclosures

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone:  (703)-739-4300
Facsimile:  (703)-739-2323

Washington DC. Office:
601 Pennsylvania Avenue, NW
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton ˙ ˙ ⁺
Ellen Douglass Dalton ˙ ˙ ⁺
William E. Houston˄ˣ⁺
Laura E. Duos˄⁺
Jessica M. Smith ˸⁺

˙ ADMITTED IN W. VA
˜ADMITTED IN MD
⁺ADMITTED IN D.C.
ˣADMITTED TO THE U.S. SUPREME COURT
˄ADMITTED IN PA
˸ ADMITTED IN VA

### FIVE DAY DISCLOSURE
December 5, 2006

District of Columbia Public Schools
Office of General Counsel 9th Floor
825 North Capitol Street, N.E.
Washington, DC 20002

RE: Student: E███ M█████
Date of Birth: ████/94
Current School: Stanton ES

Dear OGC:

A  Due Process Hearing has been scheduled for E███ M█████ on Tuesday, December 12, 2006 at 9:00 a.m. pursuant to 34 C.F.R. 300.512.  The purpose of this letter is to provide you with the following list of witnesses and documents we may rely on in the hearing.

### WITNESSES:

1. Ms. Vanessa Brown
2. E████ M█████
3. Kristen Conaboy, Occupational Therapist or her designee
4. Lori Plum, Occupational Therapist or her designee
5. Laura Olesen, Clinical Psychologist
6. Ava Hughes Booker, Educational Advocate
7. Anne Warkne, Accotink Academy or her designee

* The above witnesses may testify by telephone.

### DOCUMENTS FOR 5 DAY

| | | |
|---|---|---|
| EM-01 | PSYCHO-EDUCATIONAL EVALUATION | 03/02/04 |
| EM-02 | IEP | 03/17/04 |
| EM-03 | IEP | 03/17/05 |
| EM-04 | HOD | 03/06/06 |
| EM-05 | LETTER TO STANTON ELEMENTARY | 08/23/06 |
| EM-06 | PSYCHO-EDUCATIONAL EVALUATION WITH ADAPTIVE VINELAND ASSESSMENT | 03/28/06 |

36

| EM-07 | OCCUPATIONAL THERAPY EVAL. | 04/04/06 |
| EM-08 | CONFIRMATION OF MDT/IEP DATE | 09/25/06 |
| EM-09 | MDT/IEP MEETING NOTES | 09/29/06 |
| EM-10 | IEP | 09/29/06 |
| EM-11 | SPEECH & LANGUAGE EVAL. | 10/16/06 |
| EM-12 | COMPLAINT | 10/16/06 |
| EM-13 | DCPS RESPONSE TO COMPLAINT | 11/02/06 |
| EM-14 | LETTER OF INVITATION FOR RESOLUTION SESSION | 11/02/06 |
| EM-15 | LETTER FROM COUNSEL TO STANTON ELEMENTARY | 11/03/06 |
| EM-16 | RESOLUTION MEETING NOTES | 11/13/06 |
| EM-17 | LETTER OF ACCEPTANCE FOR ACCOTINK ACADEMY | 10/24/06 |
| EM-18 | AVA BOOKER'S CURRICULUM VITAE | |
| EM-19 | KRISTEN CONABOY'S CURRICULUM VITAE | |
| EM-20 | LAURA OLESEN'S CURRICULUM VITAE ** | |

\* We reserve the right to examine any witnesses disclosed by DCPS as if they were witnesses for our client and rely on any documents disclosed by DCPS as if they were our documents.
**\*\* Will be provided.**

### STATUTORY & CASE LAW AUTHORITY

We are relying on all applicable Federal and Local Statutes and all applicable Federal and Local Case Law.  Including but not limited to the following:
--the Civil Right Act of 1871, 42 U.S.C. Sections 1983 and 1985;
--the Individuals with Disabilities Education Act ("IDEIA"), 20 U.S.C. Sections 1400 et. seq;
--the Rehabilitation Act ("Section 504"), 29 U.S.C. Sections 701 et.seq;
--the Fifth Amendment to the Constitution of the United States; and
--5 D.C. Mun. Regs. Section 3000.1-3099 (1991).
Mills v. District of Columbia, 348 F. Supp. 866 (D.D.C. 1972).
Board of Education v. Rowley, 458 U.S. 176 (1982).
McKenzie v. District of Columbia, 602 F.Supp. 632 (1983)
Edwards-White v. District of Columbia, 785 F.Supp. 1022 (D.D.C. 1992).
Kroot v. District of Columbia, 800 F.Supp. 976 (D.D.C. 1992).
Florence County School District v. Carter,114 S. Ct. 361 (1993).
Fisher v. District of Columbia, 828 F.Supp. 87 (D.D.C.    1993).
Lyons by Alexander v. Smith, 829 F.Supp. 414 (D.D.C. 1993).

## BACKGROUND

E█████ is a twelve (12) year old boy with a Learning Disability.  He currently attends Stanton Elementary School.  In a previous HOD dated February 17, 2006, DCPS was ordered to fund the following independent evaluations: psycho-educational, Adaptive Vineland Assessment, and occupational therapy.  It was further ordered that DCPS convene a meeting to review and revise the IEP, discuss and determine placement, and discuss and determine if compensatory education is warranted within fifteen school days of the receipt of the last evaluation.

The psycho-educational evaluation and occupational therapy evaluation were completed and forwarded to Stanton Elementary School.  On September 29, 2006, the IEP team met to review the evaluations and revise the IEP.  The team determined that E█████ required a full time, 100% Out of General Education IEP.  This includes twenty-seven hours of a week of specialized instruction, and one half hour a week of occupational therapy.  To date, DCPS has failed to issue an appropriate notice of placement.

## CONTENTIONS

1.  Whether DCPS denied E█████, a Free Appropriate Public Education (FAPE) by failing to issue an appropriate Notice of Placement.

2.  Whether DCPS denied E█████ a FAPE by failing to discuss and determine a compensatory education plan, as prescribed in the February 17, 2006 HOD.

## RELIEF REQUESTED

1.  A determination that DCPS denied E█████, a Free Appropriate Public Education (FAPE) by failing to issue an appropriate Notice of Placement.

2.  A determination that DCPS be required to fund and place the student at an appropriate, 100% Out of General Education placement including, but not limited to, Accotink Academy or High Road Middle School for the school year 2006/2007 with transportation.

3.  A determination that DCPS be required to discuss and determine a compensatory education plan for the period of time prescribed in the February 17, 2006 HOD, as well as the time E█████ has been left in an inappropriate placement.

*Ellen Douglass Dalton*
**Ellen Douglass Dalton, Esq.**
**Counsel for the Parent**

38



REHABPLUS GROUP

## PSYCHO-EDUCATIONAL EVALUATION

| | |
|---|---|
| **CLIENT'S NAME:** | E█████ M█████ |
| **CHRONOLOGICAL AGE:** | 9 years, 11 months |
| **DATE OF BIRTH:** | ██████, 1994 |
| **EDUCATION:** | Third Grade, Arts & Technology Academy, Washington, D.C. |
| | |
| **DATE(S) OF EVALUATION:** | February 26 and 27, 2004 |
| **TEST ADMINISTRATOR:** | Laura Olesen, Psy.D. |
| | |
| **DATE OF REPORT:** | March 2, 2004 |

### REASON FOR REFERRAL:

E████ M█████ was referred for psycho-educational testing to assess his current level of cognitive and academic functioning. He was given a psycho-educational evaluation in 2003 that was apparently never reviewed or acted upon by a Multi-Disciplinary Team (MDT). The current referral stated a need for an updated evaluation.

### BACKGROUND:

E████ is a nine-year old African-American male who attends the Third Grade at the Arts & Technology Academy. According to school records, he repeated the First Grade.

In September 2000, a psycho-educational evaluation was administered by a clinician from Washington Assessment and Therapy Services (WATS). E█████ performance on the WISC-III yielded scores in the Borderline range for verbal ability, non-verbal skills, and overall cognitive functioning (VIQ = 78; PIQ = 71; FSIQ = 72). The WIAT was given to assess E█████ level of academic achievement. On this test, he earned scores in the Low Average range for Basic Reading (standard score = 87) and Mathematics Reasoning (standard score = 81), and scores in the Borderline range for Spelling (standard score = 76) and the overall test Composite (standard score = 74). On the Developmental Test of Visual-Motor Integration (VMI), E█████ visual-motor skills were rated to be within the Borderline range (standard score = 73). E████ was noted to have great difficulty staying focused and attentive during the testing and demonstrated a low level of frustration tolerance (especially when faced with more complex stimuli). The test

**EM-01** 39

Psycho-educational Evaluation
E████ M██████
Page 2

administrator stated that E█████ "delayed" academic skills appeared to be consistent with his
Borderline cognitive skills, and suggested that his overall poor academic performance may have
been further negatively influenced by ADHD-like symptoms.

   In February 2003, E█████ received another psycho-educational evaluation. The test
administrator echoed observations that had been made during the previous WATS testing with
regard to the fact that E█████ was talkative and restless throughout the testing sessions, and that
he had to be frequently redirected to stay on task. On the WISC-III, E█████ earned scores in the
Low Average range for verbal abilities and non-verbal skills (VIQ = 81; PIQ = 80), and a score in
the Borderline range for overall cognitive functioning (FSIQ = 78). On the WRAT-3, E██████
academic achievement levels were measured to be within the Borderline range for Spelling
(standard score = 74) and within the Deficient range for Reading (standard score = 64) and
Arithmetic (standard score = 61). The psychologist who administered the evaluation suggested
that E█████ had learning disabilities and recommended Special Education services for all
academic subjects.

   Ms. Kalter-Long, E██████ teacher, was interviewed as part of the current evaluation. She
reported that, at a MDT meeting held on February 9, 2004, the team had discussed the fact that
the recommendations made in the 2003 psycho-educational evaluation had not been
implemented. As a short-term measure, the team agreed to give E█████ Special Education
services pending the results of the current psycho-educational. Ms. Kalter-Long noted that, since
he began these services, E██████ behavior had deteriorated and that he wasn't the hard worker in
her class that he had been previously. She noted that E█████ had difficulty in the areas of reading,
writing, spelling, and phonics. Math was an area of relative strength. In general, E█████ resisted
challenging himself and had difficulty working independently. She added that he was
particularly resistant to timed tasks, sometimes announcing aloud to the class that he was going
to take his time to complete tasks.

## BEHAVIORAL OBSERVATIONS:

   E█████ presented as a slim young man of average height who was neatly dressed in his
school uniform and appropriately groomed. On the first day of testing, he had just come from an
awards ceremony where he had won three awards (for dance, drama, and another subject which
he couldn't remember) and wore a large gold star with a red ribbon on his shirt. He was friendly
but concerned that, by participating in the testing, he would miss out on lunch or other things he
was interested in.

   E█████ completed the Bender Visual-Motor Gestalt Test and the WISC-III with relative
ease, but struggled to complete the WIAT-II. He objected to being timed during certain tasks but
agreed to complete them when allowed to hold the timer. E█████ became quickly discouraged

Psycho-educational Evaluation
E████ M█████
Page 3

when he was presented with the first passage of the Reading Comprehension subtest and pleaded that it be given after everything else was completed. E████ needed a great deal of encouragement and redirection to complete the WIAT-II and was extremely restless and fidgety during the WISC-III. In addition to struggling with some of the achievement tasks, E████ did not seem consistently attentive to the testing as a whole, nor did he seem particularly invested in his performance. Due to these factors, the results presented in this report should be cautiously interpreted as estimates of E████ current level of cognitive and academic functioning.

## ASSESSMENT TECHNIQUES ADMINISTERED AND INFORMATION REVIEWED:

- Bender Visual-Motor Gestalt
- Wechsler Intelligence Scale for Children-Third Edition (WISC-III)
- Wechsler Individual Achievement Test-Second Edition (WIAT-II)
- Interview
  -- Ms. Kalter-Long, teacher
- Records
  -- MDT Meeting Notes (02/09/04)
  -- Psychological Evaluation, Rehab Plus Group (02/03/03)
  -- Arts & Technology Academy Office Referral Form (01/24/03)
  -- Teacher Assistance Team (TAT) Referral (01/07/03)
  -- TAT Meeting Notes (01/07/03)
  -- TAT Referral (09/18/02)
  -- IEP Meeting Notes, Fletcher Johnson Elementary School (02/22/01)
  -- Speech and Language Evaluation, DCPS (02/02/01)
  -- Social Work Evaluation Report, DCPS (02/01/01)
  -- Psychosocial Analyses and Educational Implications, DCPS (02/01/01)
  -- Psycho-educational Evaluation, WATS (09/20/00)

## RESULTS AND INTERPRETATION:

*Bender Visual-Motor Gestalt*

The Bender Visual-Motor Gestalt test is a measure of an individual's visual-motor skills. On this test, E████ made six errors, indicating a skill development level equivalent to that expected from seven-year old child. Given that E████ is on the verge of turning ten, these results are indicative of visual-motor delays. For the most part, his designs were well organized and well-constructed, but he had difficulty integrating figures and constructing intersecting angles (in fact, he attempted one angled drawing three times before becoming frustrated and giving up).

41

Psycho-educational Evaluation
E████ M████
Page 4

*WISC-III*

The WISC-III is a standardized test of intellectual ability that is divided into two sections. The Verbal subtests require a subject to listen to orally presented questions and respond with oral answers. On Performance subtests, the stimuli are presented non-verbally and the subject is required to solve the problems using perceptual motor skills. A subtest score of 10 is considered the midpoint of the average range. E████ results are as follows (and are also included as an attachment at the back of this report):

| Verbal Subtests | | Performance Subtests | |
|---|---|---|---|
| Information: | 4 | Picture Completion: | 10 |
| Similarities: | 1 | Coding: | 4 |
| Arithmetic: | 7 | Picture Arrangement: | 3 |
| Vocabulary: | 4 | Block Design: | 2 |
| Comprehension: | 9 | Object Assembly: | 8 |
| Digit Span: | (8) | Symbol Search: | (6) |

| | |
|---|---|
| Verbal IQ: | 72, Borderline range |
| Performance IQ: | 72, Borderline range |
| Full Scale IQ: | 70, Borderline range |
| | |
| Verbal Comprehension Index: | 70, Borderline range |
| Perceptual Organization Index: | 76, Borderline range |
| Freedom from Distractibility: | 87, Low Average range |
| Processing Speed: | 75, Borderline range |

On the WISC-III, E████ earned scores in the Borderline range for Verbal ability, Performance skills, and Full-Scale intelligence (VIQ = 72; PIQ = 72; FSIQ = 70). His verbal and non-verbal abilities were evenly developed.

E████ most significant relative strengths were on *Picture Completion*, a measure of the ability to attend to visual detail, *Comprehension*, which assesses an individual's understanding of social norms and expectations, *Digit Span*, a test of short-term memory and sequencing skills, and *Object Assembly*, which taps part-to-whole reasoning.

He earned his lowest score on *Similarities*, a measure of abstract verbal reasoning. On this task, E████ would state that the two items he was asked to compare were "just the same," and couldn't find other ways to articulate how they were similar. He also struggled with *Block Design*, which assesses the ability to spatially organize visual information, and *Picture Arrangement*, a test of visual sequencing and processing speed.

42

Psycho-educational Evaluation
E̲̅̅̅̅ M̲̅̅̅̅̅
Page 5

*WIAT-II*

The WIAT-II is a wide-range set of tests for measuring cognitive ability and academic achievement. E████ results are as follows (and are also included as an attachment at the back of this report):

| | | | | |
|---|---|---|---|---|
| Word Reading: | 64 | 1st %ile | 6:8 age equiv. | 1:6 grade equiv. |
| Reading Comprehension: | 63 | 1st %ile | 6:0 age equiv. | 1:2 grade equiv. |
| Pseudoword Decoding: | 72 | 3rd %ile | 5:0 age equiv. | K:3 grade equiv. |
| *Reading Composite:* | *61* | *0.5th %ile* | | |
| Numerical Operations: | 65 | 1st %ile | 7:0 age equiv. | 1:5 grade equiv. |
| Mathematics Reasoning: | 78 | 7th %ile | 7:8 age equiv. | 2:4 grade equiv. |
| *Mathematics Composite:* | *69* | *2nd %ile* | | |
| Spelling: | 71 | 3rd %ile | 7:0 age equiv. | 1:7 grade equiv. |
| Written Expression: | 79 | 8th %ile | 8:0 age equiv. | 2:8 grade equiv. |
| *Written Language Composite:* | *73* | *4th %ile* | | |

On the WIAT-II, E████ achieved scores that ranged from the Borderline to the Deficient range for academic achievement. The following discussion provides a more detailed analysis of his performance in specific academic areas.

*Reading:* E████ performed in the Deficient range in overall reading skills, as indicated by his score of 61 on the Reading Composite index. He performed somewhat better on tasks that required him to use his phonetic knowledge to sound out unfamiliar words (Pseudoword Decoding = 72), than on tasks that required him to demonstrate his reading skills aloud (Word Reading = 64) and to read sentences and stories and then answer questions (Reading Comprehension = 63). As noted earlier, E████ was distressed when faced with reading tasks and asked to complete them after everything else. Compared to the other areas of achievement, the reading-related subtests were his area of greatest weakness and appeared to be associated with a great deal of anxiety.

*Mathematics:* In overall mathematics skills, E████ performed in the Deficient range, as indicated by his score of 69 on the Mathematics Composite index. E████ performance on tasks that required him to understand elementary number concepts, including unit and geometric measurement and simple one-step word problems (Mathematics Reasoning = 78) was much better than on tasks that required him to add and subtract three-digit numbers (Numerical Operations = 65).

*Written Language:* E████ performed in the Borderline range in overall written language

43

Psycho-educational Evaluation
E███ M█████
Page 6

skills, as indicated by his score of 73 on the Written Language Composite index. He performed comparably well on tasks requiring him to organize and present written information (Written Expression = 79) and on those requiring him to spell words (Spelling = 71).

## SUMMARY:

E████ M████ is a nine-year old African-American boy who is currently attending the Third Grade at the Arts & Technology Academy. His visual-motor integration skills were determined to be approximately three years delayed. E█████ performance on the WISC-III indicates that his present level of cognitive functioning falls in the Borderline range, with a Full-Scale IQ of 70. E█████ academic achievement scores fell between the Borderline and Deficient ranges. These results were consistent with those found during the 2003 evaluation. An analysis of E█████ achievement scores indicates that he is performing at a level expected from a seven-year old child. However, these scores are commensurate with E█████ measured cognitive abilities. Therefore, specific learning disabilities were not evident. However, he demonstrated a high degree of anxiety when asked to complete reading tasks and earned his lowest scores in this area.

It was apparent from E█████ distractible and fidgety behavior during the testing sessions that he was not consistently attending to the test stimuli. Furthermore, he did not seem fully invested in his performance. These factors no doubt influenced E█████ scores on both the cognitive and achievement testing and it is likely that his cognitive potential is higher than current scores indicate.

Due to the fact that the recommendations provided in the 2003 psycho-educational report were not immediately reviewed or implemented, current staff at the Arts & Technology Academy decided to provide E████ with Special Education services until the results of this current psycho-educational testing are presented. E█████ behavior has reportedly deteriorated since that decision was made, perhaps in reaction to his provisional Special Education placement. The input of E█████ Regular and Special Education teachers will be important for determining if he has made academic progress in his new schedule.

Psycho–educational Evaluation
E█████ M█████
Page 8

## RECOMMENDATIONS:

1.  In light of the fact that E███ was recommended for Special Education services in prior evaluations, has only recently started to receive such services, and continues to lag behind academically, Special Education services are appropriate at this time to remediate his learning delays. Reading is an area of particular concern, especially given the fact that E███ identified it as a subject which causes him some distress.

2.  An Occupational Therapy evaluation is recommended to investigate the delayed visual-motor skills that were detected during this evaluation.

3.  Continued monitoring of E███ ADHD symptoms.


Laura H. Olesen, Psy.D.
Laura H. Olesen, Psy.D.

Paul D. Frey, PhD.
Paul D. Frey, PhD.
D.C. License #170

45

## Tables and Graphs Report of WISC-III Testing
## The Psychological Corporation

NAME: E████, M█████                    REPORT DATE: 02/28/04
AGE: 9 years 11 months                 EXAMINER: Laura Olesen
DATE OF BIRTH: ████/94                 TITLE: Dr.
GENDER: Male
GRADE: Third
SCHOOL: Arts & Technology Acad

**Test Administered:** WISC-III (02/27/04)

### IQ SCORES SUMMARY

| SCALE | IQ | 90% CONFIDENCE INTERVAL | PR | CLASSIFICATION OF INTELLECTUAL FUNCTIONING |
|-------|-----|------------------------|-----|------------------------------------------|
| Verbal | 72 | 68- 79 | 3 | Borderline |
| Performance | 72 | 68- 81 | 3 | Borderline |
| Full Scale | 70 | 66- 76 | 2 | Borderline |

Difference Between VIQ and PIQ = 0 ( ns, Freq =100.0%)

### INDEX SCORES SUMMARY

| | INDEX | 90% CONFIDENCE INTERVAL | PR |
|---|-------|------------------------|-----|
| Verbal Comprehension | 70 | 66- 77 | 2 |
| Perceptual Organization | 76 | 71- 85 | 5 |
| Freedom from Distractibility | 87 | 81- 96 | 19 |
| Processing Speed | 75 | 71- 87 | 5 |

46

2

E███ M█████                    02/28/04

SUBTEST SCORES SUMMARY

| VERBAL SUBTESTS | RAW SCORE | SCALED SCORE | PR |
|---|---|---|---|
| Information (IN) | 8 | 4 | 2 |
| Similarities (SM) | 4 | 1 | <1 |
| Arithmetic (AR) | 14 | 7 | 16 |
| Vocabulary (VO) | 14 | 4 | 2 |
| Comprehension (CO) | 17 | 9 | 37 |
| (Digit Span DS) | 11 | 8 | 25 |

| PERFORMANCE SUBTESTS | RAW SCORE | SCALED SCORE | PR |
|---|---|---|---|
| Picture Completion (PC) | 18 | 10 | 50 |
| Coding (CD) | 24 | 4 | 2 |
| Picture Arrangement (PA) | 7 | 3 | 1 |
| Block Design (BD) | 6 | 2 | <1 |
| Object Assembly (OA) | 19 | 8 | 25 |
| (Symbol Search SS) | 14 | 6 | 9 |

47

# WIAT-II
Wechsler Individual Achievement Test
Second Edition

**Parent Summary Report**

Examinee: E████ M██████

Grade: 3

Date Tested: 2/26/2004

Date of Birth: ████/1994

**Ability Scores** (check one):  ☐ WPPSI-R    ☑ WISC-III    ☐ WAIS-III    ☐ Other _____

**Full Scale IQ Score** (check one):

☐ Extremely Low    ☑ Borderline    ☐ Low Average    ☐ Average    ☐ High Average    ☐ Superior    ☐ Very Superior

## WIAT-II Achievement Subtest Scores:

| Reading Composite | | Mathematics Composite | | Written Language Composite | | Oral Language Composite | |
|---|---|---|---|---|---|---|---|
| Word Reading | 64 | Numerical Operations | 65 | Spelling | 71 | Listening Comprehension | |
| Reading Comprehension | 63 | Math Reasoning | 78 | Written Expression | 79 | Oral Expression | |
| Pseudoword Decoding | 72 | | | | | | |
| Reading Composite | 61 | Mathematics Composite | 69 | Written Language Composite | 73 | Oral Language Composite | |

Notes:

**Subtests**
1 - Word Reading
2 - Reading Comprehension
3 - Pseudoword Decoding
4 - Numerical Operations
5 - Math Reasoning
6 - Spelling
7 - Written Expression
8 - Listening Comprehension
9 - Oral Expression

**Composites**
A - Reading Composite
B - Mathematics Composite
C - Written Language Composite
D - Oral Language Composite



Composites: A 21, B 63, C 57
Subtests:

Standard Score: 70  80  85  90  100  110  115  120  130
Qualitative Description: Extremely Low | Borderline | Low Average | Average | High Average | Superior | Very Superior

Copyright © 2001 by The Psychological Corporation, a Harcourt Assessment Company.
All rights reserved. Printed in the United States of America.

THE PSYCHOLOGICAL CORPORATION®

48



**WIAT-II**
Wechsler Individual Achievement Test®
Second Edition

Your child was recently administered the Wechsler Individual Achievement Test-Second Edition (WIAT-II).
This test includes nine subtests that measure reading, math, written language, and oral language skills.

The following is a description of each subtest in the WIAT-II.

| | |
|---|---|
| **Word Reading** | ■ Depending on the student's age or grade, he or she identifies the letters of the alphabet, beginning and ending sounds of words, and rhyming words, or reads as quickly as possible from a list of words. |
| **Pseudoword Decoding** | ■ The student uses his or her phonetic knowledge to sound out nonsense or unfamiliar words. |
| **Reading Comprehension** | ■ The student reads sentences and short passages and then answers questions about the main idea, specific details, or the order of events. He or she is also asked to make inferences, draw conclusions, or define unfamiliar words by using context clues. |
| **Numerical Operations** | ■ The student solves written math problems requiring addition, subtraction, multiplication, and division using whole numbers, fractions, and decimals. |
| **Math Reasoning** | ■ The student solves a word or stated problem requiring single or multiple steps related to time, money, measurement, geometry, probability, and reading and interpreting graphs. |
| **Spelling** | ■ The student spells a target word based on its meaning as it is used in a sentence. |
| **Written Expression** | ■ The student writes words, sentences and either a paragraph or short essay in response to a topic. Writing is evaluated on organization, vocabulary, theme development, and mechanics such as spelling and punctuation. |
| **Listening Comprehension** | ■ The student listens to a word or sentence and matches it to a picture or looks at a picture and responds with the corresponding word. |
| **Oral Expression** | ■ The student lists words that match a topic, repeats a sentence, tells a story based on a series of pictured events, or describes the steps required to complete a task. |

## Understanding the WIAT-II Scores

To evaluate your child's scores, review the graph on the back of the Parent Report. Your child's scores are placed on the graph to indicate how his or her scores fall in relation to each other and in relation to other children's scores. Children whose scores fall within the *Average* range have skills that are equal to 50% of their peers.

To provide the appropriate intervention, it is important to identify any problem areas in your child's scores. Review the score placement on the graph. Are most scores within the *Average* range or are some scores in the *Low* or *High Average* range? Scores that are *below* the average range indicate intervention might be required; scores that are *above* the average range indicate proficiency in the skill area.

You should also note whether the scores of subtests with similar content such as Word Reading and

Reading Comprehension are similar to each other. Since each subtest measures a different group of skills, a child can have both high and low scores, but generally a child's scores within a content area, for example, reading, will be similar to each other. When a child has specific problem areas, the score of the subtest that measures that skill may be much lower.

If an ability score is also reported on the graph, notice how closely your child's WIAT-II scores fall in relation to the ability score. Intervention may be indicated in instances when the ability score is much higher than the WIAT-II achievement subtest scores.

Please discuss any concerns or questions you have about these results with your child's teacher or counselor.

THE PSYCHOLOGICAL CORPORATION®
Copyright © 2001 by The Psychological Corporation, a Harcourt Assessment Company.
All rights reserved. Printed in the United States of America.



**WIAT-II**

Wechsler Individual Achievement Test®
Second Edition

**Individual Performance Summary Report**

Examinee: E█████ M█████
Grade: 3          Sex: Male
Examiner: Laura Olesen
Summary Report

Date Tested: 2/26/2004
Date of Birth: ██/██/1994
Age: 9 years 11 months
**Age Based Scores**

| WIAT-II Subtests | Standard Score | Composite Standard Score | Confidence Interval 95% | Percentile | Age Equivalent | Grade Equivalent | Other NCE |
|---|---|---|---|---|---|---|---|
| **Reading** | | | | | | | |
| Word Reading | 64 | | 60- 68 | 1 | 6:8 | 1:6 | <1 |
| Reading Comprehension | 63 | | 57- 69 | 1 | 6:0 | 1:2 | <1 |
| Pseudoword Decoding | 72 | | 67- 77 | 3 | 5:0 | K:3 | 11 |
| Composite Score (Sum of Subtest SS) | 199 | 61 | 58- 64 | 0.5 | | | <1 |
| **Mathematics** | | | | | | | |
| Numerical Operations | 65 | | 55- 75 | 1 | 7:0 | 1:5 | 1 |
| Math Reasoning | 78 | | 70- 86 | 7 | 7:8 | 2:4 | 19 |
| Composite Score (Sum of Subtest SS) | 143 | 69 | 62- 76 | 2 | | | 6 |
| **Written Language** | | | | | | | |
| Spelling | 71 | | 64- 78 | 3 | 7:0 | 1:7 | 9 |
| Written Expression | 79 | | 68- 90 | 8 | 8:0 | 2:8 | 21 |
| Composite Score (Sum of Subtest SS) | 150 | 73 | 66- 80 | 4 | | | 12 |
| **Oral Language** | | | | | | | |
| Listening Comprehension | | | | | | | |
| Oral Expression | | | | | | | |
| Composite Score (Sum of Subtest SS) | | | | | | | |
| **Total Composite Score** (Sum of All Subtest Standard Scores) | | | | | | | |

| Supplemental Scores | Raw Score | Quartile | Decile |
|---|---|---|---|
| **Reading** | | | |
| Reading Comprehension | 63* | 1** | |
| Target Words | | | |
| Reading Speed | | | |
| **Written Expression** | | | |
| Alphabet Writing | 0 | | |
| Word Fluency | 2 | 1 | |
| Word Count | | | |
| Holistic Score (Paragraph or Essay) | | | |
| **Oral Expression** | | | |
| Word Fluency | | | |

**Reading Rate**



1 - Far below average to below average
2 - Below average to average
3 - Average to above average
4 - Above average to far above average

*Represents standard score.    **Represents quartile scores using grade based normative data.

50

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

| DCPS - IEP  Page 1 of 4 |
| --- |

Additional Comments: ☐

**I. IDENTIFICATION INFORMATION**

| II. CURRENT INFORMATION |
| --- |

Student Name: Last __M____ First __E____ MI __

Date of IEP Meeting: 3/17/04

Student ID __9059776__ Soc. Sec. No. _____ Age: __10__ Grade __3rd__

Date of Last
IEP Meeting: _____

Gender ☑M ☐F Date of Birth __/94__ Ethnic Group __African American__

Date of Most Recent
Eligibility Decision: 3/17/04

Address __605 46th Place SE. #22__
House No.  Street Name

Purpose of IEP Conference:
☑ Initial IEP   ☐ Review of IEP
☐ Requested Eval.   ☐ 3yr ReEval.

__Washington__ __D.C.__ __20019__
City  State  Zip Code

Indicate Level of Standardized Assessment:
__IV__

☐ Non-attending

Attending School __ATA__ Home School _____

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent __Vanessa Brown__

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

| | BEHAVIOR | | TRANSPORTATION |
| --- | --- | --- | --- |
| | ESY | | TRANSITION |

House No.  Street Name  Quad  Apt. No.  City  State  Zip Code
Telephone: Home __2/582-3661__ Work _____

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
| --- | --- | --- | --- | --- | --- |
| Student | English | English | English | English | Oral |
| Parent | English | English | English | English | Rdg./ Written |
| Home | English | English | English | English | Instrument: |
| | | | | | Date: |

**IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY**

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min  D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos. | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Specialized Instruction | | 5 | 5 | hr | W | special ed teacher | 3/17/04 | 10 | mo |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | | 5 | 5 | Hours Per Week | | | | | |

**V. Disability(ies)**
__LD__

__Learning    Disabled__

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☑ 0-20%   ☐ 21-60%   ☐ 61-100%

Percent of time NOT in a Regular Education Setting __110'__

**VI. IEP TEAM (Participants in the development of the IEP)**

Print and sign your name below.

Vanessa Brown _(signature)_

Chanta Lindsy _(signature)_

Ann Chambers _(signature)_

Laura Olesin _(signature)_ Psy. D. Clinical Psychologist

Vanessa Katler-Long ; Gen. Ed. _(signature)_

Nikon Hamilton _(signature)_ special teacher

Andrea Young _(signature)_

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP and consent to the implementation of the services in the IEP. I have received a copy of this IEP and received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _(signature)_  Date __3-12-04__

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4    **5-1**

_Vanessa Brown (signature)_

**EM-02**

| Student Name | E___ M___ | Managing School | ATA | DCPS – IEP |
| Student ID Number | 9059776 | DOB ___/94 Attending School | ATA | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments:

**Academic Areas: (Evaluator)** Laura Oleser, PsyD

Score(s) When Available
WIAT-II

**Math Strengths:**
___ is better able to perform math problems within the context of word and visual stimuli.

Math Cal. 65

Math Rea. 78

**Impact of disability on educational performance in general education curriculum:**
___ performed at lower levels when asked to calculate numeral problems

See goal page:

Date: 03-08-04
WIAT-II

**Reading Strengths:**
___ has some ability to sound out unfamiliar words.

Rdg. Com 63

Rdg. Basic 64

**Impact of disability on educational performance in general education curriculum:**
___ displayed great distress when asked to read short passages

Written Ex. 79

See goal page:

Date: 02-02-04

**Communication (Speech & Language) (Evaluator)**

Score(s) When Available

**Strengths:**

Exp. Lang.

Rec. Lang.

Artic.

Voice

**Impact of disability on educational performance in general education curriculum:**

Fluency

Exp. Voc.

Rec. Voc.

See goal page:

Date:

**Motor/Health (Evaluator)**

Score(s) /Results
When Available

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

See goal page:

Date:

**Social Emotional Behavioral Areas: (Evaluator)**

Score(s) When Available

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

See goal page:

Date:

**Cognitive/Adaptive Behavior: (Evaluator)** Laura Oleser, PsyD

Score(s) When Available
WISC-III

**Strengths:**
Enoch did well on subtests that measure comprehension, attention to visual detail, short-term memory and part-to-whole reasoning.

VIQ = 72

PIQ = 72

FSIQ = 70

**Impact of disability on educational performance in general education curriculum:**
Enoch did not respond well to timed tasks and had poorer performance on those types of tasks.

See goal page:

Date: 03-02-04

**Prevocational Skills: (Evaluator)**

Score(s) When Available

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

See goal page:

Date:

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 2 of 4

52

| Student Name | E___ M___ | | Managing School | ATA | | DCPS – IEP |
| Student ID Number | 9059776 | DOB ___/94 | Attending School | ATA | | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number: |

Area addressed by goal: **Mathematics**

**ANNUAL GOAL:** (including mastery criteria)

The student will make a 6 to 9 months growth in the area of Mathematics with 80% accuracy.

Provider(s): **Regular and Special Educ. Teachers**

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| – The student will add 2 to 3 digits with/without regrouping. | 1/05 | – monthly |
| – The student will subtract 2 to 3 digits w/without regrouping. | 1/05 | – monthly |
| – The student will tell time in various ways, such as: 5pm, 5 o'clock, 5:00. | | – monthly |
| – The student will tell time to the five minutes and to the hour. | | – monthly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

(Portfolio)   Log   Chart   (Test)   Documented Observation   Report   Other

| Student Name | E___ M___ | | Managing School | ATA | | DCPS - IEP |
|---|---|---|---|---|---|---|
| Student ID Number | 9054776 | DOB | 6/__/94 | Attending School | ATA | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:    Goal Number: [ ]

Area addressed by goal: _Reading / Lang. Arts_

**ANNUAL GOAL:** (including mastery criteria:)

The student will make a 6 to 9 month growth in the area of Reading/Lang. Arts with 80% accuracy.

Provider(s): _Regular and Spec. Educ. Teachers_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will pronounce the 1st, 2nd, 3rd grade Dolch list. | | monthly |
| - The student will state the main idea/problem, predict the ending and identify details of a story. | | monthly |
| - Recognize words that rhyme. | | monthly |
| - Recognize when a prefix or suffix has been added. | | monthly |
| - Recognize word endings that change meaning, like "s," "ed" and "ing". | | monthly |
| | | |

**EVALUATION PROCEDURE(S)**

(Portfolio)    Log    Chart    (Test)    Documented Observation    Report    Other _____

| Student Name | ~~Emily Nader~~ | Managing School | ATA | DCPS - IEP |
| Student ID Number | 9059776 | DOB ~~/~~/94 | Attending School | ATA | Page 4 of 4 |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?    Yes    **No**

Explanation for removal out of regular education classroom.

Student requires small teacher : student ratio.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    **None needed**

- Timing/Scheduling: extended time, extra breaks
- Setting: small group
- Presentation: simple repeated directions ; test read aloud orally
- Response: orally
- Equipment: calculator

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I   Tested with non-disabled peers under standard conditions without accommodations.

Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level III   (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations.

**Level IV**   (Describe the alternative assessment) additional accommodations

Level V   Portfolio:

## XII. Areas Requiring Specialized Instruction and Related Services:      Modifications:

- ✓Reading — Physical/Sensory — Transition — ✓Language Arts/English
- ✓Mathematics — Social Emotional — Vocational — Social Sciences
- Written Expression — Physical Development — Independent Living — Biological & Physical Sciences
- Other: — — Speech/Language — Fine Arts
- None   Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| General Education | Reject - cannot meet students needs | Continued school failure |
| Combination - General Ed. & Resource Classroom | Accept | appropriate for needs |
| Out of General Education | Reject - | impact of self-esteem |

Modification(s)/Accommodation(s) to address the harmful effects:

Student requires specific scheduling to address disability

Location for Services: a.t.a.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP Page 1 of 4

Additional Comments:

## I. IDENTIFICATION INFORMATION

Student Name: Last ___M____  First ___E____  MI

Student ID  9059776   Soc.Sec.No. _____  Age: 11  Grade 4

Gender ☒ M ☐ F   Date of Birth __/94   Ethnic Group  African-American

Address  2700   Bruce Place   SE
        House No.   Street Name   Quadrant   Apartment #
                 Washington        DC      20020
                 City           State    Zip Code

☐ Non-attending

Attending School  Stanton ES   Home School  Stanton ES

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS/

Parent  Vanessa Brown

Address of (if different from student):  ☒ Parent ☐ Guardian ☐ Surrogate

House No.   Street Name   Quad.   Apt. No.   City   State   Zip Code
Telephone: Home  202-610-9760   Work

## II. CURRENT INFORMATION

Date of IEP Meeting: 3/17/05
Date of Last IEP Meeting: 3/17/2004
Date of Most Recent Eligibility Decision: 3/17/2004

Purpose of IEP Conference:
☐ Initial IEP      ☒ Review of IEP
☐ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | N/A | Native Lang. |
| Parent | English | English | English | Native Lang. |
| Home | English | N/A | N/A | Native Lang. |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment

Oral ___
Rdg./ Written ___
Instrument: ___
Date: ___

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr/Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 10 | 10 | | Hr. | Week | Special Education Teacher | 3 18 05 | 10 | months |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| TOTAL | 10 | 10 | | Hours Per Week | | | | | |

## V. Disability(ies)

Learning Disabled

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%   ☐ 21-60%   ☐ 61-100%

Percent of time NOT in a Regular Education Setting _____

## VI. IEP TEAM (Participants in the development of the IEP)

_Print and sign your name below._

Vanessa Brown _____
LaRhonda Owens _____
Linda C Brown _____
Joy Skeene _____
Michelle Butler _____

☒ _I AGREE_ with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature  _Vanessa Brown_   Date  3/17/05

| Student Name | ~~Emma M~~ | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9059776 | DOB | ~~/94~~ | Page 2 of 4 |
| | | Attending School | Stanton ES | |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Academic Areas: (Evaluator)** Lauren Olsen, Ph.d

**Math Strengths:**
E____ better able to perform math problems within the context of words and visual stimuli.

**Impact of disability on educational performance in general education curriculum:**
E____ performed at lower levels when asked to calculate numerical problems.

**Reading Strengths:**
E____ has some ability to sound out unfamiliar words.

**Impact of disability on educational performance in general education curriculum:**
E____ displayed great dissatisfaction when asked to read short passages.

**Communication (Speech & Language) (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Motor/Health (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Social Emotional Behavioral Areas: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

**Cognitive/Adaptive Behavior: (Evaluator)** Laurn Olsen, Ph.d
Strengths: E____ did well on test that measure attention to visual detail, short memory and reasoning

Impact of disability on educational performance in general education curriculum:
E____ did not respond well to timed task.

**Prevocational Skills: (Evaluator)**
Strengths:

Impact of disability on educational performance in general education curriculum:

---

**Additional Comments:**

**Score(s) When Available**
Math Cal. 65   WIAT II
Math Rea. 78
See goal page:
Date: 3/2/04
Rdg. Com 63
Rdg. Basic 64
Written Ex. 79
See goal page:
Date: 3/2/04

**Score(s) When Available**
Exp. Lang. _____
Rec-Lang. _____
Artic _____
Voice _____
Fluency _____
Exp. Voc. _____
Rec. Voc. _____
See goal page: _____
Date: _____

**Score(s) /Results When Available**
_____
_____
_____
See goal page:
Date:

**Score(s) When Available**
_____
_____
_____
See goal page:
Date:

**Score(s) When Available**
VIQ 72  WISC III
PIQ 72
FSIQ 70
See goal page:
Date: 3/2/04

**Score(s) When Available**
_____
_____
_____
See goal page:
Date:

---

| Student Name | E█████ M█████ | | Managing School | Stanton ES | | DCPS - 1EP |
|---|---|---|---|---|---|---|
| Student ID Number | 9059776 | DOB ██/██/94 | Attending School | Stanton ES | | Page 3 of 4 |

Goal Number: ☐

| VIII. SPECIALIZED SERVICES | Additional Comments: |

Area addressed by goal: _____ Academic Area: Mathematics _____

**ANNUAL GOAL:** (including mastery criteria.)

E█████ will increase his math skills by six months growth, by mastering the following short-term objectives with 80% accuracy.

Provider(s): _____ Special Education Teacher _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| E█████ will add and three or more digits with regrouping with 80% accuracy | | Monthly |
| E█████ will subtract three or more digits with regrouping with 80% accuracy. | | Monthly |
| E█████ will be able to tell time to the minute and elapsed time with 80% accuracy. | | Monthly |
| E█████ will be able to give multiplication facts to 7 and also follow a multiplications chart with 80% accuracy. | | Monthly |
| E█████ will be able to identify coins and give the value of a set of given coins with 80% accuracy | | Monthly |
| E█████ will be able to solve simple word problems involving subtraction or addition with 80% accuracy | | Monthly |

**EVALUATION PROCEDURE(S)**

⬭Portfolio    Log    Chart    ⬭Test    Documented Observation    Report    Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

| Student Name | E___ M___ | | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9059776 | DOB ___/94 | Attending School | Stanton ES | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal Number: |
|---|---|---|

Area addressed by goal: _____ Academic Area: Reading _____

ANNUAL GOAL : (including mastery criteria.)

E___ will increase his reading skills by six months growth, by mastering the following short term objectives with 80% accuracy

Provider(s): _____ Special Education Teacher _____

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| E___ will be able to identify all vowels sounds with 80% accuracy. (long & short) | | Monthly |
| E___ will be able to recognize the initial sound blends of st, pl, bl, br, tr, dr, gr and sr with 80% accuracy. | | Monthly |
| E___ will be able to recall details from a story read or a past experience with 80% accuracy. | | Monthly |
| E___ will be able to read a short story and give details with 80% accuracy. | | Monthly |
| E___ will be able to read the 1st and 2nd, 3rd grade Dolch list with 80% accuracy. | | Monthly |
| E___ will be able to write 6 to 10 sentences on a given topic with 80% accuracy. | | Monthly |

EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

59

| Student Name | E___ M___ | Managing School | Stanton ES | DCPS - IEP |
| Student ID Number | 9059776 | DOB | ___/94 | Attending School | Stanton ES | Page 4 of 4 |

Additional Comments:

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?    Yes    (No)

Explanation for removal out of regular education classroom.

Student requires specialized instruction to access the general education curriculum.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:    None needed
Timing/Scheduling: Extended time, short breaks
Setting: small group
Presentation: Repeated directions, simple directions, test read aloud
Response: oral responses
Equipment: calculator CRO

## XI. STATE AND DISTRICT ASSESSMENTS:
Level I Tested with non-disabled peers under standard conditions without accommodations.
Level III Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations
Level V Portfolio:

Level II (Describe accommodations for level II) Tested under standard conditions with special accommodations.
Level IV (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:    Modifications:
(Reading)    Physical/Sensory    Transition    Language Arts/English
(Mathematics)    Social Emotional    Vocational    Social Sciences
Written Expression    Physical Development    Independent Living    Biological & Physical Sciences
Other:    Speech/Language    Fine Arts
None    Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Combination general education and resource classroom | Accept | Time away from non-disabled peers |
| Out of General Education | Reject | Impact on student's self-esteem |
| In General Education Classroom | Reject | continued school failure |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Student requires specialized instruction to access the general education curriculum.

Location for Services    Stanton ES

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT

MEETING DATE: 3/7/05

MDT REFERRAL DATE:_____

STUDENT: _____ Enoch Melson _____          SCHOOL: _____ Stanton ES _____

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Vanessa Brown | *Vanessa Brown* | Parent |
| LaRhonda Owens | *CRO* | Special Education Coordinator |
| Michelle Butler | *Michelle Butler* | General Education Teacher |
| Joy Spencer | *Joy Spencer* | Special Education Teacher |
| Linda C. Brown | *Linda C. Brown* | Speech and Language Therapist |
| | | |
| | | |
| | | |

---

The meeting was convened and introductions were made.  The parent was given a copy of the
Procedural Manual.  A brief explanation of the manual was given to the parent and a receipt for
the Manual was signed. The purpose of the meeting was stated, 1) review assessments 2) revise
IEP as necessary 3) discuss placement.

Parent Reports:

No concerns to report – Student has follow-up appointment
with pediatrician regarding diagnosis of ADHD.

---

THE PARENT [X] IS PRESENT [ ] IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT _____ Enoch Melson _____

[X] IS ELIGIBLE FOR SPECIAL EDUCATION

[ ] IS NOT ELIGIBLE FOR SPECIAL EDUCATION

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    MDT MEETING NOTES APPENDIX-A

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _____ Annual Review _____

___ of ___

DATE 3/17/05

STUDENT _____ E___ M___ _____    SCHOOL _____ Stanton ES _____    DATE 3/17/05

General Education Teacher Reports:

E___'s reading skills need to improve, his phonics, (letter sounds) blends could improve with more practice inside and outside of the classroom. His math skills have improved. Basic math skills are better, (also sight words have improved) addition, subtraction (multiplication needs work). Overall, if reading skill increase then E___ could progress at a faster rate (pace).

Special Education Teacher Reports:

E___ has shown very little progress in reading. He continues to need help with phonics and blends. He does not try to decode words he says whatever comes to mind at the time. In math E___ is able to add and subtract two digit numbers with regrouping. E___ will continue to work on vowel sounds, blends writing short sentences and recalling information. In math he will work on addition and subtract 3 and 4 digit numbers, simple problem solving, time elapse and multiplication facts to 9.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _____Annual Review_____

____ of ____

MDT REFERRAL DATE _____

DATE 3/17/05

STUDENT _____    SCHOOL ___Stanton Elementary School___

Summary/Recommendations:

Based upon the documentation reviewed by the MDT, the MDT determined that the student continues to be eligible for special education services as a student who meets the criteria for Learning Disabled. The student will receive specialized instruction in the following areas: _math and reading_

The student will receive related services in the following areas: none warranted at this time

The setting accepted by the MDT is combination general education and resource classroom.

The following accommodations will be made: extended time, short breaks, small group, repeated directions, oral responses, ~~calculator~~ *cro*, test read aloud to student and simple directions. The level of standardized assessments will be level III.

Placement Discussion: Based upon the documentation reviewed by the MDT, the student's needs can be met at the neighborhood school (Stanton) in a combination general education/resource classroom.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP)
MEETING NOTES

STUDENT E̶̶̶̶̶ M̶̶̶̶̶̶̶̶̶    SCHOOL Stanton Elementary School   DATE: 3|17|05

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Vanessa Brown | Vanessa Brown | Parent |
| LaRhonda Owens | | Special Education  Coordinator |
| Michelle Butler | | General Education Teacher |
| Joy Spencer | | Special Education  Teacher |
| Linda C. Brown | | Speech and Language Therapist |

The purpose of the meeting was stated:  to review the eligibility determination of the MDT, 2) revise IEP as necessary 3) discuss placement.  Based upon the documentation reviewed by the team, the MDT determined that the student continues to be eligible for special education services as a student who meets the criteria for Learning Disabled.  The student will receive specialized instruction in the following areas:

reading and mathematics

The student will receive related services in the following areas: none required at this time.

The setting accepted by the MDT is combination general education and resource classroom.

The following accommodations will be made: extended time, short breaks, small group, repeated directions, oral responses, calculator, test read aloud to student and simple directions.  The level of standardized assessments will be level III.

Placement Discussion: Based upon the documentation reviewed by the MDT, the student's needs can be met at the neighborhood school (Stanton) in a combination general education/resource classroom.

64

## DOCUMENTED LEVEL OF SERVICE (PERM)
Complete and attach to MDT/IEP meeting notes

| | | | | | |
|---|---|---|---|---|---|
| School | Stanton ES | Principal | Norman Brooks | Special Education Coordinator | LaRhonda Owens |
| Date | Case Manager | | | Technical Support Supervisor | Carol Helton |
| Student | E████ M████ | DOB ██/94 | Age 11 Grade 4/A | ID # 9059776 | SSN# ████ |
| Parent | Vanessa Brown | Telephone (H) | 202-610-9760 | (W) | |

Address: 2700 Bruce Place, SE    Washington, DC 20020
Street # Street                                    Quad Apt No    City                    State    Zip Code

REFERRAL SOURCE: (Check)  ☒ 120 Day   ☐ Reeval.   ☐ HOD   ☐ SA   ☐ MA
☐ Nonpublic   ☐ Residential   ☐ Citywide   ☐ Courts   ☒ Local School   ☐ Other

Previous least restrictive environment (LRE Setting):    Combination General Education and Resource Classroom

### JUSTIFICATION FOR SETTING CONSIDERATION
(Submit TAT/MDT Documentation)
SUPPORTIVE DATA DOCUMENTATION

| 2. ACCOMMODATIONS / MODIFICATIONS | 3. DATA REQUIREMENTS | | |
|---|---|---|---|
| Extended time, short breaks, small group, repeated directions, oral responses, simple directions, calculator | Current IEP | Yes ☒ | No ☐ |
| | Signatures of required participants (MDT notes) | Yes ☒ | |
| | Intervention Behavior Plan | Yes ☐ | |
| | Copies of current class work and homework assignments: | Yes ☒ | |
| | Medical Reports: | Yes ☐ | No ☒ |
| | Clinical Reports: | Yes ☐ | No ☒ |
| | Psychiatric Reports | Yes ☐ | No ☒ |
| | Medications: | Yes ☐ | No ☐ |
| | Attendance Record | Yes ☒ | |
| | Copies of most recent evaluation(s) | Yes ☒ | |

| 4. Results of all interventions: (TAT, MDT, etc. and attach meeting notes.) | 5. Resources needed for program implementation |
|---|---|
| Eligibility – 3/17/2004<br>Annual Review – 3/17/2005 | |

### 6. CURRENT SETTING CONSIDERATIONS

| ROW | SETTING in neighborhood school (Determined through the IEP team.) | SERVICE PROVIDER (Based on documented need) | LEVEL OF SERVICE (Based on documented need) |
|---|---|---|---|
| 1 | ☐ in general education classroom setting | ☐ general educators with consultation from special education staff | ☐ between 0% and 20% of service time |
| 2 | ☒ combination general education and resource classroom | ☒ combination of general educators, special educators and related service providers | ☐ between 21 % and 60% of service time |
| 3 | ☐ * out of general education classroom | ☐ special educators and related service providers | ☐ between 61 % and 100% of service time |

*In providing or arranging for the provision of nonacademic and extracurricular service and activities, including meals, recess period, and the services and activities, each public agency shall ensure that each child with a disability participates with non-disabled children in those services and activities (300.306) to the maximum extent appropriate to the needs of that child. (300.553) Nonacademic settings.

Check the level of need as indicated:

DIRECTIONS:

| If two or three boxes are checked in the Row 1, check LOW.<br>If two or three boxes are checked in the Row 2, check MODERATE.<br>If two or three boxes are checked in the Row 3, check HIGH. | If one box is checked in each row,<br>check either MODERATE or HIGH,<br>depending on the need of the student. |
|---|---|

### 7. LEVEL OF NEED

| ☐ LOW | ☒ MODERATE | ☐ HIGH |
|---|---|---|

Attention: Technical Support Supervisor / PERM Compliance Team

65

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student _____ E█████ M█████ _____ DOB █████/94  Age _11_  Grade _4 ᵗ ͪ_  ID __9059776__

You have the right to challenge the recommendations by requesting Mediation or a Due Process Hearing before an impartial hearing officer. To initiate a mediation or hearing, you will need to complete a REQUEST FOR MEDIATION or DUE PROCESS HEARING form and mail it to the address listed below:

Student Hearing Office
D.C. Public Schools 825 North
Capitol Street, N.E. 8th floor
202-442-5432

You have the right to be represented at the hearing by legal counsel.
A copy of Parents Procedural Safeguards handbook is provided.
A list of free or low cost legal service, for which you may qualify depending on your income, is included.
If you would like an additional copy, please contact the principal.

EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

Wechsler Intelligence Scale for Children-III (WISC-III) - commonly employed individually administered test designed to measure the intelligence of individuals aged 61/2 to 161/2 years. Date of Report _____

Wechsler Preschool and Primary Scale of Intelligence-Revised WPPSI-R) - measures specific mental abilities and processes in ages 4 ,nto 6,a years. Date of Report _____

Wechsler Adult Intelligence Scale-III (WIAS III) an individually administered test designed to measure the intelligence of individuals ages 16 and over. Date of Report _____

Bayley Scales of Infant Development-II - an individually administered instrument that measures motor, mental and social development in infants and children from 1 month to 42 months of age. Date of Report _____

Wechsler Individual Achievement Test (WIAT)- a commonly used individually administered instrument designed to assess the educational achievement of children and adolescents in areas of basic reading, mathematics reasoning, spelling, reading comprehension, numerical operations, listening comprehension, oral expression, and written expression. Date of Report _____

Peabody Individual Achievement Test-Revised (PIAT-R) - an individually administered test measuring achievement in areas of general information, reading recognition, reading comprehension, spelling, written expression, and mathematics. Date of Report _____

Kaufman Test of Educational Achievement (KTEA) -an individually administered instrument measuring achievement skills in reading decoding, mathematics applications, spelling, reading comprehension, and mathematics computation. Date ofReport _____

Woodcock-Johnson Psycho-Educational Battery- a diagnostic and evaluation instrument composed of twenty-seven tests divided into three major parts: tests of cognitive ability, tests of achievement, and tests of interests. Date of Report _____

Bender Visual Motor Gestalt Test - measures perceptual motor skills to determine visual-motor gestalt functioning and neurological soft-signs in ages 4 to 12 years using the Koppitz Scoring System. Date of Report _____

Developmental Test of Visual Motor Integration VMI) -assesses visual perception and motor coordination in ages 3 years and up using a more structured booklet format. Date of Report _____

Children's Apperception Test a projective story-telling technique for personality evaluation in ages 5 to 10 years. Date of Report _____

Thematic Apperception Test -a projective story-telling technique for personality evaluation in older children and adolescents.
Date of Report _____

House-Tree-Person - a projective drawing technique providing insight into personality structure, physical concerns, and social-emotional adjustment in children and adolescents. Date of Report _____

_____

_____

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION
MULTIDISCIPLINARY TEAM
(MDT)

Student _____E███ M███_____ DOB ███'94 Age 11 Grade 5 ID 9059776

**Kinetic Family Drawing** a projective drawing technique measuring one's perception of her family and her role within the family.

Date of Report _____

**Rorschach Psychodiagnostic Test** a projective measure y which one's responses to inkblots reveal personality structure, ego strengths and reality testing in ages 3 and older. Date of Report _____

**Goodenough-Harris Drawing Test** a projective drawing procedure measuring intellectual perceptual-motor maturity and personality through the use of drawings of self and a members of the opposite sex in ages 3 to 15.11 years. Date of Report _____

**Conner's Parent and Teacher Rating Scales** - paper-and-pencil instrument measuring problem behaviors of children and adolescents as reported by the child's teacher, parents, or alternate care-giver. Date of Report _____

**The Vineland Adaptive Behavior Scales** -assesses adaptive and social competency skills. Date of Report _____

**Test of Language Development Primary - Revised (TOLD-P)** - measures primary language proficiency and specific strengths and weaknesses in language skills. Date of Report _____

**Kaufman Assessment Battery for Children** - assesses the ability to solve problems using simultaneous and sequential metal processes in four global areas: Sequential Processing, Simultaneous Processing, Mental Processing, and Achievement. Date of Report _____

**Preschool Language Scale** measures auditory comprehension and verbal ability skills. Date of Report _____

**Oral Peripheral Speech Examination** - a procedure to determine whether the examinee can appropriately use the lips, tongue, mouth, etc.

Date of Report _____

**Clinical Evaluation of Language Fundamentals - III** - assesses the child's language functioning including processing and production.

Date of Report _____

**Expressive One Word Picture Vocabulary Test** assesses the child's single word expressive vocabulary. Date of Report _____

**Receptive One Word Picture Vocabulary Test** assesses the child's single word receptive vocabulary. Date of Report _____

**Goldman-Fristoe Test of Articulation** - assesses the production of consonants in simple and complex contexts. Date of Report _____

**Peabody Picture Vocabulary Test-Revised** - individually administered, multiple choice test measuring nonverbal, receptive vocabulary.

Date of Report _____

**Fisher-Logemann Test of Articulation Competence** assesses articulation proficiency with single sounds, consonant blends, and vowel production.

Date of Report _____

**Classroom Observation** - assesses present functioning of the student within the classroom environment. _____

Free or Low Cost Legal Services

Neighborhood Legal Services
701 4th Street, N.E.
Washington, D.C. 20001
202-682-2700 (NW)
202-682-2732 (NE)
Fax 202-682-0588

Neighborhood Legal
Services 1213 Good Hope
Road, S.E. Washington, D.C.
20020 202-678-2000
Fax 202-889-3374

University Legal Services
300 I Street, N.E.
Washington, D.C. 20002
202-547-0198
Fax 202-547-2662

The Children's Law Center Inc. 1050
Connecticut Avenue, N.W. Suite 1209
Washington Square
Washington, D.C. 20036-5317
202-467-4900
Fax 202-467-4949

National Coalition for Students
with Disabilities
10560 Main Street, Suite 417
Fairfax, VA 22030
703-267-6588        (fax) 703-267-6992

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM (MDT)

PRIOR NOTICE

Check Purpose:
- [ ] Initial Evaluation
- [ ] Initial Placement
- [ ] Reevaluation
  - [ ] Change in Category Exit
  - [ ] Related Service Add
  - [ ] Related Service
  - [ ] Change in Placement
  - [x] Other  Annual Review

Date  3/17/05

Student  ████ M████                                    DOB  ██/94

School  Stanton ES

Current Disability Category  Learning Disabled

Setting  Combination General Education and Resource Classroom

Dear  Vanessa Brown

State and federal laws regarding students with disabilities require school systems to notify and inform parents of certain changes being made to their children's education program.
Therefore, you are being notified of the following proposed changes:
- [x] Proposes to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Refuses to initiate or change the identification, evaluation, educational placement or provision of FAPE to your child.
- [ ] Other _____

**A multidisciplinary team (MDT), of which you were an invited member, has made the following decisions about your child: (check all that apply)**

- [ ] Your child is not eligible for special education service(s).
- [x] Your child is eligible or continues to be eligible to receive special education services as a student with _____  Specific Learning Disability
- [x] Your child will begin receiving _____ as a related service(s).
- [ ] Your child will no longer receive _____ as a related service(s).
- [ ] Your child's category of disability is being changed from _____ to _____
- [ ] Your child's alternative placement on continuum (next setting) is being changed,
      from _____ to _____
  Your child is no longer eligible and will be exited from the special education program.
  Other: _____

Description and Explanation of agency action proposed or refused.

The MDT met to review all of the documentation and the following setting was proposed for the student: Combination general education and resource classroom at Stanton Elementary School.

Description of Other Options Considered and reasons for rejection of each option

Based on the documentation reviewed by the team at the MDT meeting, it was determined that the student could not be educated in the general education setting or the out of general education classroom: Documentation demonstrates that the student can access the general education curriculum in a combination setting / part-time with non-disabled peers.

Other relevant factors to the decision – _____

MDT Members:
- [x] Principal or Designee
- [x] Parent
- [ ] Student
- [ ] Social Worker
- [x] General Education Teacher
- [x] Special Education Teacher
- [x] Speech and Language
- [x] *LEA & Interpreter *may be one)
- [ ] Psychologist
- [ ] Other: _____

Any questions you may have concerning your child's program may be directed to the principal.
You are protected under the Procedural Safeguards for parents, which are enclosed for your information.
If I can be of assistance to you, or if you have questions regarding the Procedural Safeguards,
please contact  Ms. Owens  at  645-7150  (school telephone number).

See attachments for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

68



The Arts & Technology
ACADEMY

5300 BLAINE STREET NE
WASHINGTON, DC 20019
(202) 398-6811 PHONE
(202) 388-8467 FAX

Caring for Our Students with Disabilities
A Procedural Manual for Parents

**RECEIPT**

I, Vanessa Brown , received a copy of *A Procedural*
(Parent/ Guardian Name)


*Manual for Parents* from Shaunta Lindsey /Title Special Education Coordinator
(Person Issuing Document)


at Arts Technology Academy .


3/17/04


Vanessa Brown
Parent/Guardian Signature

(This receipt is to remain in a designated file in the school)

69



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.


INITIAL PLACEMENT


Student _____ DOB _____94 Age _____ Meeting Date 3/17/04

Address _605 46th Place SE_____ Telephone (W) _____ (H) _____


Dear Parent:

You have been provided a copy of the "Procedural Safeguards – Parents Rights" booklet. We
would like to remind you at this time that:
- granting consent is a voluntary action on your part;
- this consent may be revoked at any time although the school district is required to take all
  necessary action to  provide appropriate service(s) and may be required t initiate due
  process procedures to obtain consent; and
- by granting consent in writing, you are agreeing to the process indicated below.

__✓__ Initial Placement

After development of an IEP, the MDT, with the parent, determined that your child will receive
special education and related services at _Arts + Technology Academy_ school, for:

       __✓_0% – 20%,        __21% – 60%,  or        __61% – 100%,


**Parent Response Section:**

I give permission for District of Columbia Public Schools to proceed with the initial placement
for my child.


_____          3-17-04
Parent/Guardian Signature                      Date

# District of Columbia Public Schools

## Office of Management Services

Tonya M. Butler-Truesdale, Due Process Hearing Officer
825 North Capitol Street, N.E.; Room 8076
Washington, D.C. 20002
(202) 518-6867
Facsimile: (202) 442-5556

## Confidential

| | | |
|---|---|---|
| E▇▇▇ M▇▇▇▇, STUDENT | ) | |
| | ) | |
| Date of Birth: ▇▇▇▇▇ 1994 | ) | |
| | ) | |
| Petitioner, | ) | Hearing Date: February 17, 2006 |
| | ) | |
| v. | ) | |
| | ) | |
| THE DISTRICT OF COLUMBIA | ) | |
| PUBLIC SCHOOLS | ) | |
| | ) | Held at: 825 North Capitol Street, N.E. |
| Respondent. | ) | 8th Floor |
| | ) | Washington, D.C. 20002 |

### HEARING OFFICER'S DECISION

| | |
|---|---|
| Parent: | Vanessa Brown<br>2700 Bruce Place, SE<br>Washington, D.C. 20020 |
| Counsel for Parents: | Talib Abdus-Shahid, Esquire<br>Dalton, Dalton & Houston<br>1008 Pendleton Street<br>Alexandria, VA 22314-1837 |
| Counsel for DCPS: | Rashida Chapman, Esquire<br>Office of the General Counsel, DCPS<br>825 North Capitol Street, N.E.<br>9th Floor<br>Washington, D.C. 20002 |

EM-04[71]

*In the Matter of E. M.*

### I.  JURISDICTION

The Due Process Hearing was convened and this Order is written pursuant to Public Law 108-446, the *Individuals with Disabilities Education Improvement Act of 2004 (I.D.E.I.A.)*, 20 U.S.C.; 5 D.C.M.R. Section 3000.; Section 143 of the D.C. Appropriations Act, effective October 21, 1998; and the Rules of the Board of Education of the District of Columbia.

### II.  DUE PROCESS RIGHTS

Parent's counsel waived a formal reading of the due process rights.

### III.  FIVE-DAY DISCLOSURE

Petitioner: No witnesses were present or called to testify because the parties settled and presented disclosures labeled EM1-EM7 were presented.

Respondent: No witnesses were present or called to testify because the parties settled and a disclosure letter was presented.

### IV.  STATEMENT OF THE CASE

On June 8, 2005, a Due Process Hearing Request was received alleging that the District of Columbia Public Schools failed to:
1. conduct a comprehensive occupational therapy evaluation;
2. conduct an  Adaptive Vineland Assessment;
3. conduct a comprehensive psycho-educational evaluation;
4. provide special education instruction and services while Petitioner attended Orr Elementary School;
5. implement an IEP which reflected Petitioner's OHI disability of ADHD;
6. convene an IEP meeting on March 27, 2005; and,
7. develop an appropriate IEP for the 2004 and 2005 school years.

### V.  FINDINGS OF FACT

In consideration of the hearing record, the Hearing Officer finds that the agreement reached on the record by the parties is in the best interest of the student and, therefore, a Hearing Determination is hereby issued incorporating the agreement as stated.   The hearing officer entered the parties **Settlement on the Record** as follows:

72

2

*In the Matter of E.M.*

## VI.    ORDER

Upon consideration of Petitioner's request for a due process hearing, the parties' Five Day Disclosure Notices, and the representations of the parties' counsel, this 4th day of March 2006, it is hereby

**ORDERED**, DCPS shall fund the following independent evaluations listed below within the Superintendent's cost guidelines:
1. psycho-educational
2. Adaptive Vineland Assessment
3. occupational therapy evaluation.

**IT IS FURTHER ORDERED**, that within fifteen school days of the receipt of the last ordered evaluation, DCPS will convene a meeting to review and revise the Petitioner's IEP, discuss and determine placement, discuss and determine whether compensatory education is warranted and develop a compensatory education plan if necessary.

**IT IS FUTHER ORDERED**, that if Placement is to a DCPS public school, DCPS shall have five (5) calendar days to issue the prior notice of placement.  If placement is to a non-public or private school, DCPS shall have thirty (30) calendar days and if placement is to a residential facility DCPS shall have sixty (60) calendar days to issue the prior notice of placement.

**IT IS FUTHER ORDERED**, that all meetings will be scheduled through parent's counsel.

**IT IS FURTHER ORDERED**, that any delay in meeting any of the deadlines in this Order because of Petitioner's absence or failure to respond promptly to scheduling requests, or that of Petitioner's representatives, will extend the deadlines by the number of days attributable to Petitioner or Petitioner's representatives. DCPS shall document with affidavits and proofs of service for any delays caused by Petitioner or Petitioner's representatives.

**IT IS FURTHER ORDERED**, that this Order is effective immediately.

### Notice of Right to Appeal Hearing Officer's Decision and Order

This is the final administrative decision in this matter. Any party aggrieved by the findings and/or decision may bring a civil action in any state court of competent

73

3

*In the Matter of E.M.*

jurisdiction or in a district court of the United States without regard to the amount in controversy, in accordance with 20 U.S.C. Section 1415(i)(2)(A) within thirty days of the entry of the Hearing Officer's Decision.

Tonya M. Butler-Truesdale, Esquire
Hearing Officer

Date:   March 4, 2006

Issued:  3/6/06

Copies to:

Talib Abdus-Shahid, Esquire
Dalton, Dalton & Houston
1008 Pendleton Street
Alexandria, VA 22314-1837

Rashida Chapman, Esquire
Office of the General Counsel, DCPS
825 North Capitol Street, N.E.
9th Floor
Washington, D.C. 20002

4

74

Law Offices
# DALTON, DALTON & HOUSTON, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile:  (703)-739-2323

Paul S. Dalton˙˙⁺
Ellen Douglass Dalton ˙⁺
William E. Houston^⁺
Laura E. Duos⁻⁺
Jessica M. Smith ˙⁺

Washington DC. Office:
601 Pennsylvania Avenue, NW.
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

˙ ADMITTED IN W. VA
⁺ADMITTED IN D.C.
^ADMITTED IN PA

⁻ADMITTED IN MD
*ADMITTED TO THE U.S. SUPREME COURT
⁅ ADMITTED IN VA

August 23, 2006

Stanton Elementary School
Special Education Coordinator
2701 Naylor Road, SE
Washington, DC 20020

RE: E█████ M█████
DOB: ███/94

Dear Sir/Madam:

I am faxing to you copies of the independent evaluations which were Ordered pursuant to a Hearing Officer's Determination which I am also faxing for your review.  Pursuant to the Hearing Officer's Determination, DCPS is to convene a MDT/IEP meeting within 15 school days of receipt of these independent evaluations.  Please contact me upon receipt of this letter so that we can arrange a mutually agreeable date and time within the 15 school day time period.

I look forward to hearing from you soon and scheduling this meeting for E█████.

Sincerely,

*Ellen Douglass Dalton*

Ellen Douglass Dalton, Esq.

cc: Ms. Vanessa Brown

**EM-05**   75

P. 1

\* \* \* Transmission Result Report(MemoryTX) ( Sep. 5. 2006  5:37PM ) \* \* \*

1) Dalton. Dalton.& Houston
2)

Date/Time: Sep. 5. 2006  5:33PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 6281 | Memory TX | 2026453264 | P. 18 | OK | |

---

Reason for error
    E.1) Hang up or line fail                    E.2) Busy
    E.3) No answer                               E.4) No facsimile connection

---

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22312-5045
(703) 739-4300
FAX (703) 739-2323

DATE: 9/5/06

TO: Norman Brooks, Principal

AT FAX: 202-645-3264

FROM: Ellen Douglass Dalton

RE: ~~Ellen M~~

Number of pages including this page: 18

Comments:

Dear Mr. Brooks,
    Per our discussion today, DCPS needs to convene a meeting to review the independent evaluations by September 18, 2006.

                                        Ellen Dalton

*****************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.  IF THE READER OF THIS MESSAGE
IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE
ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
*****************************************************************

76

**FAX TRANSMISSION COVER SHEET**
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22312-5045**
**(703) 739-4300**
**FAX (703) 739-2323**

DATE: 9/5/06
TO: Norman Brooks, Principal
AT FAX: 202-645-3264
FROM: Ellen Douglass Dalton
RE: ~~Emma Malone~~

Number of pages including this page: 18

Comments:

Dear Mr. Brooks,
    Per our discussion today, DCPS needs to convene a meeting to review the independent evaluations by September 18, 2006.

Ellen Dalton

************************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.  IF THE READER OF THIS MESSAGE
IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY
DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE
ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
************************************************************************

77

FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
FAX (703) 739-2323


DATE:         August 23, 2006
TO:           Special Ed Coordinator, Stanton Elementary School
AT FAX:       202-645-3264
FROM:         Ellen Douglass Dalton, Esq.
RE:           E███████ M██████

NUMBER OF PAGES INCLUDING THIS PAGE: ___21___

ADDITIONAL INFORMATION
_____
PLEASE DELIVER ASAP.


*****************************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNI CATION IN
ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.
*****************************************************************************

78

P. 1

* * * Transmission Result Report(MemoryTX) ( Aug.23. 2006  5:33PM )  *  *  *

1) Dalton, Dalton & Houston
2)

Date/Time: Aug.23. 2006  6:34PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|----------|------|-------------|-------|--------|---------------|
| 5933 | Memory TX | 2026453264 | P. 21 | OK | |

------------------------------------------------------------

Reason for error
  E.1) Hang up or line fail       E.2) Busy
  E.3) No answer               E.4) No facsimile connection

FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
FAX (703) 739-2323

DATE:      August 23, 2006
TO:        Special Ed Coordinator, Stanton Elementary School
AT FAX:   202-645-3294
FROM:    Ellen Douglass Dalton, Esq.
RE:      ~~Emais Matang~~

NUMBER OF PAGES INCLUDING THIS PAGE:  21

ADDITIONAL INFORMATION

PLEASE DELIVER ASAP.

*****************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN
ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS. *****************************************

79

AUG-23-2006 12:35 From:

**End-to-End Solutions for Special Education**
**1720 Florida Ave., NW**
**Washington, DC 20009**
**(202) 797-2694 ♦ (202) 797-7176 fax**

## PSYCHOEDUCATIONAL EVALUATION

<u>NAME:</u> F█████ M██████

<u>AGE:</u> 12 years- 0 months

<u>D.O.B.:</u> ███/94

<u>D.O.E.</u> 3/28/06

<u>GUARDIAN:</u> Vanessa Brown

<u>GRADE PLACEMENT:</u> 5th

<u>PSYCHOLOGICAL EVALUATOR:</u> Edgar A. Stewart, Jr., Ph.D.

<u>REFERRAL QUESTION:</u>

E█████ was referred for a psycho-educational assessment by his mother's attorney, Talib Abdus-Shahid as part of a Hearing Officer's Decision (HOD) to determine his current academic functioning. Specific concerns noted include E██████ his continued poor academic performance and comprehension difficulties.

<u>EVALUATION PROCEDURES:</u>

Clinical interview with E█████ M██████
Wechsler Individual Achievement Test – Second Edition (WIAT-2)
Wechsler Intelligence Scale for Children – Fourth Edition (WISC-4)
Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)
Vineland Test of Adaptive Behavior

<u>Behavioral Observations:</u>

E█████ was tested over the course of the one session that took place in his home. He was introduced to this writer by his mother, Ms. Vanessa Brown. E█████ readily came with this writer and was placed at the kitchen table to begin testing. His mother had informed of the purpose of this

80

**EM-06**

meeting which seemed to reassure E███. The purpose of testing was explained to E███ and testing began without incident. Rapport was easily established, however, E███ did not present elaborate answers to questions asked. He appeared to have difficulty communicating his answers verbally. He was cooperative with the interview. He readily engaged in all task demands. E███ was observed to be a well mannered, pleasant boy. He spoke with a normal voice rate and tone but had a low voice volume. Several times this writer asked E███ to repeat himself as his answers were unintelligible due to low volume of his voice. Of significant interest, when E███ did not appear to know an answer to a test item he sat quietly and did not offer any response at all. Even when encourage to inform this writer that it was acceptable to say he did not know or to request to move on to the next item, E███ continued to sit quietly and not respond at all. During these occurrences it was difficult to determine whether E███ was carefully and thoughtfully choosing his response or that he had determined that he did not know the answer and was not responding due to this. E███ appeared to have word finding or verbal expression difficulties in producing answers to test items, as evidenced by the considerable amount of time that he took to formulate his answers (even on correct test items).

E███ made adequate eye contact. He did not display any hypo- or hyper-active motor behavior and was able to remain seated properly in his chair throughout the testing. He was able to remaining focused throughout testing and was on task. He displayed no tics or other abnormal motor behavior. His mood was reported "fine" and affect appropriate with a narrow range in emotions displayed. E███ approached the testing situation with appropriate motivation and persistence and completed all task demands. As such, this evaluation is considered to be a valid assessment of E███ current intellectual functioning.

COGNITIVE FUNCTIONING:

| WISC-IV COMPOSITE | SCORE | WIAT-II COMPOSITE | SCORE |
|---|---|---|---|
| Verbal Comprehension Index (VCI) | 67 | Reading | 48 |
| Perceptual Reasoning Index (PRI) | 82 | Mathematics | 58 |
| Working Memory Index (WMI) | 91 | Written Language | 59 |
| Processing Speed Index (PSI) | 85 | ----- | |
| Full Scale IQ (FSIQ) | 75 | | |

E███ overall intellectual functioning was assessed using the Wechsler Intelligence Scale for Children (WISC-IV). E███ obtained the following scores on the WISC-IV: Verbal Comprehension Index (VCI) of 67, a Perceptual Reasoning Index (PRI) of 82, Working Memory Index (WMI) of 91, a Processing Speed Index (PSI) of 85, and a Full Scale IQ (FSIQ) of 75. E███ overall cognitive ability cannot be accurately summarized by the FSIQ due to the clinically significant 15-point discrepancy. E███ clearly demonstrated stronger nonverbal, working memory and visual-motor processing speeds compared to significantly weaker verbal reasoning abilities. As such, the Full Scale IQ should not be considered as the most accurate measure of E███ overall level of intellectual functioning. Instead, a more meaningful measure of his cognitive potential can be obtained by examining his individual strengths and weaknesses.

E_____ verbal reasoning abilities, as measured by the VCI, were found to be in the **Extremely Low** range. Skills in this area measure verbal reasoning and concept formation. Within the nonverbal reasoning area, as measured by the PRI, E_____ performance was solidly in the **Low Average**. The PRI is designed to assess fluid reasoning (abstract reasoning and problem solving), visual-perceptual organization, simultaneous processing, visual-motor coordination and learning. E_____ overall ability to maintain his attention and concentrate fell in the Average range. His working memory (ability to keep his attention, concentrate, and exert mental control) and his ability to process simple or routine visual material without making errors both fell in the **Low Average** range.

E_____ current performance on the WISC-IV subscales is presented below:

| Verbal Comprehension Subtests | Subscale Score |
|---|---|
| Similarities | 5 |
| Vocabulary | 5 |
| Comprehension | 3 |

| Perceptual Reasoning Subtest | Subscale Score |
|---|---|
| Block Design | 6 |
| Picture Concepts | 8 |
| Matrix Reasoning | 7 |

| Processing Speed Subtest | Subscale Score |
|---|---|
| Coding | 6 |
| Symbol Search | 9 |

| Working Memory Subtest | |
|---|---|
| Digit Span | 9 |
| Letter-Number Sequencing | 8 |

Within the verbal domain when compared to same age peers, E_____ had very poor performance in all areas including abstract reasoning, common sense reasoning, word reasoning, and general word knowledge. E_____ had difficulty with the abstract reasoning task of determining how two words presented were similar (e.g., red and blue:colors). He also had significant difficulty on a task of practical situations and social judgment where he was asked questions like *"why do cars have seatbelts?"* His general knowledge of vocabulary words was also very poor. In all of the verbal subtests, E_____ was observed to have difficulty comprehending the information required and communicating the required response. He seemed to have more difficulty with his verbal expressive skills compared to his verbal comprehension skills.

Overall, E_____ nonverbal reasoning abilities were much better developed when compared to his verbal reasoning abilities. On a task of visual information processing and abstract reasoning he scored solidly within normal limits. His spatial relation abilities on a task

82

where he was required to view a picture and use red-and-white blocks to re-create the design with time limits, he demonstrated below average abilities. Additionally, E▓▓▓▓ categorical reasoning ability on a task with rows of pictures that he was required to choose one picture from each row to form a group with a common characteristic, was indicative of adequate performance in this area.

His working memory abilities, including his immediate working memory fell in the Average range with solid performance when he was required to recall numbers and numbers and letters presented either forwards or backwards. With the number and letter part of the task, Enoch demonstrated a relative strength in his ability to recall both numbers and letters in order and use his auditory memory, mental manipulation, and concentration skills.

E▓▓▓▓ processing speed abilities, as measured by the PSI, were variable. He had relatively weaker performance on an ability task of visual-motor coordination and processing speed compared to very solid performance on a task mainly requiring scanning and analyzing ability.

## VISUAL-MOTOR INTEGRATION:

The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI) was administered to assess E▓▓▓▓ visual-motor abilities. He was asked to copy a series of designs to measure his ability to coordinate what he sees with his hand-finger movements. E▓▓▓ earned a score within the Average range (ss=95) and his performance was within age expected limits.

## ACADEMIC ACHIEVEMENT:

The Wechsler Individual Achievement Test – 2nd Edition (WIAT-2) was administered to assess E▓▓▓▓ academic achievement. Age-based norms were used to calculate E▓▓▓▓ performance in comparison to same age peers.

## WIAT-2 Scores (age norms):

|  | Standard Score | Grade Equiv. | Age Equiv. |
|---|---|---|---|
| *Reading* | 48 | -- | -- |
| Word Reading | 57 | 1.8 | 7-4 |
| Pseudoword Decoding | 64 | K.0 | 4-8 |
| Reading Comprehension | 47 | 1.2 | 6-0 |
| *Mathematics* | 58 | -- | -- |
| Numerical Operations | 86 | 5.2 | 10-4 |
| Math Reasoning | 40 | Pre-K5:2 | 5-0 |
| *Written Language* | 68 | -- | -- |
| Spelling | 62 | 2.1 | 7-4 |

|                     |        |        |        |
|---------------------|--------|--------|--------|
| Written Expression  | 59     | 1.8    | 7-0    |

E███ overall reading abilities fell in the **Extremely Low** range. Within the area of reading, E███ had very poor basic reading decoding skills on a task assessed his ability to read printed words. Additionally, on a task that required E███ to apply phonetic decoding rules to decode "nonsense" words, he was able to perform slightly higher with **Borderline** performance. Thus, it appeared that E███ attempts to use the phonetic decoding rules to sound out and read words that he is not familiar with. Given his basic reading difficulties, when the task was to read sentences and paragraphs and answer questions about what he had read, E███ had significant difficulty with reading comprehension. These skills also fell in the **Extremely Low** range.

E███ mathematical abilities fell solidly within the **Extremely Low** range, with significant variability in his mathematical abilities. There was significant difference in his ability to complete practical math application compared to his ability to complete math calculation with addition, subtraction, multiplication and division. Because of the considerable differences in subtest scores in math, his skills in this area may not be adequately summarized by a single number. E███ ability to apply the numerical operations of addition, subtraction, multiplication and division to 1-3-digit numbers, fractions, and decimals fell in the **Low Average** range. He had considerably lower mathematical reasoning tasks (basic number concepts, including unit and geometric measurement, and solve one-step word problems) with fell in the **Extremely Low** range. He had more difficulty with the math reasoning due to the reading involved in solving the problems.

E███ Written Language abilities also fell in the **Extremely Low** range. E███ written expression skills (including tasks that required his to write organized and persuasive sentences and an essay topic) and spelling skills were both considerably weak. He did not have any idea of the steps involved to complete the written assignment. He also was not able to write two or three short sentences into one coherent sentence that meant the same. E███ spelling abilities were also poor and did not demonstrated age appropriate functioning in spelling.

## ADAPTIVE FUNCTIONING:

Due to E███ lowered scores on the WISC-IV, the Vineland Adaptive Behavior Scale was given to assess E███ overall adaptive functioning. The Vineland assesses personal and social sufficiency in the following areas: Communication, involving the skills required for receptive, expressive, and written language communication; Daily Living Skills, including practical skills that are needed to take care of oneself, contribute to a household, and get along in the community; and Socialization, which pertains to those skills needed to get along with others. Standard scores are calculated based on an average (i.e., mean) of 100 and a standard deviation of 15. Standard scores are presented below:

|               | Std. Score | Age Equivalent | Adaptive Level |
|---------------|------------|----------------|----------------|
| **Communication** | 62     | 7-9            | Low            |

84

| | | | |
|---|---|---|---|
| Receptive | -- | 7-10 | Low |
| Expressive | -- | 7-7 | Low |
| Written | -- | 7-6 | Low |
| **Daily Living Skills** | **88** | **10-4** | **Adequate** |
| Personal | -- | 11-6 | Adequate |
| Domestic | -- | 10-0 | Adequate |
| Community | -- | 10-2 | Adequate |
| **Socialization** | **89** | **10-0** | **Adequate** |
| Interpersonal Relationships | -- | 11-6 | Adequate |
| Play & Leisure Time | -- | 10-1 | Adequate |
| Coping Skills | -- | 10-0 | Adequate |

Results from Enoch's adaptive functioning assessment indicate that he is currently functioning in the **Adequate** range in his social relationships and daily living skills, however the domain of communication indicates that E████ is having difficulties using his communication skills (both expressive and receptive) to address his needs. Given that the only area of adaptive behavior that is low is communication, and that F████ appears to have a language-based communication disorder, the diagnosis of mental retardation is not appropriate.

## DIAGNOSTIC IMPRESSION:

Axis I:   Mixed Expressive-Receptive Language Disorder, Reading Disorder, Math Learning
          Disorder, Disorder of Written Expression
Axis II:  No Diagnosis on Axis II
Axis III: None reported
Axis IV:  School academic difficulties
Axis V:   75 (current)

## SUMMARY & RECOMMENDATIONS:

E████ is a quiet, well-mannered twelve year old boy who reportedly is continuing to experience frustration with his academic difficulties. He demonstrates stronger nonverbal cognitive ability, but it appears from this evaluation that there are language-based expressive (both written and verbal) and receptive difficulties that are significantly negatively impacting his classroom performance. E████ academic abilities as measured by the WIAT indicated well below age-expected functioning in all areas except for basic mathematical numerical operations, as E████ advances through school and the academic demands for verbal and written expression increase he is at risk for developing more serious deficits in his learning and continued poor academic expression.

The following recommendations are offered for consideration by the multidisciplinary team

AUG-23-2006 12:35 From:                                    T-7036423101

(MDT) based on the information obtained in this evaluation. Final decisions about eligibility determination, special education services, and interventions should be made at the MDT meeting in conjunction with results from any other evaluations conducted along with input from the parent and other members of the MDT.

1. The diagnoses of Learning Disabled (Math, Reading, Written Expression) suggest that E█████ would benefit from special education services as a student classified as Learning Disabled. As such, the results of this evaluation should be shared with the MDT to make a team determination about eligibility classification, proper educational placement and content of educational services.

2. A speech/language evaluation is also recommended to more fully explore the extent of his expressive and receptive language difficulties and to better understand their impact on his academic performance.

3. E█████ teachers and parents are encouraged to use concise verbal directions by explaining tasks with as few words as possible. Verbal directions may also be clarified with visual cues and demonstrations.

4. E█████ language development may be enhanced through writing activities. For example, E█████ could write a short story and then rewrite the story by substituting synonyms or rhyming words for existing words.

5. Because E█████ has difficulty in processing language formed as questions, teachers could limit direct questioning as a teaching technique.

6. Visual cues may be presented with verbal material to assist E█████ acquisition of verbal concepts.

It was a pleasure working with E█████. If you have any questions about this report, please feel free to contact me at (202) 797-2694.

Edgar A. Stewart, Jr., Ph.D.
Licensed Clinical Psychologist

86

**CONABOY AND ASSOCIATES, INC.**
*Resources for Children and Families*
705 8th St. SE
Suite 200
Washington, D.C. 20003
Kristin@conaboy.com - www.conaboy.com
Phone 202.544.2320 Fax 202.544 2321

## COMPREHENSIVE OCCUPATIONAL THERAPY EVALUATION

**Name:** E█████ M█████
**Date of Birth:** ████/94
**Chronological Age:** 12 years, 1 month

**School:** Stanton E.S.
**Therapist:** Lori C. Plumb, OTR/L
**Date of Evaluation:** 04/04/06

**Background Information:** E████ is a twelve year, one month old student who is currently attending Stanton Elementary School in Washington, D.C. E████ was evaluated at the request his attorney, Talib Abdus Shahid, Esq. Records indicate E████ has had difficulty with academic progression within the school environment. A Psycho-Educational Evaluation administered on March 2, 2004 found E████ cognitive functioning in the Borderline Range and his academic achievement scores between the Borderline and Deficient Ranges. Records indicate E████ has a history of Attention Deficit Hyperactivity Disorder and he has taken medication for this condition in the past. E████ reported he is currently taking medication once a day.

A Comprehensive Occupational Therapy Evaluation was recommended to identify E██████ current levels of functioning and to determine his need for Occupational Therapy Intervention. This evaluation should be used in part to support E██████ educational needs and to enhance his classroom performance.

**Evaluations Administered:**
- Clinical Observations
- Review of records
- School Age Checklist for Occupational Therapy—not returned by school
- Bruininks-Oseretsky Test of Motor Proficiency- Fine Motor Subtests
- The Beery-Buktenica Developmental Test of Visual Motor Integration (VMI)
- The Test of Visual Perceptual Skills (non-motor)– Revised (TVPS)
- Items from the Evaluation Tool of Children's Handwriting – (ETCH)

**Clinical Observations:** E████ was evaluated within his school environment. He transitioned willingly to the testing room and to this unfamiliar examiner. E████ was cooperative, friendly, and polite. He demonstrated no difficulty remaining on task or remaining appropriately in the chair. He appeared focused and concentrated on each item presented to him. E████ was helpful with the set-up and clean-up of the testing materials. He negotiated the testing and school environments independently. Throughout the evaluation, E████ attempted all tasks presented to him and appeared to be trying his best. Therefore, the following is felt to be an accurate reflection of E██████ true abilities.

87

EM-07

E▉▉▉ M▉▉▉▉
Occupational Therapy Evaluation
Page 2 of 7

- **Behavior:**  In the one on one, quiet testing environment, E▉▉▉▉ responded appropriately to this examiner.  At times, E▉▉▉▉ required clarification on multi-step directions.  He appropriately asked for clarification when needed.  During the two hour duration of testing, E▉▉▉▉ demonstrated no difficulty following the behavioral expectations of the evaluation.  E▉▉▉▉ cooperation, politeness, and eagerness make him a pleasure to test.

- **Sensorimotor Functioning:**  Successful sensorimotor functioning is the ability to take in, interpret, and use information from the environment appropriately.  E▉▉▉ is able to process and respond appropriately to sensory information (tactile/touch, vestibular/movement, proprioceptive/information from muscles and joints, and visual information) from his environment.

- **Motor Proficiency:**  Gross motor skills (movements of the large muscles) were informally assessed through the use of consultation and observations.  E▉▉▉ demonstrated appropriate gross motor skills to function within the school environment.  E▉▉▉ displayed the ability to independently ambulate to and from the main office and the testing environment.  He ascended and descended two flights of stairs independently and safely without difficulty.  Continued exposure to sports and physical activity is crucial to help ensure appropriate development of gross motor skills.

  Fine motor skills (movements of small muscles) were assessed using the Bruininks-Oseretsky Test of Motor Proficiency.   When compared to other students his age, Enoch achieved skills as follows:

Bruininks-Oseretsky Test of Motor Proficiency

| SUBTEST | AGE EQUIVALENT | STANDARD SCORE | DEFINTION OF TERMS | PERFORMANCE RANGE |
|---|---|---|---|---|
| Response Speed | 15 years, 11 months+ | 26 | Ability to respond quickly to a moving stimulus | High |
| Visual Motor Control | 15 years, 8 months | 18 | Cutting and drawing lines within narrow boundaries.  Copying geometric shapes. | Average |
| Upper-Limb Speed and Dexterity | 11years, 2 months | 12 | Arm and hand speed and control with small items: pegs, coins, cards, beads, and quick pencil tasks. | Average |

| | |
|---|---|
| Overall Fine Motor Skill Performance  = | Above Average |

- **Interpretation:**  According to the Bruininks-Oseretsky Test of Motor Proficiency, E▉▉▉▉ overall fine motor skills fall within the above average range when compared to other children his age.  He demonstrates right hand dominance and holds his pencil with a functional quadropod (pencil resting on ring finger) grasp.  E▉▉▉ displayed proper posture for table-top tasks and stabilization of the paper with his left hand.  E▉▉▉ displayed age appropriate scissor skills while cutting out a two inch circle.  He held the scissors in his right hand with a proper grasp.  While cutting, E▉▉▉ demonstrated proper manipulation of the paper with his left hand.  He cut out a two inch circle along a thin bold line with no deviations.  While drawing through narrow paths, E▉▉▉ demonstrated no deviations off basic crooked and straight paths and one deviation off a basic curved path.  He was able to copy a circle, triangle, and horizontal diamond with full credit but had more difficulty copying the more complex overlapping pencils.  On the Upper Limb Speed and Dexterity subtest, E▉▉▉ was able to complete all the tasks

88

E████ M█████
Occupational Therapy Evaluation
Page 3 of 7

independently.  E████ performed bimanual tasks such as placing pennies, sorting cards, and stringing beads.  While, E████ fine motor skills are within the above average range when compared to other students his age, the quality of his visual motor integration skills is below that of his peers as he had difficulty with copying tasks.

- **Handwriting:**  E█████ handwriting skills were assessed through clinical observations, informal samples, and items from <u>The Evaluation Tool of Children's Handwriting (ETCH) – Manuscript (print).</u>  Skills observed were those similar to tasks which occur in the classroom setting.  Such tasks include, writing the alphabet from memory (upper and lower-case), writing numbers, copying from a near-point and far-point model, basic dictation, and sentence composition.  It should be noted that many students E██████ age have learned cursive writing.

E████ demonstrated right hand dominance with a functional quadropod (pencil resting on ring finger) grasp.  E████ displayed proper desk posture and stabilized the paper with his left hand.  E████ wrote his first and last name without a model in manuscript.  E████ wrote the lower-case alphabet in print demonstrating legible handwriting.  He demonstrated accurate line alignment and letter spacing.  However, he displayed poor closure of the letter "k" and often started the letters from the bottom of the line, displaying poor letter formation, inefficient production, and decreased writing fluency.  While writing the upper-case letters in print, E████ displayed legible output.  He displayed accurate line alignment and letter spacing.  However, E████ displayed poor closure of the letter "K", displayed inaccurate letter formation, and formed the letter "Q" upside down.  E████ wrote the numbers 1-20 with 100% accuracy.  E████ was able to copy basic near-point and far-point sentences demonstrating accurate line alignment, word spacing, punctuation, and capitalization for small amounts or writing.  E████ independently performed three basic dictation skills.  E████ composed two simple sentences consisting accurate line alignment, word spacing, and punctuation.

At this time, E████ is able to produce legible manuscript output for small amounts or writing.  However, he displays poor formation of many of the letters and numbers which impacts his rate of production and writing fluency for classroom based assignments.  E████ should consistently be encouraged to display good desk posture (appropriate chair and desk height, hips and knees at ninety degrees, feet flat on the floor, upright trunk, opposite hand stabilizing paper, proper paper tilt).  He should be provided with a letter strip to reference to improve letter formation and writing efficiency.  A structured cursive handwriting program will assist with writing fluency and overall formation.

- **Visual Perceptual Skills/ Visual Motor Integration:** Visual Motor and Visual Perceptual skills were assessed using <u>The Developmental Test of Visual Motor Integration (VMI)</u> and the <u>Test of Visual-Perceptual Skills (non-motor) – REVISED (TVPS)</u>.

The <u>VMI</u> is used to help identify significant difficulties that some students have in integrating, or coordinating, their visual perceptual and motor (finger and hand movement) abilities.  Good visual motor integration is well coordinated visual perception and finger-hand movements.  The primary purpose of this testing is to help identify the difficulties a student may have with integrating and coordinating visual-perceptual and motor abilities.  E██████ results are as follows:

89

E████ M███████
Occupational Therapy Evaluation
Page 4 of 7

The Developmental Test of Visual-Motor Integration

| Category | VMI Overall | Visual Percept. Section | Motor Section |
|---|---|---|---|
| Raw Scores | 17 | 20 | 22 |
| Standard Scores | 69 | 75 | 81 |
| Scaled Scores | 4 | 5 | 6 |
| Percentiles | 2 | 5 | 10 |
| Age Equivalents | 6 years, 3 months | 7 years, 0 months | 8 years, 0 months |
| Performance Range | Very Low | Low | Below Average |

- **Interpretation:** As revealed in E██████ scores, he exhibits overall visual motor integration skills within the very low range. The overall <u>VMI</u> required E█████ to integrate both visual and motor information to copy a series of increasingly complex shapes. The visual component required E█████ to choose one geometric form among competing forms to match the initial stimulus. The motor component required him to trace the stimulus forms accurately, without going outside double-lined paths. On the overall section, E█████ required verbal cues to take his time on each item. He demonstrated difficulty on forms with overlapping shapes and more complex angles and scored within the very low range. He had difficulty integrating both visual and motor information. E█████ scored in the low range on the visual perceptual section indicating difficulty attending to specific details and matching. On the motor section, E█████ had difficulty with refined pencil control and scored within the below average range. Throughout, the visual perception and motor coordination sections, E█████ required verbal cues to take his time and maintain an organized approach to the tasks. When more specifically assessed, his visual motor integration is found to be within the very low range. This is consistent with the quality of his output observed on the Bruininks-Oseretsky Test of Motor Proficiency. Difficulties in the area of visual motor integration, may impact E██████ ability to copy items off the board, line-up math problems, complete graphs and charts, organize materials, and overall handwriting production.

The <u>TVPS-R</u> was additionally administered to assess further E███████ visual perceptual skills. Visual perceptual skills are the ability to perceive, process, and respond to objects. It is the capacity to interpret or give meaning to what is seen. E█████ was asked to look at several pictures, listen to specific directions, and choose the appropriate answer. The results are as follows:

Test of Visual Perceptual Skills (non-motor) -- Revised

| Category | Standard Scores AVG=100 | Scaled Scores AVG=10 | Percentile Ranks AVG=50 | Definition of Terms |
|---|---|---|---|---|
| Visual Discrim. | 99 | 10 | 47 | To visually perceive differences and match forms. |
| Visual Memory | 101 | 10 | 53 | Remember characteristics of form for immediate recall and being able to find among other forms. |

90

E█████ M█████
Occupational Therapy Evaluation
Page 5 of 7

| Visual Spatial Relations | 109 | 12 | 73 | To be able to differentiate among similar forms which form or part is going in a different direction. |
| Visual Form-Constancy | 102 | 10 | 55 | Ability to recognize basic form despite difference in size, shape, and/or orientation. |
| Vis. Seq. Memory | 122 | 14 | 93 | Remember series of forms for immediate recall to find among competing series. |
| Visual Fig. Ground | 105 | 11 | 63 | Perceive form visually and to find hidden among other forms. |
| Visual. Closure | 84 | 7 | 14 | Determine among unfinished forms the one that is the same as a completed form. |

- **Interpretation:** According to the TVPS-R, E█████ presents with overall visual perceptual skills in the average range when compared to other children his age. He received a Perceptual Quotient of 104, placing him in the 60th percentile. E█████ scored within the average range on six of the seven subtests. Relative weakness was noted in the area of Visual Closure as he scored within the below average range. E█████ seems to have difficulty with closure on related school based tasks such as handwriting. This relative weakness may impact his ability to be efficient with writing and related tasks.

- **Summary:** E█████ is a twelve year, two month old student who currently attends Stanton Elementary School in Washington, DC. According to records, E█████ has demonstrated difficulty with academic progression within the classroom. Throughout the evaluation in the one to one environment, E█████ was cooperative, friendly, polite, and well behaved. E█████ displays adequate sensory processing skills. His gross motor skills appear to be within the average range and are functional for the school environment. E█████ overall fine motor skills are within the above average range, however the quality of his performance on the visual motor subtest is below what would be expected of student's his age. When more specifically assessed, his overall visual motor integration is found to be within the very low range and can negatively impact upon his ability to produce written work or to copy accurately. Visual perceptual skills are felt to be in the average range when compared to other children his age with a relative weakness noted in visual closure skills. E█████ presents with low average manuscript handwriting skills, however has difficulty with letter formation and uses an inefficient bottom to top approach when writing. Rate of production and writing fluency is below what would be expected. It should be noted that many student's E█████ age have learned to use cursive writing.

E█████ appears as a compliant student who responded well to support, verbal encouragement, and positive reinforcement. E█████ currently presents as a student with visual motor integration within the very low range, below average writing fluency, and difficulties with academic progression. Therefore, he will benefit from school based Occupational Therapy one time a week for 30 minutes. Occupational therapy service should be incorporated within E█████ classroom and home environments to increase his overall functioning and improve performance within school.

- **Recommendations:**
1. **Team:** Review of this report with classroom staff, related service providers, and caregivers.

91

E███ M█████
Occupational Therapy Evaluation
Page 6 of 7

2. **Occupational Therapy:**
   An Occupational Therapist should provide direct OT services for 1 x 30 minutes a week to improve E█████ visual motor integration and writing fluency to assist with improving academic progression. The Occupational Therapist should collaborate with E█████ teacher to discuss compensatory strategies for classroom assignments to improve success in academics and functional classroom performance. Intervention should be well integrated into the classroom and home environments to promote carryover and skill development. The focus of the intervention should be:
   a. Improve Visual Motor Integration.
   b. Improve overall handwriting, closure, and fluency. The use of a structured cursive program is recommended. *Handwriting Without Tears* is one good option and is available at www.hwtears.com, phone 301-983-8409, and fax 301-983-6821.
   c. Improve organizational skills.

3. **Classroom Accommodations:**
   a. Encouragement to maintain proper desk and writing posture (appropriate chair and desk height, hips and knees at ninety degrees, feet flat on the floor, upright trunk, opposite hand stabilizing paper, proper paper tilt).
   b. Positive reinforcement (i.e. small rewards, movement breaks) when work is completed in an accurate and efficient way.
   c. E█████ may benefit from preferential seating at the front of the class.
   d. A clear letter strip to reference for letter formation
   e. A near-point model for E████ to work from to assist with copying items from the board.
   f. A well organized, neat, and clear chalkboard or dry erase board.
   g. Increased time to complete and proofread writing assignments.
   h. Adapted paper to assist with lining up math calculations. Try math organizers from www.do2learn.com
   i. Provide verbal or visual cues to move the guide along as he listens to the teachers read.
   j. Incorporate visual aids (i.e., proof-reading checklists, graphic organizers, word banks) to assist with written output. Try graphic organizers from www.teach-nology.com
   k. Rest and movement breaks within the classroom and between lessons throughout the day.
   l. Limit excessive materials on desk/ table/ working area.
   m. Incorporate time to clean up and organize desk to help E████ maintain a neat working area.
   n. Increased opportunities to utilize keyboarding and word processing. *Mavis Beacon Teaches Typing* is one good option available at most computer/software supply stores. Another good option is *Keyboarding Skills* by Diana Hanbury King available at 1-800-225-5750.

E██ M██
Occupational Therapy Evaluation
Page 7 of 7

3. **Medical Recommendations**
   a. An Ophthalmologic Evaluation is recommended to rule out any vision difficulties.
   b. An Audiological Evaluation is recommended to rule out any hearing difficulties.

It has been a pleasure working with E██. If I can be of further assistance, please do not hesitate to contact me at (202) 302-0961.

Lori C. Plumb, OTR/L
Occupational Therapist
Evaluator

Kristin S. Conaboy, OTR/L
Occupational Therapist
Board Certified Disability Analyst

93

## Ellen D. Dalton, Esq.

| | |
|---|---|
| **From:** | "Hill-Blidi, Lucille (ES)" <Lucille.Hill-Blidi@k12.dc.us> |
| **To:** | "Hill-Blidi, Lucille (ES)" <Lucille.Hill-Blidi@k12.dc.us>; "Ellen D. Dalton, Esq." <e.dalton@daltonlaw.com> |
| **Cc:** | "Brooks, Norman (ES)" <Norman.Brooks@k12.dc.us> |
| **Sent:** | Monday, September 25, 2006 8:16 AM |
| **Subject:** | RE: E███████ M███████ |

Ms. Dalton,
This is a correction to my previous e-mail. The 29th of September as we decided.
Thanks
Lucille Hill-Blidi

---

From: Hill-Blidi, Lucille (ES)
Sent: Fri 9/22/2006 1:01 PM
To: Ellen D. Dalton, Esq.
Cc: Brooks, Norman (ES)
Subject: RE: E███████ M███████

Please confirm this meeting on Friday, September 19th 10:00 a.m. I can be contacted on (202) 645-4332.
Thanks, Lucille Hill-Blidi

---

From: Ellen D. Dalton, Esq. [mailto:e.dalton@daltonlaw.com]
Sent: Fri 9/22/2006 9:52 AM
To: Hill-Blidi, Lucille (ES)
Subject: E███████ M███████

THIS IS TO CONFIRM THAT WE HAVE DISCUSSED HOLDING THE MDT/IEP MEETNG FOR THE ABOVE STUDENT TO REVIEW THE INDEPENDENT EVALUATIONS ON EITHER MONDAY, SEPTEMBER 25TH @1:30 pm OR FRIDAY, SEPTMBER 10:00 am. IT IS MY UNDERSTANDING THAT YOU WILL CALL ME BACK OR EMAIL ME WITH THE CONFIRMED DATE AND TIME

THANK YOU

Ellen Douglass Dalton, Esq.
Dalton, Dalton & Houston, P.C.
1008 Pendleton Street
Alexandria, VA 22314-1837
Tel: (703) 739-4300 x228
Fax: (703) 739-2323

EM-08       94

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)/IEP
MEETING NOTES

MDT | 

MDT REFERRAL DATE: _____

STUDENT: ~~Everett M~~    SCHOOL: Stanton    DATE: 9/29/06

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Vanessa Brown | Vanessa Brown | Mother |
| Ellen Douglass Dalton | Ellen Douglass Walton | Atty for Parent |
| Tara M. Benn, M.ed | Tara T. Benn | School Psychologist |
| Norman Brooks | N.H. Brooks | Principal |
| Lucille Hill-Blidi | Lucille Hill-Blidi | Counselor |
| Wilbert Jones | Wilbert Jones | Special Education Teacher |
| Ingrid L. Gonzales | Ingrid L. Gonzales | Speech & Language S.L. |

Ms. Benn: IQ/Gen. Overall intelligence    Psycho-education
          Recommendation LD - continuation

1) 75  IQ
   Borderline
2) Academic 48 Low range

Ms. Lambert: Agree with Therapist; Recommendations.
3) School based therapy    30 minute
   Recommendation.

4) Math some process long division : Reading is greatest weakness
(Mr. Jones) Comprehension very low: Computes

   Recommendations:
5) Speech and Language testing will be done
   (will not hold up placement).

6) 27.5 hours of special ed.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**INDIVIDUALIZED EDUCATION PROGRAM**
**(IEP)**
MEETING NOTES

STUDENT  E███ M███    SCHOOL _Stanton E.S._   DATE: _9-29-06_

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Vanessa Brown | Vanessa Bryan | Mother |
| Ellen Douglass Dalton | Ellen Douglass Dalton | Advocate / Atty. |
| Tara M. Benn, M.Ed. | Tara M. Benn | School Psychologist |
| Norman K. Brooks | Norman K. Brooks | Principal |
| | | Speech Pathologist |
| Wilber J. Torres | | |
| | | Special Education Teacher |

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **M_____** First **E_____** MI

Student ID **9059776** Soc. Sec. No. _____ Age: **12** Grade **6**

Gender ☒M ☐F Date of Birth **__ __ 94** Ethnic Group **African-American**

Address **2700** **Bruce Place** **SE**
House No.    Street Name    Quadrant    Apartment #
**Washington**    **DC**    **2000**
City    State    Zip Code

☐ Non-attending

Attending School **Stanton ES** Home School **Stanton ES**

☒Elem. ☐ Mid/JHS ☐SHS ☐CWS /

Parent **Vanessa Brown**

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home **202-610-9760** Work

## II. CURRENT INFORMATION

Date of IEP Meeting: **9/29/06**

Date of Last IEP Meeting: **3/17/05**

Date of Most Recent Eligibility Decision: _____

Purpose of IEP Conference:
☐ Initial IEP ☒ Review of IEP
☐ Requested Eval. ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: **III**

ADDENDA TO BE ATTACHED AS NEEDED Check the appropriate box(es)

| BEHAVIOR | ☒ | TRANSPORTATION |
| ESY | | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | N/A | Native lang. |
| Parent | English | English | English | Native lang. |
| Home | English | N/A | N/A | Native lang |

To be completed by Office of Bilingual Education English and Math Proficiency Assessment
Oral _____
Rdg./ Written _____
Instrument: _____
Date: _____

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | FREQUENCY Hr./ Min D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|
| Specialized Inst. | 27.0 27.0 | Hr. Week | Spec. Ed. Teacher | 10/2/06 | 10 mos |
| Occupational Therapy | .5 | Hr. Week | Occupational Therapist | 10/2/06 | 10 mos |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| TOTAL | 27.5 27.5 | Hours Per Week | | | |

## V. Disability(ies)

**Learning - Disability**

☐ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services ☐ 0-20% ☐ 21-60% ☒ 61-100%

Percent of time NOT in a Regular Education Setting **100%**

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Lucille Hill-Blidi, Counselor    _Lucille Hill-Blidi_

Sara M. Benn, MEd, School Psychologist

Norman K. Brooks, Sr    _Norman K. B___

Ellen Douglass Dalton    _Ellen Douglass Dalton_

Vanessa Brown    _Vanessa Brown_

_____, Speech Therapist

☑ I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature _Vanessa Brown_    Date **9-29-06**

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

**EM-10**    97

| Student Name | ▓▓▓▓▓▓ | Managing School | Stanton Elementary | DCPS - IEP |
| Student ID Number | ▓▓▓▓▓ DOB ▓▓▓-94 | Attending School | Stanton Elementary | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

Additional Comments: ☐

**Academic Areas: (Evaluator)** Edgar Stewart, Jr., Ph.D., reviewed by Tara M. Benz, M.Ed.

**Math Strengths:**

Basic math calculations were determined to be a strength.

**Impact of disability on educational performance in general education curriculum:**

Difficulty with tasks that require higher order reasoning i.e.

**Reading Strengths:** Mathematical reasoning

▓▓▓▓▓ reading skills were determined to be extremely slow

**Impact of disability on educational performance in general education curriculum:** Strengths were not identified.

Difficulty with tasks that require decoding, phoneme manipulation and reading comprehension.

| | Score(s) When Available | |
|---|---|---|
| | WIAT-II | |
| Math Cal. | 86 | 5.2 |
| Math Rea. | 40 | PreK5:2 |
| See goal page: | | |
| Date: | 3-28-06 | |
| Rdg. Com | 47 | 1.2 |
| Rdg. Basic | 57 | 1.8 |
| Written Ex. | 59 | 1.8 |
| See goal page: | | |
| Date: | 3-28-06 | |

**Communication (Speech & Language) (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| | Score(s) When Available |
|---|---|
| Exp.Lang. | |
| Rec- Lang. | |
| Artic | |
| Voice | |
| Fluency | |
| Exp. Voc. | |
| Rec. Voc. | |
| See goal page: | |
| Date: | |

**Motor/Health (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| | Score(s) /Results When Available |
|---|---|
| | _____ |
| | _____ |
| | _____ |
| See goal page: | |
| Date: | |

**Social Emotional Behavioral Areas: (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| | Score(s) When Available |
|---|---|
| | _____ |
| | _____ |
| See goal page: | |
| Date: | |

**Cognitive/Adaptive Behavior: (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| | Score(s) When Available |
|---|---|
| | _____ |
| | _____ |
| See goal page: | |
| Date: | |

**Prevocational Skills: (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

| | Score(s) When Available |
|---|---|
| | _____ |
| | _____ |
| See goal page: | |
| Date: | |

98

| Student Name: ████ M██████ | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|
| Student ID Number 9059776    DOB ██-94 | Attending School | Stanton ES | Page 3 of 4 |

**☐IL SPECIALIZED SERVICES**    Additional Comments:                                    Goal Number: ☐

Area addressed by goal: _Academic Area: Mathematics_

**NNUAL GOAL: (including mastery criteria.)**

E████ will increase his math skills by six months growth, by mastering the following short-term objectives with 80% accuracy.

Provider(s): _Special Education Teacher_

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ████ will be able to add and subtract three & ur digit numbers with regrouping with 80% accuracy. | | Monthly |
| ████ will be able to give multiplication facts for 3,4,6 Iso following Multiplication Chart with 80% accuracy. | | Monthly |
| E███ will be able to do simple division by eparating and counting with 80% accuracy. | | Monthly |
| ████ will be able to divide number with remainders ith 80% accuracy. | | Monthly |
| ████ will be able to solve simple word problems involving subtraction or addition with 80% accuracy. | | Monthly |
| ████ will be to write given amounts of money with 80% accuracy. | | Monthly |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    (Test)    Documented Observation    Report    Other _____

| Student Name | E_____ M_____ | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9059776 | DOB ___-94 | Attending School | Stanton ES | Page 3 of 4 |

| UL SPECIALIZED SERVICES | Additional Comments: | Goal Number: [ ] |
|---|---|---|
| | Area addressed by goal: | Academic area: Reading |

**ANNUAL GOAL: (including mastery criteria.)**

E_____ will increase his reading skill by six months growth, by mastering the following short-term objectives with 80% accuracy.

Provider(s): Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| E_____ will be able to identify all vowell sounds with 8% accuracy. (long and short | | Monthly |
| E_____ will be able to recognize the initial sound blends of st, pl, bl br, tr, dr, gr and fr with 80% accuracy. | | Monthly |
| E_____ will be able to read the 1st, 2nd 3rd grades Dolch list with 80% accuracy. | | Monthly |
| E_____ will be able to apply word attack skills to content-area words with 80% accuracy. | | Monthly |
| E_____ will be able to expand reading interests with 80% accuracy. | | Monthly |
| E_____ will be able to choose and sustain the reading of an appropriate book (on grade level) with 80% accuracy. | | Monthly |

**EVALUATION PROCEDURE(S)**

(Portfolio)   Log   Chart   (Test)   Documented Observation   Report   Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

100

| Student Name: ~~Ronald M.~~ | Managing School | Stanton ES | DCPS - IEP |
|---|---|---|---|
| Student ID Number: 9059776   DOB ~~-94~~ | Attending School | Stanton ES | Page 3 of 4 |

**III. SPECIALIZED SERVICES**   **Additional Comments:**                    Goal Number: [ ]

Area addressed by goal:  *Academic Area: Written Expression*

**ANNUAL GOAL: (including mastery criteria.)**

~~Ronald~~ will Increase his Written Expression skills by six

months growth, by mastering the following short-term objectives

with 80% accuracy.

Provider(s):  Special Education Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| ~~Ronald~~ will be able to explain ideas using clear descriptions with 80% accuracy. | | Monthly |
| ~~Ronald~~ will be able to express ideas in grammatically complete sentences with 80% accuracy. | | Monthly |
| ~~Ronald~~ will be able to choose appropriate words to convey intended meaning with 80% accuracy. | | Monthly |
| ~~Ronald~~ will be able to generate ideas for writing with 80% accuracy. | | Monthly |
| ~~Ronald~~ will be able to write two or more sentences on a topic. | | Monthly |

**EVALUATION PROCEDURE(S)**

(Portfolio)    Log    Chart    (Test)    Documented Observation    Report    Other _____

| Student Name | ~~E____ M____~~ | Managing School | | DCPS - IEP |
| Student ID Number | 9059776 | DOB __/__/94 | Attending School | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in **general education**? ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires out of general ed placement due to lack of improvement.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for **testing**: ☐ None needed

Timing/Scheduling: Extended time, short breaks
Setting: small group
Presentation: Repeated directions, simple directions, test read aloud
Response: oral responses
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V   Portfolio

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading
☐ Mathematics
☐ Written Expression
☐ Other:
☐ None

☐ Physical/Sensory
☐ Social Emotional
☐ Physical Development

☐ Transition
☐ Vocational
☐ Independent Living
☐ Speech/Language

**Modifications:**
☐ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Out of general ed placement | General Ed Placement did not meet the students needs | and Combination Setting |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects :

**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

Office of Special Education
825 North Capitol Street, N.E., 6th Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518
www.k12.dc.us

## REVIEW OF INDEPENDENT ASSESSMENT

Student _Breanah M_____     Student ID Number _____

School _Stanton E.S._   Grade _6_   Date of Birth _____94_   Age _12_

Date of Assessment _3/28/06_     Date of Review _9/25/06_

**Type of Independent Assessment (Check One)**

Clinical _____          Educational _____        Neuropsychological _____
Psychiatric _____       Psychoeducational _✓_    Other _____

**Part I: Review by Qualified Personnel**

Name and title of DCPS qualified personnel reviewing assessment: _Tara M. Benny, M.Ed._

Name and title of person who completed the independent assessment/and name and title of supervisor (if applicable)
_Edgar A. Stewart, Jr., Ph.D., Licensed Clinical Psychologist_

If the person who completed the assessment is an audiologist, occupational therapist, physical therapist, psychologist, physician, or speech-language therapist, is the person licensed? _✓_ Yes _____ No

The report is written, dated, and signed by the individual examiner who conducted the assessment or appropriate designee and appears on agency/company letterhead? _✓_ Yes _____ No

Testing and assessment materials and procedures used to assess the student's need for special education and related services are:
- Valid and reliable? _____ Yes _____ No
- Current version of assessment (newer version that is more than 2 years old does not exist)? _✓_ Yes _____ No
- Provided and administered in the student's native language, unless it is clearly not feasible to do so? _✓_ Yes _____ No
- Valid for the specific purpose for which they are used? _✓_ Yes _____ No

The results of the assessment procedures selected for use with a student with impaired sensory, manual, or speaking skills accurately reflect the student's potential or achievement level or the other factors that the procedures are intended to measure?
_____ Yes _____ No _✓_ Not applicable

**Part II: Review, Considerations, and Conclusions**

The report includes the following:
- A review of relevant background information? _✓_ Yes _____ No
- A description of the student's performance on the assessment? _✓_ Yes _____ No
- A description of the student's performance in the current school environment? _____ Yes _✓_ No
- A variety of assessment tools and strategies to directly assist in determining if the student has an educational handicapping condition as defined by IDEA and Chapter 30? _____ Yes _____ No

Are there additional data available to the school which suggests that there are other factors which significantly impact the student, such as health, attendance, social, or other issues? _____ Yes _✓_ No
    If yes, please specify _____

Are conclusions supported by the data provided? _✓_ Yes _____ No
Is additional information needed? _____ Yes _✓_ No
    If yes, please specify _____
Reviewer has had direct contact with student? _____ Yes _✓_ No

As a result of items in Parts I and II, a DCPS assessment is waived _✓_ Yes _____ No _____ Yes, with reservations (attach note)

---

## Children First

9/23/2004                                                              103

# SPEECH AND LANGUAGE EVALUATION
## Department of Special Education

Name: E███ M█████
Date of Birth: ███/1994
Chronological Age: 12;7
School: Stanton Elementary School
Date of Evaluation: 10/16/2006
Date of Report: 10/22/2006

**Reason for Referral:**
E███ is a 12;7 month old male who was referred for a speech/language evaluation due to academic concerns and to determine the current special education needs of this student, if warranted.

**Behavioral Observations:**
B███ accompanied this clinician to the testing room without difficulties. He responded to and initiated conversation with this examiner and was cooperative throughout the session. At times, he appeared to be easily distracted. However, he was easily redirected back to all tasks presented.

**Tests Administered:**
*Clinical Evaluation of Language Fundamentals-Fourth Ed.* (CELF-4)
*Expressive One-Word Picture Vocabulary Test* (EOWPVT)
*Receptive One-Word Picture Vocabulary Test* (ROWPVT)
Language Sample

## VOCABULARY

The *Receptive One-Word Picture Vocabulary Test* was administered to the student. The student is presented with a series of test plates that show four illustrations. The examiner orally presents a stimulus word and the student must identify the illustration that shows the meaning of the word.

Mean: = 100; Standard Deviation: = 15
Average Score: = 85- 110
Standard Score = 83

**EM-11**  104

Interpretations/Comments:  E████ achieved a standard score of 84, indicating slightly below average performance in receptive vocabulary skills.

The *Expressive One-Word Picture Vocabulary Test* (EOWPVT)
The student was presented with a series of illustrations that each depicts an object, action, or concept.  The student is asked to name each illustration.

Mean: = 100; Standard Deviation: = 15
Average Score = 85-100

Standard Score: = 73

Interpretation/ Comments:  The EOWPVT was administered to assess single word expressive vocabulary.  E████ achieved a standard score of 73, indicating below average performance in expressive vocabulary skills.  During the administration of the test, E████ was able to label some illustrations up to the 9-year old range.  He often verbalized details about the picture (i.e., that's the thing you put on the horse instead of using the word saddle).  E████ was engaged throughout the administration of this test.

## LANGUAGE

The *Clinical Evaluation of Language Fundamentals-4* (CELF-4) was administered to assess E████ receptive and expressive language skills, especially word meanings (semantics), word and sentence structure (morphology and syntax), and recall and retrieval (memory).  The scores were as follows:

| SUBTESTS | Scaled Scores Average score=  10 +/- 3 |
|---|---|
| Recall Sentences | 7 |
| Formulated Sentences | 9 |
| Word Classes – Total | 4 |
| Concepts and Following Directions | 7 |
| Word Definitions | 6 |
| Understanding Spoken Paragraphs | 5 |
| Core Language Score = 79 | |

105

Average = 100 +/- 15

Receptive Language Score = 70

Expressive Language Score = 83

Language Content = 66

Language Memory = 84

Overall, E██████ presented with a mild-to-moderate delay on this test of receptive and expressive language. While E██████ presented with stronger skills in language structure,

The Recalling Sentences subtest asks the student to repeat verbatim sentences of increasing length ad linguistic complexity. It is designed to examine short-term auditory memory for sentences and to provide a glimpse of underlying syntactic knowledge. E██████ scored in the average range on this subtest.

The Formulated Sentences subtest assesses the student's ability to formulate simple, compound and complex sentences given one-word stimuli and later short phrases. For each item, the student is shown a picture and is asked to use the stimulus word or phrase in a sentence about the picture. The sentences are scored for being semantically meaningful and grammatically correct. E██████ scored in the average range for his age indicating a strength in organizing and producing sentences.

On the Word Classes subtest, for each stimulus item, the student is orally presented with three, and later, four words. The student is asked to choose the two that go together best (receptive) and how they are related (expressive). The relationship between the words may be part/whole, semantic class, synonym, or antonym. E██████ scored in the moderate low range for his age.

Word Definitions subtest for each stimulus item is presented orally in a sentence. The student is then instructed to define the word or tell what the word means by either telling what kind of thing it is or telling some things about it. E██████ scored below average on this subtest. Weaknesses in this area suggest that he has difficulty with knowledge of definitions of words without context.

The Understanding of Spoken Paragraphs subtest was administered to examine the student's ability to interpret factual and inferential information presented in spoken paragraphs. The student is presented with three paragraphs read orally which may not be repeated. Then five questions pertaining to each paragraph are read orally. These questions may be repeated in association with the paragraph. E██████ performed in the moderately low range and indicates difficulty with comprehension of main ideas. It is the

106

opinion of this examiner that E███ did not listen actively on this subtest due to the content of the story. He stated that it was boring and was observed looking around the room as the story was read aloud.

The clinician later read 2 additional stories aloud that were of interest to E███ and he performed within the average range. Therefore, it is the opinion of this examiner that E███ score on the spoken paragraphs subtest is not a reflection of his true abilities.

## LANGUAGE SAMPLE

An informal sample was obtained throughout this assessment during rapport building and in-between test and/or subtests. E███ articulation was judged to be good and he spoke in simple and complex sentences. Based on his spontaneous sample, E███ ability to communicate his ideas was age-appropriate.

The areas of voice and fluency are within normal limits as determined by this assessment data and observations.

## SUMMARY AND IMPRESSIONS

E███ is a 12 year 7 month old male sixth grade student who is currently attending Stanton Elementary School. Overall, E███ presented with significant deficits in the area of vocabulary. Receptive and expressive language abilities also fell within the mild-to-moderate range. Strengths were revealed in his ability to follow directions, recall sentences, formulate sentences and understand orally presented information. Weaknesses were demonstrated in the areas of word definitions, receptive and expressive vocabulary skills.

Based on today's findings, E███ presents with vocabulary and reading weaknesses that impact on his educational performance in the classroom. It is suggested that he participate in a language arts program that will enhance his reading and vocabulary awareness. Speech and language intervention is not recommended at this time.

Respectfully submitted,

Ingrid L. Goganious
Speech and Language Therapist

107

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# Due Process Complaint Notice

- This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) an/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. <u>A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA)</u>.

- The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8ᵗʰ Floor, Washington, D.C. 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice</u>. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting.  You will be contacted by a representative of the Local Educational Agency to schedule the meeting.  <u>The Student Hearing Office does NOT schedule resolution meetings</u>.

- Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.

A.    <u>INFORMATION ABOUT THE STUDENT</u>:

Student Name   E████ M████                          Birth Date:   ███/94

Address:    2700 Bruce Place SE
            Washington, DC 20020

Present School of Attendance:    Stanton E.S.

                                        No          (If yes, you must provide a copy of this notice
    Is this a charter school?  _____          to the charter school principal or director)

Parent/Guardian of the Student:    Vanessa Brown

Address (If different from the student's above):  _____

**EM-12**

108

Phone/Contact Number:    202-610-9760 (h)    Fax Number (if applicable): _____

B.    **Individual Making the Complaint/Request for Due Process Hearing:**

Name:    Vanessa Brown _____

Complete Address:    See Above _____

Phone: (h)    See Above    (w)    N/A    (Fax)    N/A    (e-mail)    N/A

Relationship to Student:

■ Parent                  ☐ Legal Guardian                  ☐ Parent Surrogate

☐ Self/Student            ☐ Local Education Agency (LEA)    ☐ Parent Advocate

C.    **Legal Representative / Attorney:**

Name:    Ellen Douglass Dalton, Esq.    Dalton, Dalton & Houston, P.C. _____

Address:    1008 Pendleton Street _____

            Alexandria, VA 22314-1837 _____

Phone: (h) _____ (w) (703) 739-4300  (Fax) (703) 739-2323  (e-mail) e.dalton@daltonlaw.com

Will attorney / legal representative attend the resolution session?    ■ Yes    ☐ No

D.    **Complaint Made Against (check all that apply):**

■ DCPS school (name of school if different from page one) _____

☐ Charter school (name of school if different from page one) _____

☐ Non-public school or residential treatment facility (name) _____

☐ Parent _____

E.    **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to receive this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

■ I wish to waive the Resolution Session Meeting

F.    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing.  Please check all that apply:

☐ I am requesting mediation as an alternative to the resolution session meeting.

2

109

☐   I am requesting mediation and a due process hearing.

☐   I am requesting mediation only at this time.

G.    Facts and Reasons for the Complaint:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.    What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

E████ is a twelve (12) year old boy with a Learning Disability. He currently attends Stanton Elementary School. In a previous HOD dated February 17, 2006, DCPS was ordered to fund the following independent evaluations: psycho-educational, Adaptive Vineland Assessment, and occupational therapy. It was further ordered that DCPS convene a meeting to review and revise the IEP, discuss and determine placement, and discuss and determine if compensatory education is warranted within fifteen school days of the receipt of the last evaluation.

The psycho-educational evaluation and occupational therapy evaluation were completed and forwarded to Stanton Elementary School. On September 29, 2006, the IEP team met to review the evaluations and revise the IEP. The team determined that E████ required a full time, 100% Out of General Education IEP. This includes twenty-seven hours of a week of specialized instruction, and one half hour a week of occupational therapy. To date, DCPS has failed to issue an appropriate notice of placement.

2.    To the extent known to you at this time, how can this problem be resolved?

1. A determination that DCPS denied E████, a Free Appropriate Public Education (FAPE) by failing to issue an appropriate Notice of Placement.

2. A determination that DCPS be required to fund and place the student at an appropriate, 100% Out of General Education placement including, but not limited to, Accotink Academy or High Road Middle School for the school year 2006/2007 with transportation.

3. A determination that DCPS be required to discuss and determine a compensatory education plan for the period of time prescribed in the February 17, 2006 HOD, as well as the time E████ has been left in an inappropriate placement.

3.    Issues Presented:

1. Whether DCPS denied E████, a Free Appropriate Public Education (FAPE) by failing to issue an appropriate Notice of Placement.

2. Whether DCPS denied E████ a FAPE by failing to discuss and determine a compensatory education plan, as prescribed in the February 17, 2006 HOD.

110

<u>Estimated amount of time needed for the hearing:</u>          6 hours

Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing. Please indicate if you believe more than two hours will be needed

I.    <u>Accommodations and Assistance Needed</u>:

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:

☐    Interpreter (please specify the type)                    _____

☐    Special Communication (please describe the type)        _____

☐    Special Accommodation for Disability (please be specific)  _____

☐    Other                                                 _____

J.    <u>Waiver of Procedural Safeguards</u>:

■    **I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.**

K.    <u>Parent Signature and Affirmation</u>:
**I affirm that the information provided on this form is true and correct.**

_____
Signature of Parent or Guardian                    Date

L.    <u>Signature of Attorney / Legal Representative</u>:

*Ellen Douglass Dalton*                    10/16/2006
_____
**Legal Representative Advocate (if applicable)**        **Date**

**Mail, fax or deliver this complaint notice to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC 20002**
**Fax number: 202/442-5556**

4

111

NOV-02-2006  16:16        D   GENERAL COUNSEL                2024425097

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

E█████ M█████, DOB: ███/94

      Petitioner,

**v.**

**District of Columbia Public Schools**

      Respondent

---

## DCPS RESPONSE TO DUE PROCESS COMPLAINT NOTICE

    The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Due Process Complaint Notice ("Complaint") filed on or about October 16, 2006 on behalf of E█████ M█████, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA"), Sec. 615(c)(2)(B).

**I. DCPS Has Not Failed To Issue A Notice Of Placement**
DCPS has not failed to issue a notice of placement.  If a PNOP should be issued and has not, DCPS will issue one.

**II.  DCPS Has Not Failed To Determine If Compensatory Education Is Warranted**
DCPS has not failed to determine if compensatory education is warranted.  This will be determined once the student is in his new placement.

**EM-13**

Furthermore, DCPS will be attempting to schedule a resolution meeting pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA"), Sec. 615(f)(1)(B) to address the specific issues in the due process complaint notice.


Respectfully submitted,


Katherine G. Rodi
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone # 202-442-5167
Fax # 202-442-5097/8

113

# Stanton Elementary School

November 2, 2006

**Via Facsimile**
Ellen Douglass Dalton Esq.
1008 Pendleton Street
Alexandria, VA 22314-1837

Re: E█████ M█████ DOB:███/00

Dear , Ms.Ellen Douglass

I am in receipt of a complaint notice filed on behalf of the above named student. In an effort to schedule a resolution session enclosed is a letter of invitation with available dates to meet.

Thank you for your attention to this matter.

Sincerely,

Brenda Kelly

Brenda Kelly,
Special Education Coordinator

CC:    Rashida Wilson
       Norman Brooks

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
SPECIAL EDUCATION

MULTIDISCIPLINARY TEAM
(MDT)
Meeting Notice                                          Date  11/2/2006

MDT Referral Date: _____                     Re: _____

Dear _____ Ms. Ellen Dalton/ Ms. Brown _____

A multidisciplinary team (MDT) meeting is scheduled to discuss the status of your child's educational needs. Your participation is essential, and we look forward to your valuable input. The purpose and details of the meeting are printed below. You and the school may have additional individuals attend the meeting who have knowledge or special expertise regarding your child. Other invited participants are listed under MDT members.

**Please check one date for confirmation:**

Place/Location:

Stanton  Elementary School

| | Date: 11/13/2006 | Time: 11:30 am | ; or |
| | Date: 11/13/2006 | Time: 1:00 pm | ; or |
| | Date: 11/13/2006 | Time: 2:00 pm | |

If a suggested meeting time is inconvenient, please call the counselor and/or special education coordinator for a mutual time to address the concerns. Participation by teleconference may be requested if other arrangements prove to be unsuccessful.

**\*The purpose of this meeting is to:**

[X] * \*develop/review IEP (including consideration of extended school year (ESY) services
[X] \*\*review evaluation or reevaluation information
[ ] develop the student evaluation plan (SEP)
[X] discuss documented levels of service
[ ] \*\*review records to support the completion of services as follows:

[ ] \*\*discuss CompEd
[ ] \*consider transition service needs
[ ] discuss quarterly review
[ ] behavior plan review

[X] discuss placement
[ ] determine manifestation
[X] discuss eligibility

[ ] Graduated   [ ] Completed Services   [ ] Aged Out   [ ] Transferred Out of District   [ ] Dropped out
[ ] Other: _____

**\*\*Placement will be discussed.**

MDT Members:
[X] Principal or Designee        [ ] General Education Teacher     [ ] Psychologist
[X] Parent                        [X] Special Education Teacher     [X] Other: as needed
[X] LEA Representative            [ ] Speech and Language           _____
[ ] Student                       [ ] Social Worker                 _____

Any questions you may have concerning your child's program will be discussed at the above meeting. A copy of the Procedural Safeguards for parents is enclosed for your information. If the school can be of assistance to you, please contact
Ms. Brenda Kelly, SEC    at    202/-645-7150    (school telephone number).

If the purpose of the meeting includes consideration of a transition plan, your child is invited to attend and a representative of the following agency(ies) may be invited, if appropriate
_____                                    *
*
See attachments, when appropriate, for - EVALUATION PROCEDURES, TEST, RECORDS OR REPORTS USED

**\*After the third attempt to contact the parent, the meeting will be held without further notice.**

Please sign below and return this page to the school.

Parent/Guardian/Surrogate Signature _____
I acknowledge receipt of the Procedural Safeguards for parents (due process procedures).        [ ] Yes    [ ] No        115

Nov 02 06 10:33a      Stanton Elemtary School



ʒᴅᴅ

# STANTON ELEMENTARY SCHOOL

Norman K. Brooks
Principal

Patricia T. Brantley
Assistant Principal

2701 Naylor Road, S.E.      Washington, D.C. 20020      Phone (202) 645-3255    Fax (202) 645-3264

## FACSIMILE COVER SHEET

Date: **11/02/06**

To: **Ellen Dalton**          Facsimile Number: **703 739-2323**

From: **Brenda Kelly**          Number of Page(s): **3** (including cover)

This message is intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at (202) 645-3255. Thank you for your cooperation.

Comments: **Re: E████ M██████**
**Stanton Elementary**

116

Law Offices
**DALTON, DALTON & HOUSTON, P.C.**

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile:  (703)-739-2323

Washington DC. Office:
601 Pennsylvania Avenue, NW
South Building,  Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

Paul S. Dalton *˙*
Ellen Douglass Dalton *˙*
William E. Houston^*˙*
Laura E. Duos¯*
Jessica M. Smith ˙*

* ADMITTED IN W. VA.
*ADMITTED IN D.C.
^ADMITTED IN P.A.

¬ADMITTED IN MD
*ADMITTED TO THE U.S. SUPREME COURT
¶ ADMITTED IN VA

November 3, 2006

Stanton Elementary School
Special Education Coordinator
2701 Naylor Road, SE
Washington, DC 20020

RE: E▓▓▓ M▓▓▓▓
DOB:▓▓▓/94

Dear Ms. Kelly:

I am in receipt of your letter dated November 2, 2006 and your Letter of Invitation for a Resolution Meeting on November 13, 2006.  Without waiving my client's right to assert DCPS's violation of IDEIA in not convening a Resolution Meeting by October 31, 2006, my client agrees to attend a Resolution Meeting on the date requested, November 13, 2006 @ 1:00 PM.

I noted on the Letter of Invitation that numerous purposes for the meeting were marked off that are not relevant to the Complaint filed.  Please note that the two issues in the Complaint 1) DCPS's failure to propose an appropriate placement and 2) DCPS's failure to determine a compensatory education plan are the issues to be discussed at the Resolution Meeting.

I will be attending the meeting but at this point plan to attend via teleconference.  I would appreciate you conferencing me in to participate at the beginning of the meeting.  I can be reached at 703-739- 4300 ext 228.

Sincerely,

*Ellen Douglass Dalton*

Ellen Douglass Dalton, Esq.

cc: Ms. Vanessa Brown

**EM-15**    117

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON. D.C.
*Resolution Meeting*
~~MULTIDISCIPLINARY TEAM~~
(MDT)
MEETING NOTES

MDT |

MDT REFERRAL DATE: _____

MEETING DATE: 11/13/06

STUDENT: E_____ M_____

SCHOOL: Stanton Elementary School

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| | | Parent |
| Ms. Kelly | Mrs. Kelly | Special Education Coordinator |
| Tara M. Benn M. Ed. | Tara M Benn | School Psychologist |
| Annette Dox.R | Annette Dox | Social Worker |
| Wilbert Jones | Wilbatter | Special Education Teacher |
| Vanessa Brown | Vanessa Brown | Mother |
| Ellen Douglass Walton | Ellen Douglass Walton | Atty for Parent |

The meeting was convened and introductions were made.  A copy of the Procedural Manual was given to the parent with a brief explanation and a receipt for the Manual was signed..  The purpose of the meeting was stated: Discuss *Dispute Resolution*

Parent Reports: *Parent/Advocate felt DCPS should have had a placement packet. Parent feels this is a hold-up of E_____ not receiving his education..*

*Compensatory Education: Advocate stated that there was a request for a OT evaluation.*

THE PARENT ☒ IS PRESENT ☐ IS NOT PRESENT AT THE MEETING

AFTER A REVIEW OF THE ASSESSMENTS, IT IS DETERMINED THAT E_____ M_____

☒ IS ELIGIBLE FOR SPECIAL EDUCATION

☐ IS NOT ELIGIBLE FOR SPECIAL EDUCATION

2 of 6   BR

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

X PUBLIC        ___DPCS CHARTER      ___ LEA CHARTER      ___ NONPUBLIC      ___ PRIVATE/RELIGIOUS

**RESOLUTION MEETING NOTES Cont'd.**

Meeting Confirmation Date: _____      Meeting Held: 11/13/06

Student: Enoch M_____      School: Stanton

Parent

• MDT proposes compensatory Education
  DCPS proposes 45 hours of specialized instruction.
  individualize tutoring in exchange for
  missed time in specialized instruction.
• Parent is concerned that E_____ is not
  getting Special Education materials/services.

• Parent/Advocate does not feel comfortable
  with any compensatory Education Services
  without knowing what the determent of Enoch at this time.
• Parent/Advocate proposes Enoch receive
  pre/ and post testing of all acamedic
  areas.
Parent/Advocate request that DCPS perform
educational report to determine
his academic score according
to his cognitive ability to
determine where E_____ is and
where he should be.

3 8 7 BM

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

✓ PUBLIC        ___ DPCS CHARTER        ___ LEA CHARTER        ___ NONPUBLIC        ___ PRIVATE/RELIGIOUS

## RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____        Meeting Held: 11/13/06

Student: E____ M____        School: Stanton

Special Education Teacher: E____ has worked hard this quarter academically. He has made improvement in the area of mathematics but still has lots of room to grow. However, Enoch continues to struggle with reading because he lacks the basic phonemic skills. He does require lots of work in this area in order to show progress in reading. E____ behavior towards the end of this quarter has improved Tremendously. Over all Enoch is a very pleasant student to have despite a few minor issues.

William ____

4 of II RN

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**

✓ PUBLIC      ___ DPCS CHARTER      ___ LEA CHARTER      ___ NONPUBLIC      ___ PRIVATE/RELIGIOUS

**RESOLUTION MEETING NOTES Cont'd.**

Meeting Confirmation Date: _____      Meeting Held: 11/13/06

Student: E——— M——————      School: Stanton ES

---

Compensatory Education:
    OT was two years and two months
late – E——— needs to make up
        this time.
Psycho-educational evaluation.

Intial evaluation
Parent stated E——— was not learning.
He tranferred to an, he sat in the
regular classroom. Parent tranferred
E——— back to Stanton. He is still
not getting his education because
Ms. Jones is pulled to regular classes
to cover classes. E——— contenies to be
uneducated.
    Compensatory Education for the
time of March 2004 – Initial Placement
to Present Time (November 2006)

---

RESOLUTION MEETING NOTES      Page ____      July 11, 2005      121

5 97

### DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### WASHINGTON, D.C.

__ PUBLIC        ___DPCS CHARTER        __ LEA CHARTER        __ NONPUBLIC        __ PRIVATE/RELIGIOUS

### RESOLUTION MEETING NOTES Cont'd.

Meeting Confirmation Date: _____          Meeting Held:_____

Student: E████ M████          School: Stanton

Speech - language: A speech and language evaluation was conducted due to academic concerns. He was administered a series of tests.

CELF-4 (SS=79)
ROWFVT (SS=83)
EOWFVT (SS=73)

Overall, E███ presents with significant deficits in the area of vocabulary. It is suggested that he participate in a language arts program, encourage reading, and more environmental exposure be given to enhance vocabulary skills. Speech and language intervention is not warranted at this time.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

6 of 7

MDT REFERRAL DATE _____          MULTIDISCIPLINARY TEAM (MDT)
                                       CONTINUATION MEETING NOTES
                                       MEETING TYPE: Resolution Mtg

STUDENT ███ M█████ SCHOOL Stanton Elementary School DATE Nov. 13, 2006

OT Discussion for Compensatory Education:
   Mr. Jones reported that ███ handwriting
is fine. No concerns with handwriting
or copying from the board with
   MDT/DCPS              difficulty.


Parent would like

DCPS is proposing 70 hours
of one-to-one tutoring is exchange
for 0 hours of compensatory time
in OT, Parent agrees with the
70 hours

Overall, student will receive 70 hours
of one-to-one tutoring for compensatory
education. Parent participated in the
discussion. Parent can not agree at this time, as she does not
have a fully and complete understanding of the
adverse impact that the loss of Services
had on E███.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, DC

MDT REFERRAL DATE _____

MULTIDISCIPLINARY TEAM (MDT)
CONTINUATION MEETING NOTES
MEETING TYPE: _Resolution Mtg._

7 of 7

STUDENT ▮▮▮▮▮▮▮    SCHOOL _Stanton Elementary School_    DATE _Nov. 13, 2006_

Summary and Recommendations

Based upon MDT, DCPS will look into a placement for ▮▮▮▮.

DCPS is not prepared for placement at this time. We will forward the Placement Placement

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



# Due Process Complaint Disposition

- This form should be used by the parties to notify the Student Hearing Office about important information concerning the outcome of the resolution meeting.
- Please return to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002, Fax number 202/442-5556.

**A.  STUDENT AND CASE INFORMATION:**

Student Name: E_____   M_____          Birth Date: _____-94
          First       MI       Last

SHO Case Number: _____  (if applicable)

**B.  PARENT / GUARDIAN:**

Name: Vanessa                    Brown
      First                       Last

Complete Address: 2700 Bruce Place S.E.
                    Washington  D.C.

Phone: _____  _____  _____
      Home         Work or alternative phone no.   Fax No. if applicable

**C.  LOCAL EDUCATION AGENCY REPRESENTATIVE:**

Brenda Kelly        Special Education Coordinator
Full Name                 Title

Address _____

_____

_____

Phone: _____  _____
      Office           Fax

1

SEID DRN Rev'd. 6/14/05

125

The complaint has been resolved and the parties have reached agreement to the satisfaction of the parent / guardian.  The due process complaint notice and the request for a due process hearing should be dismissed and withdrawn.  The parties are aware that the agreement may be voided by any party within 3 business days of the date the agreement is signed.  The parties have agreed to wait at least 3 business days before filing this form with the Student Hearing Office.

X    The resolution session was unsuccessful.  The case should proceed to a due process hearing.

The resolution session was unsuccessful.  The parties have agreed to try mediation.

The parties mutually agree to waive the resolution session and request mediation and the assignment of a mediator to this case.

The parties mutually agree to waive the resolution session and request that this case proceed to a due process hearing on the merits.

The parent has failed to participate in a resolution meeting as required under the law.  A due process hearing should not be scheduled until further notice

**J.**    **Signature and Affirmation:**

I affirm that the information provided on this form is true and correct.  I also affirm my receipt of the Procedural Safeguards Manual or I have waived my right to receive the Procedural Safeguards Manual.

_Vanessa Brown_    11-13-06
Signature of Parent/Guardian    Date

_Brenda S. Kelly_
Local Educational Agency Representative    Date

Mail, fax or deliver this form to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SHO)
825 North Capitol Street, NE, 8th Floor
Washington, DC  20002
Fax number: 202/442-5556

2

SEID DRN  Rev'd. 6/14/05

126

# COMPENSATORY EDUCATION PLAN*

**Section 1.**
Student Name _____ DOB _____/94  Sex _Male_  Grade _6th_
Age ____ Date of IEP _____ Date of Proposal _____  Home School _Stanton_
Attending School: _Stanton_    Disability: _Learning Disability_
Language _English_  Address: _____
Parent Name: _Vanessa Brown_    Phone(H): _202 610-9760_ (w): _____
Instructional/Related Services Missed: _Specialized Instruction_

Time Period for Delay/Disruption: _March 2004 - November 2006_
Description of Compensatory Education due to __ HOD** __ SA** __ other: DCPS agrees to provide

Student will receive one-to-one tutoring for time
missed in specialized instruction and
0 hours of compensary time in OT

Section II- Compensatory Education Services to be Provided:

| Skill Areas | Provider | Beginning Date | Duration |
|---|---|---|---|
| Reading | Special Education | 12 - 2006 | 70 hrs. for all areas |
| Math | Special Education Teacher | 12 - 2006 | 70 hrs. BR |
| Written Expression | Special Education Teacher | 12 - 2006 | 70 hrs. BR |

Parent Signature: _____   Principal Signature: _____
MDT Members:    Position:
_Brenda Kelly_    _Special Ed. Coordinator_
_Wilbert Jones_    _Special Education Teacher_
_____    _School Psychologist_
_____    _Social Worker_

Section III- Signatures for Services Rendered:

| Provider | Service | Total Hrs. Recd | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Principal Signature: _____   Date _____

**Section IV-** If the services on the plan are not completed by the end of the school year, or if the student transfers before the services are concluded, the IEP/MDT completes the bottom portion of this proposal, attaches the proposal, lesson objectives, and progress report to the new or current IEP, and files the IEP in the student's special education folder. For the transferring student, the special education records, inclusive of the IEP and compensatory education documents, are forwarded to the receiving school. Copies of documents must be forwarded to the Mediation and Compliance Unit.

| Services | Frequency Hr/Min Wk/Mo | Setting | Total Hrs. or Wks. Of Service Remaining |
|---|---|---|---|
| Specialized Instruction | | | |

*Complete a MDT/IEP Meeting Note Page and attach meeting page and Compensatory Education Plan to IEP. Copy of the Plan must be forwarded to the Mediation and Compliance Unit, Division of Special Education within five (5) school days. **HOD/SA must be attached.

*Parent was present along w/ her attorney and will notify DCPS whether she agrees to Comp Ed Plan
_Vanessa Brown_

DCPS proposed 45 hours of tutoring to make up for missed specialized instruction.

DCPS also proposed an additional 25 hours of one-one tutoring to make up for missed O.T. services.

I agreed that individual tutoring was appropriate to make up for missed O.T. services.

I did not agree to the total # of hours (70) proposed by DCPS at this time as I do not have the information necessary to determine the detrimental impact of ███ from the missed services at this time.

DCPS did not tell me how they arrived at the total # of hours.

My attorney asked the DCPS School Psychologist if an educational analysis could be done to determine where ███ should be given his age and cognitive ability but for the missed services.

The DCPS School Psychologist stated that

128

Once I have had an opportunity to have this analysis done, I will advise DCPS as to whether I can accept the proposed 70 hours.

Vanessa Butler 11-13-06

129



# Therapeutic Day School

8519 Tuttle Road
Springfield, Virginia 22152
(703) 451-8041 Telephone (703) 569-5365 Fax

Elaine McConnell
 Chief Executive Officer
Matthew McConnell
 General Counsel
Julia Warden, M.S.
 Educational Director
Ann Warnke, M.S., CCC
 Assistant Educational Director
Melissa Deichmann, Ph.D.
 Co-Clinical Director
Nancy McKenna, Ph.D.
 Co-Clinical Director
Arlene Ring, M.A. CCC/SLP
 Speech Pathology Co-Director
Stephanie Oates, M.A. CCC/SLP
 Speech Pathology Co-Director
Jennifer Baldwin, MA, ATR-BC
 Art Therapy Director
Patrice Brown, OTR/L
 Occupational Therapy Director
Janice Gombo, B.S.
 Transitional Specialist
Julie Oaks
 Admissions

October 24, 2006

Ms. Vanessa Brown
2700 Bruce Place, SE
Washington, DC  20020

         RE: E███ M█████
         DOB: ██/██/94

Dear Ms. Brown:

We are pleased to inform you that we have accepted E███ to Accotink Academy for the 2006-07 School Year to begin as soon as possible. E███ will be placed in a small student-teacher ratio classroom. Services that will be provided to her will be based on the incoming IEP until evaluations/recommendations can be made at the parents' review meeting. Recommendations for support services could include psychological counseling and speech and language sessions.

You will be contacted soon by a representative of this student's treatment team to arrange for you to visit the school to meet with the Accotink Academy personnel who will be working with E███. Please call Ann Warnke, Assistant Director of Education, or myself if you have any questions concerning the placement or program needs.

Please complete the enclosed Enrollment Form, Physical Examination Form, and the Authorization for Use of Creative Productions Form and return to Diane Lips on or before the first day of arrival. It is essential that we have the physical form and immunization record on file before student attends any classes. We look forward to working with E███.

Sincerely,

Julia Oaks
Julia Oaks
Admissions Director

Enclosures
cc: Ellen Dalton, Esq.
VIA FAX: (703) 739-2323

**EM-17**

# CURRICULUM VITA

Ava L. Hughes-Booker, Ed.D.

P.O. Box 1321
Silver Spring, MD 20902

(301) 674-7321 (O)

## OBJECTIVE

To synthesize and utilize education, management, leadership, program and staff development skills within the business, corporation, and/or educational environments.

## EDUCATION

**The George Washington University**
- Doctor of Education, Special Education; 1994
- Educational Specialist; 1989

**American University**
- Master of Education, Special Education; 1980

**Duquesne University**
- Bachelor of Science, Elementary Education & Special Education; 1976

## SKILLS

- Program Development
- Proposal Writing, Curriculum Development
- Staff Training
- Educational Assessment
- Evaluation
- Individual/Group Counseling
- Special Education Advocacy
- Case Management
- Case Review & Preparation
- Court Appearance & Follow-up
- Budge Management

## PROFESSIONAL EXPERIENCE

- **President/CEO – Special Education Advocacy Services for Challenged Individuals, Inc.** (SASCI), Silver Spring, MD; June 2000 – Present; SASCI, Inc. is a private Educational Advocacy/Consultant Service, with emphasis in Special Education PL 101-476, Individuals with Disabilities Act (IDEA), for parents, families, youth, schools (public/public charter/private), residential treatment centers, health care providers (HMO), organizations, and agencies responsible for the care of children; Evaluates/assess, identify, develop, and implement education services for systems of care; SASCI offers counseling, professional development, resource materials, and ongoing support to create and implement a therapeutic milieu (environment); The designs of the education program are backed by research and solid

**EM-18**

131

evidence that demonstrates effectiveness over time; SASCI's goal is to **enlighten, encourage,** and **empower** families and professionals so that they are equipped to deliver quality treatment and services to challenged individuals.

- <u>**Executive Director, Clinical Supervisor for Residential & Interagency Services; Clinical Coordinator of Residential Treatment Services for Students with Disabilities; Residential Educational Specialist; Project Director; Assistant Principal; Peer Teacher; Crisis Resource Teacher; Special Education Teacher**</u> – District of Columbia Public Schools, Washington, DC; September 1976 – February 2002; Developed, implemented and monitored clinical/therapeutic programs, child serving agency collaboratives, and community resources for students with disabilities; Managed a budget of approximately two (2) million dollars; Acted as a consultant for teachers, students and parents; Member of the Residential Review Committee (RRC); Developed and conducted training workshops for professional in the field of education; Managed the daily operations of the Residential Placement Unit; Testified in public hearings; Directed and monitored the educational programs for students needing residential treatment level V Special Education placements; Collaborated with outside agencies to coordinate programs and developed policies for transition to and from residential facilities; Served as a liaison for DCPS and the Department of Human Services; Coordinated mainstream/inclusion services for Special Education students with serious emotional disturbance (SEDA) attending their local school; Conducted staff development, workshops and in-service training to all staff at the local school; Directed a full-time psycho-educational instructional program for seriously emotionally disturbed elementary school students (pre-school – sixth grade); Supervised a staff of 25 adults including teachers, psychologists, social workers, speech and language pathologists, and educational therapeutic assistants; Coordinated and executed Board of Education and local building policies related to staff and students; implement a parent and community "outreach" program to counsel parents and network with community agencies; Developed and executed workshops and seminars relevant to current and new trends in the education of handicapped individuals; Compiled and presented factual data of student progress to agencies upon request; Presided at hearings and case conferences relative to compliance of PL 94-142, PL 101-416 (IDEA); Developed and recommended psycho-educational intervention techniques for effective behavior management of students.

- <u>**Adjunct Professor**</u> – The George Washington University, Washington, DC; September 1994 – Present; Plan and develop course syllabi and materials for instruction; Research current instruction methodologies; provide instruction to graduate and post-graduate students involved in intensive teacher training; Analyze program evaluations.

- <u>**Research Associate**</u> – The George Washington University, Washington, DC; August 1992 – September 1994; Assisted the Department Chair in administering and coordinating multiple activities; Developed and coordinator the department's academic schedule; Acted as a liaison wit the Dean's office; Composed, for signature, routine correspondence; Performed special research; Compiled significant data; and Generated reports, specifically related to class enrollments, yearly t rends, and class size.

2   132

## PUBLICATIONS

- Competency Based Curriculum for the District of Columbia Schools, Affective Domain/Social Skills – Elementary Education Vol. I (1983)
- Competency Based Curriculum for the District of Columbia Schools, Affective Domain/Social Skills – Secondary Education Vol. II (1985)

## PRESENTATIONS

- "Case Management and Multidisciplinary Teaming" – Summer 2000
- "Children First: Fact or Fiction?" Family Advocacy and Support Association (FASA), Inc. – Spring 2000
- "The Role of the School System in Identifying and Intervening with Children at Risk", District of Columbia Public Schools – Summer 1999
- "How to Advocate for Your Child's Special Education Services", Commission on Mental Health Services – Fall 1998
- "How to Advocate for Your Child in the DC Public Schools" – Commission on Mental Health Services – Fall 1997

**District of Columbia Public Schools**
- "Inclusion: Best Practices for Success" – Fall 1994
- "Effective Strategies/Behavior Management for Classroom Teachers" – Fall 1993
- "Networking Within A School System: The Multiple Roles of the Teacher" – Winter 1993
- "Service Delivery Model (SDM) for Local Schools" – Spring 1992
- "Behavior Management in the Classroom" – Spring 1990; Summer 1990
- "The Emotionally Disturbed/Behavior Disordered Student in the Regular Education Classroom" – Fall 1989

## PROFESSIONAL ORGANIZATIONS

- Delta Sigma Theta Sorority
- Phi Delta Kappa
- Council for Exceptional Children
- Advisory Council, The George Washington University
- Association for Supervision and Curriculum Development
- Children's Defense Fund
- Family Advocacy Services & Support Association (FASA)

## References provided upon request

# Kristin S. Conaboy, OTR/L
Occupational Therapist * Board Certified Disability Analyst
Certified Employment Training Specialist
705 8th St. SE
Suite 200
Washington, D.C. 20003
Kristin@conaboy.com – www.conaboy.com
Phone 202.544.2320 Fax 202.544.2321

## *EDUCATION*

University of New Hampshire (May, 1997)
Bachelor of Science, Occupational Therapy
Minor, Psychology

Honors:  Dean's List
          Member, Alpha Epsilon Delta Honor Society

## *CLINICAL EXPERIENCE*

### Evaluation and Treatment:

**Conaboy and Associates Inc.,** Independent Contracting/Private Practice, Washington, D.C., MD, VA.  Contract services in a variety of public, private, and charter schools, Head Start Classrooms, and center and home based settings to provide Occupational Therapy, Physical Therapy, Assistive Technology, Career/Vocational, and Advocacy Services.  Therapeutic services include evaluation, treatment, consultation, and in-service training to assist in program development, intervention, inclusion, and appropriate levels of service.  Work with a variety of Special Education Attorneys providing private evaluations, consultation, and expert testimony to assist with Due Process Hearings and obtaining appropriate educational placements for children with disabilities. (January 2000 – present).

**Related Services Consultant,** Washington, D.C.  Consultant chairperson of Occupational and Physical Therapy Services for a private agency.  Provide evaluations, consultation, treatment and in-service training to various Public Charter Schools.  Working with specialized teams of educators and clinicians on improving overall school performance and accessibility to education. Focusing on best practice trends and research, IDEA compliance, overseeing direct service providers, and inclusion.  Work collaboratively on Assistive Technology Grants. (June 2002 – August 2004).

**Accotink Academy,** Springfield, V.A.  Perform evaluations, develop and implement IEP goals for children (ages 6 years to 21 years) enrolled in the specialized educational program for children with social and emotional disturbance and learning disabilities.  Provide individual and group therapy sessions, family guidance and training, classroom consultation, and training to educational staff.  Work closely with Special Educators, Psychologists, Speech and Language Therapists, Art Therapists, Behavior Counselors, and Transition Coordinators to implement a structured behavior management program to optimize learning potential of students with significant learning and emotional disabilities.  Assist in preparing students for vocational training and transition, assist in designing, organizing, and implementing Summer School Program 2000. Supervised OT Fieldwork Students.  (July, 1999 – July, 2002).

**EM-19**          134

**National Children's Center**, Washington, D.C. Performed evaluations, developed and implemented IFSP and IEP goals for children (ages birth to 5 years) enrolled in the early intervention program and contracted D.C. public school classrooms. Provided individual and group therapy sessions, family guidance and training, classroom consultation, training to educational staff, and service coordination for IFSP meetings. Served as appointed chairperson of Multidisciplinary Team, member on TQM Family Involvement Team and as coordinator of Safeway Register Tapes for Education project. Received "Master Motivator" (1998) and "Special Recognition" (1999) as staff awards. (May 1997 – July 1999)

**Level II Fieldwork - Pediatric Specialty**, Georgetown University Child Development Center, Washington, D.C. Participated at diagnostic center evaluating and screening children (ages birth to 10 years) diagnosed with developmental delays, CNS disorders, genetic syndromes, mental retardation, PDD, and Autism, utilizing standardized tools and clinical observations. Served as a Service Coordinator organizing, conducting, and facilitating evaluations and family meetings. Participated in community outreach programs evaluating, screening, providing referral information and treatment in transitional housing centers, on the Georgetown University Pediatric Mobile Van Unit and in a Headstart classroom. (January – March 1997)

**Level II Fieldwork - Physical Dysfunction**, Healthsouth Bakersfield Rehabilitation Hospital, Bakersfield, CA. Performed evaluations, developed and implemented treatment plans for adult outpatients with the following conditions: SCI, traumatic and organic head injuries, CVA, hip fractures and total replacements, rheumatoid arthritis, above knee amputations, finger contractures, tendonitis, COPD (pulmonary program). Occasional co-treatment of pediatric patients. (September - December 1997)

**Level II Fieldwork - Psychosocial Dysfunction**, Southwood Community Hospital/Norwood Hospital, Norfolk/Norwood, MA. Developed group protocols, provided evaluation, group, and individual treatment on geriatric outpatient and inpatient units. Primary diagnoses, usually combined with a dual diagnosis, included the following: depression, dementia, Alzheimer's disease, and schizophrenia. Designed Aftercare Resource Manual, group protocols, and OT treatment program for a detox and dual diagnosis adolescent and adult substance abuse unit. Observed ECT treatment procedures and locked adult inpatient psychiatric unit. (July - September 1997)

<u>Related Experience:</u>

**Conference Planning Committee,** The Next 25 Years of IDEA: Putting Policy Into Practice, March 21, 2002. Sponsored by Georgetown University Child Development Center and the Georgetown University Law Center, Family Advocacy Clinic.

## PRESENTATIONS/FOCUS GROUPS

Conaboy, K.S. (SY 2005-2006). <u>Second Annual Promoting Positive Educational Parenting – PPEP Group.</u> Eagle Academy Public Charter School, Ongoing Monthly Support Group. SY 2005-2006 Washington, D.C.

Conaboy, K.S., Plumb, L., & Ellis, T., (2004). <u>What Is OT and How Does It Fit Into My Inclusive Classroom?</u>. DC Public Charter School Cooperative Annual Training: "Casey Jumpstart Training." August 24, 2004, Washington, D.C.

Conaboy, K.S. (SY 2004-2005). Inaugural Promoting Positive Educational Parenting – PPEP Group. Eagle Academy Public Charter School, Ongoing Monthly Support Group. SY 2004-2005 Washington, D.C.

Conaboy, K.S. (2002). Embedding Interventions in Everyday Routines - Parts I and II. Fourth Annual Early Intervention/Early Childhood Training Institute: "On Behalf of Children: Making Parent-Provider Partnerships Work." October 23-24, 2002, Washington, D.C.

Conaboy, K.S. (2002). Round Table Discussion: Inclusion. The Next 25 Years of IDEA: Putting Policy into Practice, March 21, 2002. Washington, D.C.

Conaboy, K.S. (2002). National AOTA Conference Workshop: Using Natural Learning Environments to Enhance Therapeutic Interventions. National AOTA Annual Conference and Exposition, May 2-5, 2002 Miami, FL

Conaboy, K.S. (2001). Using Natural Learning Environments to Enhance Therapeutic Interventions. Third Annual Growing Together Early Intervention/Early Childhood Training Institute in Washington, D.C.

Conaboy, K.S. (2000). Stress Management for Special Educators. Accotink Academy, Accotink Academy In-service Training For Teaching Staff and Related Service Providers.

Conaboy, K.S. (2000). Occupational Therapy Overview: Sensory Integration and Motor Development For Young Children. Intown Playgroup of Georgetown, Washington, D.C. .

Conaboy, K.S., & Locks, A. L., (1999). Sensory Integration in the Educational Environment. Accotink Academy, Accotink Academy In-service Training for Teaching Staff and Related Service Providers.

Conaboy, K.S., & Thomas, M. J., (1999). Preparing Your Preschooler For Kindergarten. First Annual Growing Together Early Intervention/Early Childhood Training Institute, Catholic University of America.

Conaboy, K.S. (1999). Describing the Role of the Pediatric Occupational Therapist. National Children's Center, Child Development Program Staff.

Conaboy, K.S. (1997). Fine Motor Development For Parents. National Children's Center, Parenting Group.

Conaboy, K.S. (1997). Stress Management for Caregivers With Children With Special Needs. National Children's Center, Open House.

Conaboy, K.S., Roux, D., Ramsdell, K., & Seneriz, B. (1997). Sensory Integration - A Basic Introduction. National Children's Center, Child Development Program Staff.

Conaboy, K.S. (1997). Validation: Treatment Techniques for Patients With Alzheimer's Disease In A Rehab Setting. Healthsouth Bakersfield Rehabilitation Hospital, Bakersfield, CA.

Conaboy, K.S. (1997). Importance of Wellness in the Treatment of Substance Abuse. Southwood Community Hospital, Norfolk, MA.

136

## PUBLICATIONS

- *Family Activity Brochures*, requested by Georgetown University Child Development Center in conjunction with DC Early Intervention.

## LICENSURE

- District of Columbia: License # OT 776
- Maryland: License # 04623
- Virginia: License # 0119002683

## ACCREDITATIONS

- National Board of Certification of Occupational Therapy (NBCOT)

## PROFESSIONAL AFFILIATIONS

- American Occupational Therapy Association (AOTA), Member
- American Board of Disability Analysts (ABDA), Board Certified Disability Analyst and Fellow
- Certified Employment Training Specialist, (ETS)

## CONTINUING EDUCATION

- Employment Training Specialist Certification Series, *Michigan State University College of Human Ecology, Department of Family and Child Ecology*, February 10-11 2006, Washington D.C.
- Therapeutic Yoga: Bridging Ancient Practices with Traditional Therapy Techniques, February 8, 2006, Fairfax VA
- Institute for Natural Resources Courses: Stop Gaining Weight, ADHD in Adults, Dyslexia in Adults, "Smart Drugs?", Splitting the Brain: The Search for a Scientific Theory of Emotions, Autism (Pervasive Developmental Disorders), March, 2005, Home study/Correspondence
- YOGA: A Tool for Occupational Therapy, November 14-15, 2004, Maryland
- National AOTA Annual Conference and Exposition, June, 2003 Washington, D.C.
- Brain Circuits: Dyslexia, Memory, and ADHD, November 7, 2002, McClean, VA.
- National AOTA Annual Conference and Exposition, May 2-5, 2002, Miami, FL.
- National AOTA Annual Conference and Exposition, April 19-22, 2001 Philadelphia, P.A.
- School Function Assessment and Outcomes-based Rehabilitation for Children in Educational Settings, March 3-4 2000, Alexandria, VA.
- The New IDEA Regulations: Implications for OT Services in Early Childhood and Educational Settings, June 17, 1999, Telephone Seminar.
- American Sign Language IV, Gallaudet University (January - May 1999).
- Sensory Integration and Autism, November 6-7, 1998, Baltimore, MD.
- American Sign Language III, Gallaudet University. (September - December 1998).
- National AOTA Annual Conference and Exposition, April 3-7, 1998, Baltimore, MD.
- American Sign Language II, Gallaudet University (January 1998 - May 1997).
- American Sign Language I, Gallaudet University. (September - December 1997).

## REFERENCES AVAILABLE UPON REQUEST

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 11/16/2006 19:07
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROE6J471573
```

```
        DATE,TIME          11/16  19:06
        FAX NO./NAME       97037392323
        DURATION           00:00:18
        PAGE(S)            01
        RESULT             OK
        MODE               STANDARD
                           ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



## HEARING NOTICE

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:    Parent (or Representative): *E. DALTON*          Fax No.: *(703) 739-2323*

LEA Legal Counsel: *OGC*

RE:    M_____, E_____          and (LEA) DOB: ___/__/94
            Student's Name

FROM:  SHARON NEWSOME
            Special Education Student Hearing Office Coordinator

DATE SENT: *11/16/06*

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on *10/16/06*. Please be advised that the hearing has been scheduled for:

DATE:  *12/12/06*

TIME:  *9:00, 11:00 & 1:00*

AT:    825 North Capitol Street, NE, Washington, DC

138



**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**

E█████ M█████, DOB: ████/94

      Petitioner,

v.

**District of Columbia Public Schools**

      Respondent

_____

## DCPS RESPONSE TO DUE PROCESS COMPLAINT NOTICE

      The District of Columbia Public School (hereinafter "DCPS"), by and through the undersigned Attorney Advisor, hereby provides its Response to the Due Process Complaint Notice ("Complaint") filed on or about October 16, 2006 on behalf of E█████ M█████, pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA"), Sec. 615(c)(2)(B).

**I. DCPS Has Not Failed To Issue A Notice Of Placement**
DCPS has not failed to issue a notice of placement. If a PNOP should be issued and has not, DCPS will issue one.

**II. DCPS Has Not Failed To Determine If Compensatory Education Is Warranted**
DCPS has not failed to determine if compensatory education is warranted. This will be determined once the student is in his new placement.

139

Furthermore, DCPS will be attempting to schedule a resolution meeting pursuant to the Individual's with Disabilities Education Improvement Act (hereinafter "IDEA"), Sec. 615(f)(1)(B) to address the specific issues in the due process complaint notice.

Respectfully submitted,

Katherine G. Rodi
Attorney Advisor
Office of the General Counsel
District of Columbia Public Schools
Telephone # 202-442-5167
Fax # 202-442-5097/8

140

## CERTIFICATE OF SERVICE

I, Katherine G. Rodi, Esq. hereby certify that a copy of the Defendant's response was served to Ellen Dalton, Esq., on November 2, 2006 via facsimile at 703-739-2323.

_____
Katherine G. Rodi, Esq.
D.C. Public Schools
Office of the General Counsel
District of Columbia Public Schools

141

```
*************** -COMM. JOURNAL- ********************* DATE NOV-02-2006 ***** TIME 16:17 ********
```

MODE = MEMORY TRANSMISSION              START=NOV-02 16:15        END=NOV-02 16:17

    FILE NO.=874

| STN NO. | COMM. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---------|-------|------------------------------------------|-------|----------|
|         |       |                                          | 004/004 | 00:00:31 |
| 001     | OK    | ☎97037392323                             |       |          |

-DCPS GENERAL COUNSEL     -

```
***** UF-8000 ********************** -DCPS GEN COUNSEL- ***** -        2024425097- *********
```

Office of the General Counsel
9th Floor
825 North Capitol St, NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

## FACSIMILE

DATE: 11/2/06

TO: *Ellen Dalton*                    FAX: 703-739-2323

CO: _____              TEL: _____

FROM: Katherine G. Rodi, Esq.
       Attorney Advisor, 202-442-5167

No. Pages, Including Cover Sheet: ___

RE: *E▓▓ m▓▓▓▓ - response*

COMMENTS: _____

### CONFIDENTIALITY NOTICE

The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.

142



Office of the General Counsel
9th Floor
825 North Capitol St., NE
Washington, DC 20002
(202) 442-5000
Fax (202) 442-5098

# FACSIMILE

DATE: 11/2/06

TO: Ellen Dalton

FAX: 703-139-2323

CO: _____

TEL: _____

FROM: Katherine G. Rodi, Esq.
Attorney Advisor, 202-442-5167

No. Pages, Including Cover Sheet: ___

RE: E▅▅▅ M▅▅▅ – response

COMMENTS: _____
_____
_____
_____

### CONFIDENTIALITY NOTICE

The information contained in this telefacsimile has been transmitted by an attorney. It is privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, and return the original message to us at the above address via first class prepaid US postage. Thank you.

143

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

|  |  |  |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
|  | ) |  |
| M████, E.    Petitioner | ) | HEARING OFFICER |
|  | ) |  |
| Vs. | ) |  |
|  | ) |  |
| DCPS | ) | DISTRICT OF COLUMBIA |
| Stanton ES | ) |  |
|  | ) |  |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1. A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint within 15 calendar days of receiving notice of the parents' complaint. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2. The complaint notice was filed on **October 16, 2006**

3. The deadline for the resolution meeting is  **October 31, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A. *Prior Written Notice Not Issued by the Local Educational Agency*.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include:

   1. An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
   2. A description of other options that the IEP Team considered and the reasons why those options were rejected;
   3. A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and
   4. A description of the factors that is relevant to the agency's proposal or refusal.

144

Rev'd. 7/6/05

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Ellen Dalton, Esq.**
**Parent: Vanessa Brown**

Telephone Number: **(703) 739-4300**
Fax Number: **(703) 739-2323**

Pages: **3**
Date: **October 13, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **E̶n̶o̶c̶h̶ ̶M̶c̶l̶e̶m̶**
School:  **Stanton ES**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

**Complaint Intake Unit**
**825 North Capitol Street, NE- 8th Fl.**
**Washington, DC 20002**
**(202) 442-5693**



# Time Sensitive Materials Attached

# Fax

**Prompt Attention: Principal/Administrator**
**Special Education Coordinator**

Telephone Number: **(202) 645-3255**              Pages: 8
Fax Number: **(202) 645-3264**              Date: **October 16, 2006**

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due**
**Process Complaint Notice regarding:**

Student: **E━━━ M━━━**

School: **Stanton ES**

**The complaint Intake Unit is responsible for only providing parties with**
**information notice that a Due Process Complaint has been filed with the Student**
**Hearing Office.  If you have questions about the attached Notice, regarding any**
**fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 724-**
**6556.**

                                        **Thank You,**
                                        **Marica P. Brown**
                                        **Staff Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

146

**State Education Agency for the District of Columbia**
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



# Due Process Complaint Notice

- **This form is used to give notice of a complaint to the District of Columbia Public Schools, District of Columbia Public Charter School (DCPS or LEA) and/or parents with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a Free appropriate public education to that child. A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Improvement Act (IDEIA).**

- **The complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.**

- **Notice must be provided to the Student Hearing Office of the District of Columbia Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, D.C. 20002; fax number 202/442-5556.**

- **Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.**

- **Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting (called a "Resolution Session") with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. The Student Hearing Office does NOT schedule resolution meetings.**

- **Mediation is also available to all parties as an alternative to a resolution meeting of a Due Process Hearing.**

**A.    INFORMATION ABOUT THE STUDENT:**

Student Name   E‌‌‌‌ M‌‌‌‌‌‌          Birth Date:   ▮▮94

Address:    2700 Bruce Place SE
            Washington, DC 20020

Present School of Attendance:   Stanton E.S.

Is this a charter school?      No      (If yes, you must provide a copy of this notice
                                        to the charter school principal or director)

Parent/Guardian of the Student:   Vanessa Brown

Address (If different from the student's above):

1

147

**Phone/Contact Number:**   202-610-9760 (h)       **Fax Number (if applicable):** _____

**B.**    **Individual Making the Complaint/Request for Due Process Hearing:**

**Name:**   Vanessa Brown

**Complete Address:**   See Above

**Phone: (h)**  See Above     **(w)**  N/A       **(Fax)**  N/A       **(e-mail)**  N/A

**Relationship to Student:**

■ **Parent**              ☐ **Legal Guardian**              ☐ **Parent Surrogate**

☐ **Self/Student**        ☐ **Local Education Agency (LEA)**   ☐ **Parent Advocate**

**C.**    **Legal Representative / Attorney:**

**Name:**   Ellen Douglass Dalton, Esq.   Dalton, Dalton & Houston, P.C.

**Address:**   1008 Pendleton Street

           Alexandria, VA 22314-1837

**Phone: (h)** _____  **(w)** (703) 739-4300  **(Fax)** (703) 739-2323  **(e-mail)** e.dalton@daltonlaw.com

**Will attorney / legal representative attend the resolution session?**    ■ **Yes**    ☐ **No**

**D.**    **Complaint Made Against (check all that apply):**

■ **DCPS school (name of school if different from page one)**   _____

☐ **Charter school (name of school if different from page one)**   _____

☐ **Non-public school or residential treatment facility (name)**   _____

☐ **Parent**   _____

**E.**    **Resolution Session Meeting Between Parent and LEA:**

I understand that it is my right to have a resolution meeting to receive this complaint.  I also understand that I may voluntarily waive this right if I choose.  (Note: all Parties must agree to waive the resolution meeting to avoid having this meeting).

■ **I wish to waive the Resolution Session Meeting**

**F.**    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent.  Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing.  Please check all that apply:

☐ **I am requesting mediation as an alternative to the resolution session meeting.**

2

148

☐  I am requesting mediation and a due process hearing.

☐  I am requesting mediation <u>only</u> at this time.

**G.**     <u>Facts and Reasons for the Complaint</u>:

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

1.     What is the nature of the problem, including the facts related to the problem, that will need to be addressed at a Resolution Session meeting, a Mediation Conference, and/or a Due Process Hearing?

       E████ is a twelve (12) year old boy with a Learning Disability.  He currently attends Stanton Elementary School.  In a previous HOD dated February 17, 2006, DCPS was ordered to fund the following independent evaluations: psycho-educational, Adaptive Vineland Assessment, and occupational therapy.  It was further ordered that DCPS convene a meeting to review and revise the IEP, discuss and determine placement, and discuss and determine if compensatory education is warranted within fifteen school days of the receipt of the last evaluation.

       The psycho-educational evaluation and occupational therapy evaluation were completed and forwarded to Stanton Elementary School.  On September 29, 2006, the IEP team met to review the evaluations and revise the IEP.  The team determined that E████ required a full time, 100% Out of General Education IEP.  This includes twenty-seven hours of a week of specialized instruction, and one half hour a week of occupational therapy.  To date, DCPS has failed to issue an appropriate notice of placement.

2.     To the extent known to you at this time, how can this problem be resolved?

       1.  A determination that DCPS denied E████, a Free Appropriate Public Education (FAPE) by failing to issue an appropriate Notice of Placement.

       2.  A determination that DCPS be required to fund and place the student at an appropriate, 100% Out of General Education placement including, but not limited to, Accotink Academy or High Road Middle School for the school year 2006/2007 with transportation.

       3.  A determination that DCPS be required to discuss and determine a compensatory education plan for the period of time prescribed in the February 17, 2006 HOD, as well as the time E████ has been left in an inappropriate placement.

3.     Issues Presented:

       1.  Whether DCPS denied E████, a Free Appropriate Public Education (FAPE) by failing to issue an appropriate Notice of Placement.

       2.  Whether DCPS denied E████ a FAPE by failing to discuss and determine a compensatory education plan, as prescribed in the February 17, 2006 HOD.

3

149

Estimated amount of time needed for the hearing:       6 hours

Note: In the absence of a specified amount of time, the SHO schedules hearings in two hour blocks of time and will allocate two hours to conduct the hearing.  Please indicate if you believe more than two hours will be needed

I.        **Accommodations and Assistance Needed:**

Please list any special accommodations you may require for a Resolution Session Meeting / Mediation Conference / Due Process Hearing:

☐    Interpreter (please specify the type)                              _____

☐    Special Communication (please describe the type)          _____

☐    Special Accommodation for Disability (please be specific)  _____

☐    Other                                                                      _____

J.        **Waiver of Procedural Safeguards:**

■        I (parent/guardian) waive receiving a copy of the procedural safeguards at this time.

K.        **Parent Signature and Affirmation:**
I affirm that the information provided on this form is true and correct.

_____
Signature of Parent or Guardian                              Date

L.        **Signature of Attorney / Legal Representative:**

*Ellen Douglass Dalton*                                          10/16/2006
_____
Legal Representative Advocate (if applicable)           Date

Mail, fax or deliver this complaint notice to:
State Enforcement and Investigation Division
For Special Education Programs (SEID)
Student Hearing Office (SO)
825 North Capitol Street, NE, 8th Floor
Washington, DC 20002
Fax number: 202/442-5556

4

150

Oct-16- 2006 12:22PM    Dalton, Dalton,& Houston

## FAX TRANSMISSION COVER SHEET
### Dalton, Dalton & Houston P.C.
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314**
**(703) 739-4300**
**FAX (703) 739-2323**

DATE:        October 16, 2006

TO:           Sharon Newsome

AT FAX:    202-442-5556

FROM:       Ellen Douglass Dalton, Esq.

RE:            E. M█████ Complaint

NUMBER OF PAGES INCLUDING THIS PAGE:        5

ADDITIONAL INFORMATION:

2006 OCT 16 PM 12: 24
DC PUBLIC SCHOOL SYSTEM

_____

**PLEASE DELIVER ASAP.**
*******************************************************************
**THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.**

**IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.**
*******************************************************************

151

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF PUBLIC SCHOOLS
OFFICE OF STUDENT HEARINGS

In the Matter of:

E████ M██████

Washington, D.C.

Tuesday, December 12, 2006

The above-entitled matter came on
for hearing, pursuant to notice.

BEFORE:

TERRY BANKS, Hearing Officer


APPEARANCES:

On Behalf of the Student/Parent:

ELLEN DALTON, ESQ.

On Behalf of D.C. Public Schools:

SOR GUPTA, ESQ.




This transcript was produced from
an audio CD provided by D.C. Public Schools.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                    (202) 234-4433

152

```
                        I-N-D-E-X

WITNESS                 DIRECT      CROSS      RE-DIRECT

Dr. Hughes Booker          7          27          32

Vanessa Brown             35          51          --

Ann Warnke                55          62          --


EX. NO.   DESCRIPTION      PAGES    MARKED    RECEIVED

None offered herein.


ITEM
PAGE

Closing statement by Ms. Dalton                    78
Closing statement by Mr. Gupta                     86
```

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

153

P-R-O-C-E-E-D-I-N-G-S

(xx:xx p.m.)

HEARING OFFICER BANKS:  Today is December the 12th, 2006.  This is an administrative hearing for E███ M█████ who was born March 13th, 1994.  This hearing is being conducted in accordance with the guidelines and rights established by the Individual with Disabilities Education Improvement Act of 2004, the rules of the Board of Education for the District of Columbia, and DC Code Title 38.

My name is Terry Banks.  As an independent Hearing Officer, I am not an employee of the DC Public Schools.  I am not related or an acquaintance of the student or parent.  I am prepared to hear both parties and will act only on the evidence presented in the course of this hearing in accordance with the laws, rules and regulations.

This hearing is closed to the public. The matters discussed here today are confidential and must be treated as such even after the hearing is completed.  The hearing is being recorded and either party may request a copy of the disk or a written transcript of the proceedings by writing to the Student Hearing Office.

At this time, I would like everyone to identify themselves for the record.

MR. GUPTA:  Good morning.  Saurabh

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                              (202) 234-4433

154

Gupta, Attorney Advisor at DC Public Schools.

              MS. DALTON:  Ellen Dalton, counsel for
the parent.

              MS. BROWN:  Vanessa Brown, E████ mom.

              HEARING OFFICER BANKS:  And someone's on
the line?

              MS. DALTON:  Yes, Dr. Avrith Hughes
Booker (phonetic) who will be testifying as an
expert witness for the parent.

              THE WITNESS:  Good morning.

              HEARING OFFICER BANKS:  Good morning.
Ms. Dalton, do you waive a reading of the hearing
rights?

              MS. DALTON:  Yes, I do.

              HEARING OFFICER BANKS:  Both parties
have submitted five-day disclosure statements.  Does
either party object to the introduction of the other
party's statement into evidence?

              MS. DALTON:  No, sir.

              MR. GUPTA:  I don't object but I just
wanted to let you know for the record that Ms.
Laura Olsen was designated --

              MS. DALTON:  I'm not going to call her.

              MR. GUPTA:  Okay.  But she was the only
one designated as an expert.  Ms. Ava Hughes Booker
(phonetic) is not designated as an expert.

              MS. DALTON:  Yes, she is.  Her CV is

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                                                                    (202) 234-4433

155

enclosed.

MR. GUPTA:  CV is enclosed but she's not designated so.

MS. DALTON:  No more than Laura Olsen is.  Laura Olsen is a clinical psychologist.  Dr. Booker is an educational advocate.

MR. GUPTA:  Well, that's our position on the expert that there was no designation.  I mean there's -- yes, there's an inference with the CV included, but there's no explicit designation.

HEARING OFFICER BANKS:  Well, I think I'm the only Hearing Officer that requires (inaudible) CV to be submitted when someone's going to use an expert witness.  I'll -- let's proceed and see what transpires.  Ms. Dalton has indicated that her witness is about to catch a plane and would like to proceed delaying opening statements.

THE WITNESS:  (Inaudible.)

HEARING OFFICER BANKS:  So, Ms. Booker, I'll place you under oath.  Ms. Booker?

THE WITNESS:  Yes.

HEARING OFFICER BANKS:  Dr. Booker, I'll place you under oath.  You'll be asked questions by Ms. Dalton.  When she's completed her questions, you'll be cross examined anybody Mr. Gupta who is counsel for DCPS.

THE WITNESS:  (Inaudible.)

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

156

HEARING OFFICER BANKS:  Would you raise your right hand?

THE WITNESS:  Yes.

HEARING OFFICER BANKS:  Do you swear or affirm the testimony you're about to give will be the truth, the whole truth and nothing but the truth?

THE WITNESS:  Yes.

AVRITH HUGHES BOOKER

Having been called as a witness by counsel for the parent, and being first duly sworn, testified as follows:

HEARING OFFICER BANKS:  Okay.  Go ahead MS. Dalton.

DIRECT EXAMINATION

BY MS. DALTON:

Q    Dr. Booker, I would like you just to briefly designate your educational background and your prior work experience.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                    (202) 234-4433

157

A    I received a special education Bachelor of Science from Duane University, a master's in special education very specifically with emotional disturbance and learning disabilities, and a doctorate from George Washington University in education administration special education services. I have 25 years of experience in DC Public Schools as a classroom teacher, resource teacher, peer assistance, principal, director, and my last position was executive director of residential interagency programs for DC Public Schools.  The last five years, I've been in private practice as a special education advocate and leading trainings. I'm also an adjunct professor for George Washington University.

Q    And for the record, your CV is Parent's Document Number 18, and it has been admitted into the record.

MS. DALTON:  At this time, I would that Dr. Booker be qualified as an expert in the field of special education specifically with regard to students with emotional disturbance and learning disabilities and with regard to appropriate Imps as well as appropriate placements.

HEARING OFFICER BANKS:  Mr. Gupta?

MR. GUPTA:  I would like to hear what her experience in terms of testifying as an expert

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

158

witness is.

BY MS. DALTON:

     Q    How many times have you testified as an expert witness, Dr. Booker?

     A    Well over 100.

     MR. GUPTA:  And in what forum?  In here -- in this type of forum?

     MS. DALTON:  Yes.

BY MS. DALTON:

     Q    You've testified in administrative due process hearings involving special education, correct?

     A    Yes.  Yes, I have, well over 100 is what I'd bet.  Hello?

     Q    Yes.  I'm just waiting for Mr. Gupta.

     A    Oh, okay.

     MR. GUPTA:  That's fine.  Go ahead.

     MS. DALTON:  Okay.

BY MS. DALTON:

     Q    Dr. Booker, could you please describe your experience with E____, M_____?  What have you done with regard to reviewing his records and observing him and observing a potential placement?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

159

A        I have read thoroughly all of the --
E▮▮▮ M▮▮▮▮▮ record from 2004 to the current
evaluations that were, I believe is, 2006.  I also
observed his current school placement at Stoddert
Elementary School as well as a potential placement
at Accotink Learning Center.

Q        I want to just ask you was it Stoddert
or Stanton Elementary?

A        I'm sorry, Stanton.

Q        Okay.

A        I'm sorry.

Q        That's okay.  And can you please
describe his current placement at Stanton
Elementary?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701

(202) 234-4433                              (202) 234-4433

160

A      The current placement is a full out special education program where he goes to homeroom for a period and then he's pulled out periodically in a special education classroom that is void of any educational stimuli to help reinforce his severe academic deficit or to reinforce any of his strengths.  He does have specials that are inclusive of probably 25 children or more, and the specials are -- go on periodically throughout the day. I was not able to obtain a schedule for E█████, so it seems like the special education program is intermittently delivered, not consistently but today he might be in a class for special education students and tomorrow, because of the pulls that may be on the staff, he may not be in a special education program, and he may end up being in a regular classroom that has approximately 25 students in it.

Q      And now are you aware that in September of this school year, an IEP was developed for E████ M██████, a new IEP?

A      Yes.

Q      And that new IEP required what type of services and placement?

A      A full-time out of general education.

Q      Okay.  And did you also get an opportunity to observe E█████?

A      Yes, I did.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

161

Q        And can you just describe a little bit more of the classroom, the special education classroom that you saw at Stanton?

A        It was very, very disheartening and very sad, and the reason why I say that is because it looks like he was being educated in a warehouse closet.  The blackboard had -- was poorly slated, meaning that at appeared that there was glue on the back -- blackboard.  There were problems that were placed on the board, and you could barely see the problems because of all of the background distractions that were there.

There were bulletin boards that had nothing displayed on them.  There were windows that were poorly ventilated so there was a ventilation system that was put in the classroom.

There were, I guess you call the storage closets or storage bins that were kind of gathered throughout the learning environment where a child would not have a designated seating area but would have to navigate his or her way about this apparatus in order to gain his seat.

There were two file cabinets that were again scattered in the middle of the floor or kind off to the right side, maybe not in the middle but the right side, but there was absolutely no order to the classroom and if one would even call it a

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                    (202) 234-4433

162

classroom.

There was absolutely no stimuli at all, meaning visual stimuli that has clearly been recommended as this boy has deficits across all academic domains, both in math, reading, written language, language arts, et cetera.

Q      Okay.  Dr. Booker, I'd like to move on because I know that we're pushed for time.

A      Okay.

Q      Could you --

A      I'm sorry.  If I'm long-winded, please --

Q      No, no, no, no.  I'm just worried about getting all your testimony in.  Could you please describe the documents that you've reviewed in this case?

A      Psycho-educational 2004, psycho-educational 2006, speech and language evaluation, IEPs 2006, IEP 2005, 2004.

Q      Okay.  That's fine.  And --

A      Okay.

Q      -- Can you now tell me did you have an opportunity to visit a placement that the parent had sought out?

A      Yes, I have.  That would be Accotink.

Q      Okay.  And can you please describe the program that you observed at Accotink.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

163

A    Accotink has a language-based program that has a student-teacher ratio of ten to three, clearly an opportunity for individualized instruction as well as small group instruction. It had a program that is multi-sensory that can be taken from language modules that would be very concrete to the abstract level of thinking. The classroom was clearly well-lit, lots of light, good ventilation, a good space for each child and the teacher as well.

There were two co-teachers in the room, both of whom are certified and one educational assistant. At no time are there ever ten children in the classroom because the students also go out for their specials where they have occupational therapy, speech and language services, music, art and technology.

Q    Is this --

A    So -- go ahead.

Q    Is this a full-time special education day school?

A    Yes, it is.

Q    And can you describe the actual what you observed in the classroom as far as educational stimuli?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                    (202) 234-4433

164

A     Yes.  I observed the social studies class or lesson that was being taught where the children had hands-on through maps as well as compasses and made to go up to a map, let's say, put down a picture of a particular region that would describe, let's say, the temperature, the climate, the types of whatever, let's say, food that may be grown in that area, agricultural, et cetera.  The children actually got up from their seats, went to the board, placed these different pieces on a map and then a hands-on activity at their desks.

But it was clearly a language-based program., very small, succinct instructional information was given and then with an immediate opportunity to apply what they had just heard auditorily so that they would have that ability to have a multi-sensory response using their hands, using their bodies, going up to a board, putting (inaudible) picture on top of a map so that they could actually understand what it is, the lesson is that they were trying to be taught.

Q     And did you observe the other students that are currently in that classroom?

A     Yes.

Q     Do you believe in your opinion that it would be a appropriate classroom for E██████?

A     Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                    (202) 234-4433

165

Q     Okay.  Now I want to -- I want to move
on to the evaluations that you reviewed,
specifically the 2004 evaluation, psycho-
educational, by Dr. Olsen (phonetic throughout) and
then the --

A     Okay.

Q     -- 2000 --

A     Can you hold on so I can pull it?

Q     Sure.

A     You've got to bear with me.  I don't
have mind labeled.  I have mine labeled according to
what my talking points are going to be.

Q     You might want to also pull 2006, Dr.
Edgar Stewart's (phonetic) psycho-educational.

A     Okay.

Q     And specifically in Dr. Olsen's report,
I want to direct your attention to page five, and
that's Document Number 1 of the Parent's Documents.

A     Okay.  I have Stewart's report.  Hold
on.

Q     And on --

A     And I -- go ahead.

Q     And on Stewart's report, it would be --
they're not numbered, but it would be the fax
numbers at the top, page five of eight of Dr.
Stewart's and for counsel here, it's Document

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                                      (202) 234-4433

166

Number 6, page five of eight.

     A     Okay.  Now on Dr. Olsen's report, which page do you want me to go to?

     Q     Page five.

     A     Okay.  I've got page five of Olsen's.

     Q     Okay.  So that's Parent's Document Number 1, page five.  And then --

     A     Okay.

     Q     And then Dr. Stewart's is Parent's Document Number 6, and it's five of eight in the top of the fax sheet.

     A     Okay.

     Q     I want you to address the achievement scores that were -- or achievement tests that were administered to E████ both in 2004 and 2006.  My question to you is after you have reviewed those scores, do you have an opinion as to whether or not E████ made educational progress?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

167

A    I was very, very saddened by the fact
that this is a boy that clearly was evaluated in
2004 having severe deficits, and if you look at his
scores two years later, and in fact, he regressed.
The grade equivalent scores went down remarkably.
And that would be the piece that really stands out
in my opinion of the two psycho-educational
evaluations that were conducted within a two year
period.

Q    Now did the standard scores as well as
the grade equivalent scores also go down?

A    Yes.

Q    Okay.  Now I want you to address or I
want to direct your attention to the IEP that's
documented -- or it's my Document Number 2 and 3.
It's the --

A    Okay.  Hold on.  Let me put my pages
back together.

Q    Sure.  It's the IEP for '04 and '05,
March 17th '04 and March 17th '05.

A    Okay.  Go ahead.  What's the next piece?

Q    Okay.  The IEP that's dated March 17th
'04, and the IEP dated March 17th '05, I want you
to look at both of those IEPs.  And my question to
you is given the IEP that was drafted on March 17th
'05; do you find any deficiencies or

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                      (202) 234-4433

168

inappropriateness of that IEP?

    A    Okay.  Now you're asking me to look at 2005?

    Q    Yes.  No.  Yes, March 17th, 2005.

    A    Okay.  Well, clearly it is asking for 27 hours of specialized instruction and 5 hours of occupational therapy.

    Q    Now you're on to the -- you're looking at the September, and it looks like a '05, but it's actually '06.  I want you to look at the March 17th, 2005, before a full-time IEP was drafted.

    An    Okay.  Hold on.

    Q    It has ten hours of specialized instruction on the front page.

    A    Okay.  I just have to look through it. Just bear with me because I'm sitting in a seat. I'm not at a table.

    Q    That's okay.

    A    And I appreciate everybody's patience with me.  Okay.  I've got it.  All right.

    Q    The March 17th '05.

    A    Okay.  Yes.  Yes, I've got it.

    Q    Now --

    A    Seventeen '04 IEP.

    Q    Okay.  The 17 '04 IEP was his initial IEP, correct?

    A    Correct.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

169

Q    Okay.  Now I want you to look at the March 17th '05 IEP which is the next year when he was in the fourth grade.  And my question to you is after he had been in special education for a year, reviewing his March 17th '05 IEP, was that an appropriate IEP for E████?

A    Absolutely not.  Based on the evaluations that have been completed in '04 and considering he made no progress for that academic year, this boy should have been put in a full-time special education program a year ago or more.

Q    Now looking at the second page of the March 17th '05 IEP, how do you know he didn't make any progress?

A    The scores remained the same on the WEOT (phonetic).

Q    Did they do any new testing?

A    According to this document, they did -- completed testing in 2004 and 2004 yielded the same.

Q    Right.  And with the '05 IEP, should they have determined what his present levels of educational performance were?

A    Absolutely.

Q    Prior to drafting the March '05 IEP?

A    Yes.

Q    Okay.  Now based on your review of the records and the fact that you have testified

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

170

previously that E████ actually made no progress but

actually regressed over the two year span of time,

in your opinion what -- first of all, what is the

period of time for the denial of SAPE (phonetic

throughout)?  And my second question is what would

be required to put E████ in the position he would

have been in but for that denial?

          MR. GUPTA:  I object to question number

one.

          HEARING OFFICER BANKS:  Sustained.

          MS. DALTON:  Okay.  The first question

was --

          HEARING OFFICER BANKS:  You answered her

-- you hypothesized that there's a -- that there's

a legal violation.

          MS. DALTON:  Okay.

BY MS. DALTON:

    Q    Dr. Booker, in your review of the

records -- are you still with me?

    A    Yes, I am.

    Q    Okay.  In your review of the records,

did you determine whether or not there was any

deficiencies in E████ education?

    A    I would -- my review of the record

reveals that this boy has been denied SAPE for a

year and probably six months.

          MR. GUPTA:  I object.  She can't --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

171

she's not qualified to --

        HEARING OFFICER BANKS:  Just talk about

what he's been denied --

        MS. DALTON:  Yes.  What --

        HEARING OFFICER BANKS:  -- in terms of

services.

        MS. DALTON:  Right.

BY MS. DALTON:

    Q    What services was E█████ denied?

    A    Specialized instruction, occupational

therapy, and speech and language to address the

language processing issues that he has, that is

spreading across all academic areas.

    Q    Okay.  And in your opinion, what would

be required to put E████ in the position he would

have been in but for that denial?

    A    If he had been placed in a full-time

intensive special education program for specific

learning disabled children, I believe that he would

have -- we would have seen progress out of this boy.

He's very pleasant, very cooperative, and very

receptive to an educational (inaudible).

    Q    In your expert opinion and based on

your prior experience, how much progress would you

have anticipated E████ would have made?

    A    At least six months' growth, at least.

    Q    And in your opinion, what would be

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

172

required to provide to E████ to place him in that
position of a growth of six months?

        A        A full-time specialized instructional
program for specific learning disabled children.  I
would also encourage that this boy be given an
opportunity for a reading program in the services of
tutorial services to help to remediate his severe
deficits.  This is a boy that's 12 years old that's
reading on a third grade level.  If his academic
areas are not remediated, we're going to look at a
child that's going to eventually manifest into
behavioral challenges, and right now, we don't have
that with this boy.  That becomes a tremendous fear
that I have.  The literature speaks to the fact that
when we do not address children's academic areas of
deficit, that behavior problems are almost
guaranteed to begin to emerge.

        Q        Dr. Booker, in the documents that have
been placed into evidence, DCPS has offered 70 hours
of one-to-one tutoring for E████ to -- as
compensatory education.  In your opinion, is that
an appropriate amount of time?

        A        Absolutely not.

        Q        And in your opinion, what would be
required to place E████ in the position he would
have been in but for the denial of the services?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433                    WASHINGTON, D.C. 20005-3701                    (202) 234-4433

173

A      Well, first of all, in my opinion, if
you look at the calculated years that he has
missed, well over one year and approximately six
months, if we were to also look at the fact that he
was not given an opportunity for ESY.  ESY is
designed to ensure that a child does not regress and
so that he can recoup and continue to get skills
that he may have mastered.  We've got the academic
year as well as the ESY.  That's 186 days plus
approximately, give or take, 20, 25 days and an ESY
program.  At the very minimum, you would want to
address that as three hours of tutorial services or
a reading program.  If you multiply that times, I
think it comes out to -- I have the calculation --
hold on -- I think it turns out to be 633 hours.
And if you -- if you were to divide that, would be
talking about -- hold on -- trying to do this based
on memory, and I think I need to pull my notes.
Bear with me for one second.  Okay.  If you add 186
days and 25 days of ESY, you come up with 211.  At
3 hours per day, that would give you 633 hours.
That would be at the very least that this boy should
be compensated for the years -- we're not talking
months, we're talking years of denial of special
education services.  And to this day, he is not
getting an appropriate special education program.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C.  20005-3701      (202) 234-4433

174

MS. DALTON:  Okay.  I have no further questions, Dr. Booker, but Mr. Gupta or Mr. Banks may.

HEARING OFFICER BANKS:  Mr. Gupta?

MR. GUPTA:  Yes.

CROSS EXAMINATION

BY MR. GUPTA:

Q    Dr. Booker, how many total hours did you observe E█████?

A    I didn't hear your question.

Q    How many total hour did you observe E████?

A    About an hour -- about an hour and a half, because I observed him also in the cafeteria.

Q    One hour total observations?  One.  One and a half.

A    One and a half hours.

Q    I'm sorry, one and a half.  Did that include your visit to Accotink?

A    No.  No, this was all at (inaudible.)

Q    How long was your visit at Accotink?

A    My visit at Accotink was approximately about an hour and a half.

Q    Did you visit Accotink in relation to E████ or have you been there before and you know the program?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

175

A       No.  I actually went for E███.

Q       In your visits to Accotink, what were the other students' disabilities?

A       Learning disabled.

Q       They were all learning disabled?

A       Yes.  They actually have a classroom that is designed for learning disabled children, and it's a language-based program.

Q       And how -- what was -- what were their ages?

A       Eleven and twelve, and they had a complement of girls and boys.

Q       Okay.  Now going back to the -- Dr. Olsen's (phonetic) 2004 psycho-educational evaluation.

A       Okay.

Q       Did that evaluation recommend an OT or a special -- speech and language exam or services?

A       Hold on.  Let me pull it.  I know one of the reports did recommend that.  Now Olsen's report is -- yes, there's -- occupational evaluation was recommended.

Q       And speech and language, ma'am?

A       Yes.

Q       It was, both?

A       (No verbal response.)

Q       Do you know what school he was

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

176

attending in 2004?

    A    I believe it may have been Arts & Technology.

    Q    Is that a DCPS school.

    A    It's a charter school.

    Q    Is that a -- it's own local educational agency?

    A    As far as I know it is.

    Q    Okay.  And when did he start at Stanton, do you know?

    A    I believe this school year.

    Q    So where was he in --

    A    Last school year as well.

    Q    So 2005 through the present, he's been at Stanton?

    A    Yes.

    Q    Do you know why he moved from ATA to Stanton?

    A    He was not making academic progress.

    Q    Okay.  Do you -- were you present at any of the meetings that were held at Stanton this year, the 2006 fall semester?

    A    No.

    Q    Have you had time to review any of the notes from those meetings?

    A    Yes, I have.

    Q    Did you specifically have a -- have

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

177

time to review the compensatory education plan that
was offered, I believe, in November of this year?

A    Yes, I did.

Q    And did you have time to see that it
said they were offering one-to-one tutoring?

A    Yes.

Q    Is that the kind of services he would
need to bring himself -- bring -- or to make up for
the services he has lost in the past?

A    I believe so.  I just believe that the
hours need to be discussed and negotiated.

Q    And did you also have time to review
the September 29th, 2006 MDT meeting notes?

A    Yes.

Q    I'm sorry; your answer didn't come
through.

A    Oh, I'm sorry.  Can you hear me now?

Q    Yes.  Did you -- was that a yes, ma'am?

A    Yes -- yes, it was.

Q    Okay.

HEARING OFFICER BANKS:  I'm sorry, what
was the date?

MR. GUPTA:  9/29/06.

BY MR. GUPTA:

Q    So then you saw at that meeting that
they were -- they were in the process of providing a
full-time placement or they had discussed it?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

178

A        Yes.

Q        And do you know if that has happened
yet?

A        I didn't hear the (inaudible) --

Q        Do you know if Stanton has offered a
placement yet?

A        To my knowledge, it has not been
offered.

Q        Do you know if Stanton has made steps
towards securing a placement?

A        Didn't see any evidence of that.

MR. GUPTA:  Okay.  Thank you, Dr.
Booker.  I don't have further questions for you.

HEARING OFFICER BANKS:  Ms. Dalton, any
redirect?

MS. DALTON:  Yes.  I just one follow-up
redirect.

REDIRECT EXAMINATION

BY MS. DALTON:

Q        Dr. Booker, you mentioned that when you
visited Accotink and you observed the specific
classroom that E███ would be placed in, you -- are
you still with us?

A        Yes, I am.

Q        Okay.  You stated that all were learning
disabled.  Did some of the students have multiple

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

179

disabilities more than just learning disabilities?

A    They may have had OHI as another handicapping condition.

Q    Okay.  And in that classroom, is it possible that they had other speech and language impaired or emotionally disturbed as well?

A    Speech and language impaired was clearly a possible disability.  Emotional disturbance, the kids that have those disability classifications are placed in another class.

Q    Okay.

A    They're not with the kids with learning disabilities, OHI or speech and language impaired.

Q    With regard to the students that you saw in the classroom, did you observe any acting out behaviors?

A    Not at all.  I saw children anxious to learn.

MS. DALTON:  Okay.  I have no further questions.

HEARING OFFICER BANKS:  Okay.  Thank you very much.


THE WITNESS:  Thank you.  Thank you everybody for your patience.

MS. DALTON:  Thank you.

HEARING OFFICER BANKS:  No problem.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

180

THE WITNESS:  All right.  Bye-bye.

HEARING OFFICER BANKS:  Okay.  I need to take a break.

(Whereupon, off the record.)

HEARING OFFICER BANKS:  Okay.

MS. DALTON:  I think Mr. Gupta and I have agreed that we will just waive opening statements at this point and move forward with the evidence and --

HEARING OFFICER BANKS:  That's fine.

MS. DALTON:  -- cover it in our closings.

HEARING OFFICER BANKS:  All right. Who's your next witness?

MS. DALTON:  It will be Vanessa Brown, Enoch's mother.

HEARING OFFICER BANKS:  Okay.  Ms. Brown, would you raise your right hand?  Do you swear or affirm the testimony you're about to give will be the truth, the whole truth and nothing but the truth.

THE WITNESS:  Yes.

VANESSA BROWN

Having been called as a witness by counsel for the parent and being first duly sworn, testified as follows:

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

181

HEARING OFFICER BANKS:  Thank you.  Go ahead, Ms. Dalton.

DIRECT EXAMINATION

BY MS. DALTON:

Q     Yes.  Ms. Brown, can you please state your full name for the record?

A     Vanessa Brown.

Q     And you may need to speak up just a little bit.

A     Vanessa Brown.

Q     And is E██████ M███████ your son?

A     Yes.

Q     And I want to ask you if you could briefly describe E█████ and his educational experience so far?

A     He's a very bright boy, loves to go to school, eager to learn but when he get to school, he has difficult problems that --

Q     What problems have you observed that E█████ would have?

A     Basically, with his reading, some of his writing I notice.

Q     And how -- what do you notice about his reading?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

182

A    He had difficult sounded them out.  You know?  If he don't know it, it gets him upset sometimes.

Q    How did you become aware that E████ had a problem?

A    I believe when we -- he went to Fletcher Johnson, the teacher said that she noticed that he was having difficult in reading so --

Q    What grade was (inaudible.)

A    I believe first.

Q    Now do you have other children?

A    Yes.

Q    Are they in special education?

A    No.

Q    Have you observed your other children reading?

A    Yes.  I have a 13-year-old son, 11-year-old daughter, and a 6-year-old son, and all three of them is (inaudible).  Even my 6-year-old reads better than E████.

Q    And so what else have you observed about E████?  In addition to his reading, have you observed any other difficulties that he has with school work?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

183

A    He doesn't have any school work.  I mean since he's been in his special education class, he goes in and he does a little work, but I don't see him come home with anything.  He doesn't even have no books, no nothing.  So only thing that -- he does what Mr. Jones give him in school, and it's always a couple pieces of papers that he xerox copy off for E███████ to do.  Mostly it's a lot of math.  I doesn't see too many reading problems (inaudible) he'd bring home or nothing.

Q    So this school year, he's not had any books?

A    No.  No books this year, last year neither.

Q    And now I want to ask you previously when he was initially identified as needing special education, where was he attending?

A    He was -- when he first -- when I first got him examined, we was at Fletcher Johnson.

Q    Did he subsequently go to another school after Fletcher Johnson?

A    Yes.  I took them out of there once they -- well, they said they didn't have special education coordinator, somebody there at the time, so I had got him transferred out into Art & Technology, and then we --

Q    When did he attend Arts & Technology?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

184

What grade?

    A    He was in the second -- second and third grade.

    Q    And do you recall whether or not he was in special education at Arts & Technology?

    A    Yes.

    Q    And then when did he start Stanton where he's currently going?

    A    Two -- actually, it was 2004 because after he -- we moved from where we lived at and the end of that year when he got finished at Art & Technology, we had to move over to where we live at now.  So then I had to get him transferred to Stanton.  So he went there at the beginning of (inaudible) -- beginning of September.  It was still 2004.

    Q    Okay.  So he has gone to Stanton Elementary for the school year 2004-2005 and the current school year, 2005-2006?

    A    We're at the --

    HEARING OFFICER BANKS:  This is 2006-2007 --

    THE WITNESS:  Well, 2005 --

    MS. DALTON:  This is now.

    HEARING OFFICER BANKS:  This is now?

    MS. DALTON:  Right.  Okay.

    THE WITNESS:  Well, 2005, after he

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433              (202) 234-4433

185

finished -- actually, last -- well, actually it was

beginning of last -- last year he had went to

OR(phonetic) briefly.

BY MS. DALTON:

Q    And is OR (phonetic) a DCPS school?

A    Yes.

Q    Okay.  I want to go back.  He was at

Arts & Technology in 2004 --

A    Yes.

Q    -- correct?  And you testified

previously at the end of 2004 school year, which

should have been June of 2004, you then transferred

him to Stanton?

A    Yes.

Q    So he began Stanton in September of

2004?

A    Yes.

Q    And I'm going to show you what's been

marked as Parent's Document Number 3, and that's an

IEP and it lists the attending school as Stanton,

and the IEP date is March of '05.  So for the school

year '04-'05, he was at Stanton, correct?

A    Yes.

Q    Okay.  Then beginning the school year of

September of '05, where was he enrolled?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C. 20005-3701            (202) 234-4433

186

A    ALL (phonetic).  He went to ALL
(phonetic) because after he was at Stanton after I
seen that he wasn't learning anything and I got him
out and put him into No Leave Children Hind (sic)
program so that I got him transferred down to ALL
(phonetic).  So he went there for the whole first
semesters, and the whole time he went there, he was
not in special ed.

Q    Okay.  Now you said the No Leave Child
Behind --

A    There is -- where -- that's the only way
I can get into the out of boundary schools to get
him transferred because where I live at, you just
can't go and put the kids into a school.  You have
to get into that program, No Children Left Behind
(sic).  And then they -- you send them in the
application, then they -- rather they apply back
and let you know if they accept the child, so they
accepted Enoch.

Q    So DCPS sent you some information that
you could choose to put your child in a different
school?

A    Yes.

Q    Okay.  And that school was ORR
(phonetic)?

A    Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

187

Q       So you put E████, at the beginning of September of '05, at OR (phonetic).

A       Well, it was actually -- they start in August.

Q       Okay.  They start in August?

A       Yes.

Q       And then when did he go back in Stanton?

A       October, after the -- the whole advisory, he went to OR.  After that was over, then he went back over to Stanton.

Q       So did the --

HEARING OFFICER BANKS:  That's not October --

THE WITNESS:  It was --

HEARING OFFICER BANKS:  -- so did he leave in October or did he go the whole first semester?

THE WITNESS:  He went the whole semester because -- yes.

HEARING OFFICER BANKS:  So when did he go back to Stanton or if he -- did he go back to Stanton?

THE WITNESS:  He went back to Stanton?

HEARING OFFICER BANKS:  When did he go back to Stanton?

THE WITNESS:  After the semester -- the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

188

first semester that was --

BY MS. DALTON:

    Q    Are you saying first semester or first advisory?

    A    Yes, first advisory.

    Q    There's four advisories --

    A    Yes.

    Q    -- Every year, right?  And when does the first advisory approximately end?

    A    That would end -- that was in October -- October.

    Q    Now he went back to Stanton in October of 2005 and he's remained there since then?

    A    Yes.

    Q    Is that correct?  And he's currently going there now?

    A    Yes.

    Q    What has E█████ attendance been like at any of the schools?

    A    He goes to school every day.

    Q    Now I want to direct your attention to Stanton Elementary and ask you if you had an opportunity to visit Stanton and observe E█████ in his classroom?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

189

A       I go every day.  I walk the children to
school and I sit out there for like a hour or two.
I always sit in the morning, because I want to find
out whether or not is he's going to be in his
special ed class or is he going to be in his
homeroom class, because whenever a teacher's out and
they need to replace another teacher for substitute
it's not there, the principal will pull the special
ed teacher out of the class.  And I'm always arguing
with him why do he do that.  These children need Mr.
Jones to be in the classroom, and he be saying that
he is short so I have to sit up there and see what
they going to do so.

Q       Mr. Jones is E▬▬▬ special ed teacher?

A       Yes.

Q       Okay.  And how many times would you say
in this school year has that happened?

A       Well, it was six, seven times.

Q       And last school, did that also occur?

A       Yes.

Q       How many times, if you know, did it
occur last time -- last year?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                    (202) 234-4433

190

A     It was like -- I would have to check my calendar, because (inaudible), E█████ come and tell me that he didn't have -- go to his special ed, but it was a lot because I asked Mr. Brooks why do he pull the teacher out of the special ed class. He told me that he need the teacher. I said, well, don't the kids need the special ed teacher, too. So we would get to arguing, and I just look at him, and I'm not understanding. If my son need help, who does he keep pulling the teacher out of the classroom.

Q     How many discussions did you have with Mr. Brooks about this particular (inaudible)?

A     Every time it happened.

Q     Now I want to ask you if you had an opportunity to attend -- or did you attend a meeting in September of this school year at Stanton, an IEP meeting?

A     Yes.

Q     Okay. And at that IEP meeting, did the team agree to change the level of services that E█████ was receiving?

A     Yes.

Q     Okay. And after that meeting, were you contacted to come to another meeting?

A     Yes.

Q     And was that a resolution meeting?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    (202) 234-4433

191

A       Yes.

Q       Okay.  And at that resolution meeting,
did anyone from DCPS propose a placement for Enoch
based on his new IEP?

A       No.

Q       Do you recall what they told you?

A       Well, actually, at the IEP meeting, I
don't -- the new special ed coordinator, she had
just go there so I really don't know her.  And it
was like one, two, three -- it was like four other
ladies there, but the -- the special ed coordinator
was not doing the talking.  It was another lady who
I don't even know who she is.  I never seen her
before.  She was doing all the talking because she
said that she didn't know so she had to talk.  So I
was telling them that I don't understand.  So
that's when I took -- asked you to explain to me
what they said, and that's when she told you that
you didn't have the right to speak because it was
just between us, me and them in the meeting.  But I
was telling them that I did not understand.  And
that's when I asked you what was they talking
about, because I didn't understand.

Q       Were there previous times before I
represented you that you asked DCPS to explain
things to you -- someone from DCPS to explain --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

192

A       Yes.

Q       -- Things to you?

A       I told them that when I first had got there -- because had the IEP meeting when I got not to transfer to Stanton, we had the IEP meeting. And I asked her to explain everything to me. I said I can't hardly read that good, could you explain everything to me. So she was just going over saying that we're going to put him in a class, we going to get him this, and we going to do this. And I say okay, but when he go into the special ed class, I didn't see anything. I didn't see him doing anything in the -- actually, he stayed into his homeroom class mostly all the time. And I think -- after I told her that I could not read or understand that they just kind of like looked at me. It was like really no help, because I asked them to go over the whole package with me, and they didn't.

Q       Okay. And did you have an opportunity to look at any other placements for Enoch?

A       I went to Harolders (phonetic) and it was a couple other schools called, but I couldn't make it because I had to take my other kids to the doctor and (inaudible) them to the call if I went and seen.

Q       Okay. Did you actually go and look at

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

193

a program at Accotink?

A      Yes.

Q      Okay.  Did you take E█████ with you?

A      Yes.

Q      All right.  And can you tell me what you observed at Accotink?

A      When I walked in the building, it was nice.  It was clean.  I can breathe in there.  She showed me around on the level where E█████ was going to be, because she say once he get in, they going to, you know, talk to him and observe him and see which classroom that he need to be in to help his needs.  So she took me around and showed me the whole place and it was really nice.

Q      Did E█████ have an interview there?  Did he meet with individuals?

A      Yes.  He met with one of the doctors, I think, or the lady, but I wasn't in there.  I was downstairs.  They wanted to see him one-on-one.

Q      Okay.  And did you subsequently receive a letter that he was accepted at Accotink?

A      Yes.

Q      And is it your desire to have him attend Accotink Academy?

A      Yes.

Q      Have you just --

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

194

A       And E████.

Q       I'm sorry?

A       And E████.

Q       And E████?

A       Yes.

Q       It's his desire, too?

A       Well, he liked it.  He said, mom, I like this place.  I think they might can help me.

MS. DALTON:  I have no further questions at this time.

HEARING OFFICER BANKS:  Mr. Gupta?

MR. GUPTA:  I just have one question.

CROSS EXAMINATION

BY MR. GUPTA:

Q       When you were at the resolution meeting, the second meeting in November, did you say they did discuss possible other schools for him or no?

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

195

A       No, they didn't discuss -- like I said,
the new lady was head of -- the special coordinator,
she didn't do the talking.  It was the other lady,
and I didn't know who she was.  She was doing all
the talking.  Neither one of them didn't suggest a
school.  They were just saying that we can get him
more hours, we can do this.  And I was like -- I
asked her to look at his scores.  I said from the
time that I have E█████ in this -- brought him into
Stanton until now have my son learned anything.  And
then I asked her -- I said if that was your son
that was 12 years old on a first grade reading
level, what would you do.

Q       Okay.  Since then have you received any
kind of invitation for a meeting to discuss
placement at another school?

A       No.

Q       You're not aware of anything?

A       No.

Q       Your attorney hasn't advised you of any
invitation or anything?

A       No.

        MR. GUPTA:  Okay.  Thank you.  I don't
have anything else?

        HEARING OFFICER BANKS:  Okay.  Any
redirect?

        MS. DALTON:  No, sir.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

196

HEARING OFFICER BANKS:  Okay.  Thank you very much.  Next witness.

MS. DALTON:  May I call Ann Warnke.

HEARING OFFICER BANKS:  Yes.  Oh, while you're doing that, why did he go from OR back to Stanton?

THE WITNESS:  Because when I got at OR, I noticed that he wasn't in a special ed class, and when I transferred him in there, I had to send in all of his paperwork first.  And when I got there, I asked them why is my son not in special education.  They said, well, we doesn't have his IEP.  I said, yes, you do because before I can get into the OR, I had to send a copy of the kids' birth certificate, their last report card, and I had to send the IEP, because the application that they send, they check -- they asked me to check if he was in special education.  So I had gave them -- but the whole time he was there, he was never in there.  So I took and transferred him back into Stanton because I was getting frustrated.

HEARING OFFICER BANKS:  Okay.  Ms. Warnke?

THE WITNESS:  Yes?

HEARING OFFICER BANKS:  Hi. It's Terry Banks, Hearing Officer.

THE WITNESS:  Good morning.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

197

HEARING OFFICER BANKS:   Good morning.
I'm going to place you under oath.   You'll be asked
questions by Ms. Dalton.   When she's done, you'll be
cross examined by Mr. Gupta, who's counsel for DC
Public Schools.

THE WITNESS:   Okay.

HEARING OFFICER BANKS:   Would you raise
your right hand?

THE WITNESS:   Yes.

HEARING OFFICER BANKS:    Do you swear
or affirm the testimony you're about to give will
be the truth, the whole truth and nothing but the
truth?

THE WITNESS:   I do.

ANN WARNKE

Having been called as a witness by counsel for the
parent, and being first duly sworn, testified as
follows:

HEARING OFFICER BANKS:   Thank you.   Go
ahead, Ms. Dalton.

DIRECT EXAMINATION

BY MS. DALTON:

Q     Yes.  Ms. Warnke, could you please
state your full name?

A     My name is Ann Warnke.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

198

Q     And what is your position at Accotink
Academy.

A     I'm the Assistant Educational Director.

Q     Okay.  And are you familiar with E▇▇▇
M▇▇▇▇▇?

A     Yes, I am.

Q     Okay.  And how did you become familiar
with Enoch?

A     From a review of his file and also
meeting him when he came out to our school for an
intake.

Q     Okay.  And with regard to the records
that you have reviewed, have you been provided with
E▇▇▇▇▇ current IEP which was drafted in September
of '06?

A     Yes, I do.  I have that.

Q     And do you have his current
evaluations, the psycho educational evaluation that
was conducted by Dr. Stewart in; let's see here,
March of '06?

A     I have that, yes.

Q     And also an occupational therapy
evaluation that was conducted in April of '06?

A     Yes, I have that also

Q     And a speech and language evaluation
that was conducted in October of '06?

A     That we do not have.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

199

Q    Okay.  Now in relation to the records, did you review those records prior to determining whether to invite E███ for an intake interview?

A    Yes, we did.

Q    Okay.  And after E███ Accotink for the intake interview, what was the decision of Accotink with regard to whether or not it could provide an appropriate education for E███?

A    The intake team felt -- felt that we definitely had a program that would be beneficial to him.

Q    And that intake team, can you just describe those individuals that participated in making the decision?

A    Yes.  That day there was myself.  There was also a clinical psychologist, Dr. Dykeman (phonetic throughout) and also one of our lead teachers, Ms. Canazales (phonetic).

Q    Okay.  I want to just -- since I believe the speech and language evaluation took place after the time that the records were sent to you and it was conducted by Stanton Elementary, it is in the record as Document Number 11, I just want to read to you the summary of that, and then I'm going to ask you whether or not that would change your opinion as to whether or not Accotink can program for E███.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

200

A      Sure.

Q      The summary and impressions are (reading) "E███ is a 12-year-old 7-month-old male sixth grade student who is currently Stanton. Overall, E███ presented with significant deficits in the area of vocabulary. Receptive and expressive language abilities also fell within the mild to moderate range. Strengths were revealed in his ability to follow directions, recall sentences, formulate sentences and understand orally presented information. Weaknesses were demonstrated in the area of word definitions, receptive and expressive vocabulary. Based on today's finding, E███ presents with vocabulary and reading weaknesses that impact on his educational performance in the classroom. It is suggested that he participate in a language arts program that will enhance his reading and vocabulary. Speech and language intervention is not recommended at this time" (end reading). Based on those summary and impressions of the speech and language therapist who tested E███, would Accotink continue to be an appropriate placement?

A      Absolutely.

Q      Can you describe the program at Accotink Academy?

A      The overall program or the one for E███?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433      WASHINGTON, D.C. 20005-3701      (202) 234-4433

201

Q     The overall program first.

A     The overall.  Overall, we are a private day school.  We're a therapeutic day school.  We service children with various disabilities -- excuse me -- and as I said, we're full-time.  We also provide individual and group clinical psychological services that are conducted by a clinical psychologist or an art therapist.  We also have speech and language services for individual and group as well as occupational therapy for individual and group sessions with the students. Our classrooms have a low student to teacher ratio. They're language based and our children have a behavior plan that they follow throughout the day based upon the goals that they're working on.

Q     Now when you say your program is language based, can you expound upon that a little bit more?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                        (202) 234-4433

202

A    That's one of the reasons based upon one of the evaluations, the psychoed, that we thought this classroom would be so appropriate for E████, because the classrooms are language based, and he needs those, the skills that he'll learn in that classroom. The classroom is set up so that the teacher will give directions and present her -- her lesson in a very multi-sensory approach so that it's not just speaking. It's also the visual. It's the -- the tactile, the auditory. She will not -- she'll present it in more than one session. She'll make sure that she asks questions to verify that the children understand the questions. The way she walks around the room, the -- the material that is presented throughout the lessons so that it's something that will help with the comprehension. The classrooms -- the curriculum is also integrated so that the reading and the writing and the spelling goes throughout the day and it's worked upon in all the different classes that the children have.

Q    Okay. And you've reviewed his current functioning levels, correct?

A    Yes.

Q    And can you describe the actual classroom that E████ would be placed in if he was placed at Accotink?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        (202) 234-4433

203

A     Yes.  E▓▓▓▓ would be the eight student
in the classroom.  There are three girls and the
rest are boys, and he fits in perfectly as far as
his academic levels right now.  We have other
students that are on the first grade level in their
reading and their written language, and then they
also go up to beginning of third grade so that there
is a variation in there.  And they break up for
reading group, and that's why it's also important -
- he'll be in with other students that have the
same level that he's working on.  The same with the
written language.  And we also do that for math.  We
have some students who, as far as their calculation
are higher than their word problems, so we have to
put them in groups according to the levels that
they're on.  So he sits in very nicely with all the
reading, math and the written language skills that
the other children in the classroom have.

Q     And as far as age, is he similar age?
Are the other students similar in age to him?

A     Yes, they're all '94 birthdays with two
that have beginning '95 birthdays.

Q     Can you tell me what are the teachers
that are -- or teacher that are in the classroom?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

204

A    Yes.  There are three staff members in the classroom.  The lead teacher, Ms. Trazinski (phonetic throughout), she is the lead teacher. Then we have Ms. Higgin (phonetic) who is one of the co-teachers and Mr. Austin (phonetic).  Ms. Trazinski, she has a post graduate professional teaching certificate, and she's endorsed as a reading specialist.  And Ms. Higgin, we're lucky to have her also.  She's been with the school for many years.  She has a provisional teaching certificate. She just finished her program, and she's in the graduate program for emotionally disturbed and learning disabilities at George Mason.

Q    Okay.  And then you have an --

A    Assistant, Mr. Austin who's a -- he has an associate's degree.

Q    Okay.  And I believe you testified earlier that you can provide occupational therapy as well?

A    Yes.  We have three occupational therapists here at school.

Q    And they're -- they're located at the school all the time?

A    Yes.  They're full-time here.

Q    Okay.  And if he were -- if he -- if he were ordered to go to Accotink, would Accotink be able to accept him immediately?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

205

A    Yes, absolutely.

MS. DALTON:   Okay.  I have no further questions, but Mr. Gupta or Mr. Banks may.

HEARING OFFICER BANKS:   Mr. Gupta?

CROSS EXAMINATION

BY MR. GUPTA:

Q    Ms. Warnke --

A    Yes.

Q    -- This is Sauraba Gupta.  I have a couple questions for you.

A    Yes, sir.

Q    I want to go back to teachers you were speaking of.  I understand that some of them have significant post bachelor's hours on their resume. Does that mean that they're all special education certified?

A    Yes.  Post graduate professional certificate is the highest certificate you can get in the State of Virginia.  Ms. Higgin's undergrad. She's provisional in emotionally disturbed and learning disabled, and she's going on for her master's, yes.

Q    And you'd said -- I forgot the name -- I guess I kind of got confused -- but the one with the provisional certificate, was that Ms. Higgins

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

206

(sic) or was that another?

    A    That's Ms. Higgin.  She's the co-teacher in the classroom, yes.

    Q    Okay.  How long is that professional -- provisional certificate good for?

    A    They're usually good for three years, and her program, she'll be finished with her program next year.

    Q    And the gentleman with the associate's degree, is he certified in special education as well?

    A    No.  And he's not a teacher.  He's a co-teacher in the classroom.  He's an assistant teacher.

    Q    Okay.  Now I'd like to move on to your programming there.

    A    (Inaudible.)

    Q    How many total students do you have in the school?

    A    How many total students?

    Q    Yes.

    A    We have 141.

    Q    So would the three occupational therapists share the 141 -- well, I assume not all

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

207

of them need OT services, but --

A     Correct.

Q     -- Therefore, the entire school, correct?

A     They're there for the entire school and as you said, not all the students get occupational therapy.

Q     Okay.  And to what age group does your school go to -- would a -- could a student graduate high school from your school?

A     Yes.  We have students between the ages of 5 through 21, and we do have students that graduate from here with -- we -- with a diploma from the District of Columbia Public Schools.

Q     So the program E██████, if he enters your school, would that be earning him the Carnegie Units needed for graduation?

A     At this time, he wouldn't be working on a Carnegie Units because he's not in a high school right now.

Q     Okay.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

208

A      He would be working on the regular classroom activities.  When he -- if he continued here at high school level, absolutely he would be working on Carnegie Units.

Q      Okay.  Are you aware of what his IEP -- how many hours his IEP calls for?

A      Yes, I have that here.

Q      Can you tell us how many hours his -- and by category as well, like how many specials?

A      I have specialized instruction 27, and then .5 for occupational therapy.

Q      So that would bring it to a total of 27.5 hours?

A      Yes, a hundred percent not in regular ed.

Q      Okay.  So how that would be implemented at your school on a daily basis?  How many hours in a week is a student at school?

A      The students are here for a total of 30 hours per week.

Q      Okay.  Where -- so he needs 27.5.  How would that be broken up during the day?

A      As far as his schedule?

Q      Yes.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C. 20005-3701
(202) 234-4433                                    (202) 234-4433

209

A       Okay.  Well, he would be in his classroom.  He'd be receiving the occupational therapy, which is a pullout program, for a half an hour a week, and then the rest of the time, he would be in his classroom receiving academic work. I have a schedule.  I could go through the whole thing with you if you'd like.

Q       I don't need the detailed.

A       Okay.

Q       I'm just wondering.  You said there for a total of 30 hours, and he calls for 27.5 --

A       Right.

Q       -- So there's a deficit of 2.5.  Where do those hours go?  Would they -- is that recess and lunch time or other activities?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

210

A      Well, those are still structured
activities that we have here at the school, the
lunch and the recess periods that we have for the
students.  When -- what we normally do with a
student when they come here, within 30 days, we
have a review of the IEP with our LEA from DC.  And
at that time, she would change that so that it
equals the 30 hours that we have here at the
school.  But we are in 100 percent out of general
ed that's also on the IEP.

Q      Okay.  And do you have tutors at your
school?  Do you have the ability to provide one-on-
one tutoring services?

A      We have -- the classrooms are set up so
that if individual attention is needed for the
student, we certainly can provide that.  Yes.  As
far as tutors, we don't have outside tutors that
come into the school.

Q      Okay.  Are you aware that there -- that
this student may need a significant amount of
compensatory education to bring him up to level
that -- bring him up to his current levels or to
provide for missed services in the past?

A      Yes, I am.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                    (202) 234-4433

211

Q    And within the 30 hour day, how would one-on-one tutoring work then?

A    Well, what we do when we sit down with the LEA from DC, we will go over the comp ed issues and the support staff that will be working with him and the classroom teachers within those 30 days, we will come up with what we think might be the best programs for him or the best time spent with those hours.  And if it's tutoring, a lot of times we will recommend tutoring outside of the school day since the school day is so intensive with the reading and the writing throughout the day that to take him out of that for tutoring, it's really taking him away from that intensive academic work.  So we usually suggest that that's done after school.

Q    How many hours maximum do you think a student could get tutored in a day after school?

A    It would all depend on the student. Some students are able to withstand, you know, more hours than other.  It all depends on them and this -- the 30 days gives us a good timeframe so that we can get a good feel for E████ so we can recommend the best for him.

Q    Well, I guess in your experiences then, can you give us a range?  I'm sure you've see it

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

212

all over the board like anywhere -- probably

anywhere  form half an hour to what -- what's the

maximum you've personally seen?

    A    Well, we've had some students that, as

you said, a half an hour, and then we've had some

older students that -- who have had two hours of

tutoring after school working on various subjects.

But there's also different programs out there,

reading programs that -- over the summer or over

break time when they require an extended period of

time for the student to be there, that's something

that could be recommended also.

    Q    So in your experience the students that

were getting two hours, was that -- were they

getting that every day during the school year, five

days a week?

    A    Oh, boy, to be honest, I couldn't tell

you if it was five days.  I know that some of them

had at least two to three days that they were

receiving that, but as far as -- I couldn't

honestly tell you that.

    Q    Is it -- have you ever, in your

experience, seen a student get tutored five days a

week?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

213

A     Again, I'd have to go back to see,

because I couldn't honestly tell you that without

looking.

Q     Well, off the cuff, do you believe

that's -- does that sound rational to you or does

that sound possible?

A     For five days a week, two hours a day?

Q     Yes.

A     Again, it would depend on the student,

but certainly that could be something that would be

possible.

MR. GUPTA:  Okay.  Actually, I have

nothing further right now.  Thank you, Ms. Warnke.

THE WITNESS:  Sure.  Thank you.

MS. DALTON:  No, sir.

HEARING OFFICER BANKS:  Thank you very

much.

THE WITNESS:  Thank you.  Bye-bye.

MS. DALTON:  Bye.

HEARING OFFICER BANKS:  Do you have

another witness?

MS. DALTON:  I do not.  I --

HEARING OFFICER BANKS:  Okay.  Mr.

Gupta?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

214

MR. GUPTA:  Yes.  I'm going to be calling Mr. Norman Brooks.  They're calling from DC Public School.  I'm in the hearing right now.  I'm going to put you on speaker phone, and Mr. Banks, the Hearing Officer, will swear you in.

THE WITNESS:  Okay.

HEARING OFFICER BANKS:  Mr. Brooks?

THE WITNESS:  Yes, sir.

HEARING OFFICER BANKS:  Hi.  This is Terry Banks, the Hearing Officer.

THE WITNESS:  Yes, sir.

HEARING OFFICER BANKS:  How are you?

THE WITNESS:  Okay.

HEARING OFFICER BANKS:  I'm going to place you under oath.  You'll be asked questions by Mr. Gupta.  When he's done, you'll be cross examined by Ms. Dalton, who is counsel for the student in this case.

THE WITNESS:  Okay.  Let me clear my office.  Okay?

HEARING OFFICER BANKS:  All right.

THE WITNESS:  Just let me clear my office.  And I'm ready.

HEARING OFFICER BANKS:  No problem.  Would you raise your right hand?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

215

THE WITNESS:  Yes.

HEARING OFFICER BANKS:  Do you swear or affirm the testimony you're about to give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  I do.

NORMAN BROOKS

Having been called as a witness by counsel for DCPS, and being first duly sworn, testified as follows:

HEARING OFFICER BANKS:  Thank you.  Go ahead, Mr. Gupta.

DIRECT EXAMINATION

BY MR. GUPTA:

Q    Hi, Mr. Brooks.  Can you tell us what your position at Stanton Elementary is?

A    I'm the Principal.

Q    How long have you been in that position?

A    About two years and four months.

Q    So beginning of the 2004 school year, correct?

A    Yes.

Q    Okay.  Do you know a student -- or are you familiar with a student named E█████ M█████?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

216

A      Yes, I am.

Q      How are you familiar with that student, or how did you become familiar with that student?

A      Well, E████ was a student here, I believe, my first year I believe he was here.

Q      So he started there in 2004?

A      Yes.  Well, I remember him from 2003. I was also the Assistant Principal here in 2003. So I did know him.  He was at Stanton and then he transferred to, I believe, OR and then he came back to Stanton.

Q      Okay.  Is E████ a special education student at your school?

A      Yes, he is.

Q      Have you been involved in the special education process for this student?

A      Mostly it's been my coordinator, Ms. Owens, but she left.  I'm somewhat familiar with it.

Q      Okay.  Were you involved in any of the meetings during this school year?

A      No.

Q      Okay.  Were you at the resolution meeting in November?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

217

A      No.  That meeting was conducted by Ms. Kelly and Mr. Jones.

Q      Okay.  To your knowledge, at this point, do you -- are you aware if a compensatory education plan has been offered to the parents in this --

A      I know that that was one of the things that were on the table along with, I believe, it was another placement on the table, too.

Q      And what placement was offered, sir? Or if not offered, what placement is being considered?

A      It was for 27 hours, okay.  It's placement for -- his IEP calls for 27 hours, which is almost -- you know, that's virtually impossible for us to handle it at Stanton.

Q      And have you -- do you know if a request for a new school has been discussed?

A      Yes.  That is in process.

Q      And do you know if a new school has been identified?

A      No.  No.

Q      Do you know if a invitation for a placement meeting was sent out?

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

218

A       If a notification for a placement -- as far as I know, that happened a month ago.

Q       No, no, no, a placement meeting to discuss with the parents, if a meeting invitation was sent out to discuss placement with the parents for December?

A       Yes, there was a notice sent out.

Q       I'm sorry, sir.  What?

A       I believe there was a notice sent out, sir.

Q       Do you know if -- what date that was -- they were being invited for?

A       God, it was in November.  No, sir.

Q       Do you know if that -- if parents accepted or denied that invitation for a placement meeting?

A       I believe they did come to the meeting, but I'm not 100 percent sure.

Q       No, sir.  I'm not talking about the resolution meeting in November.  I'm talking about actions taken after the resolution --

A       I don't think she accepted the placement.

Q       I'm asking, I guess, what has happened

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                      (202) 234-4433

219

after the resolution meeting in November, so this
would bring us to December.  Do you know if an
invitation was sent out in December for the parents
to come to your school and have a meeting?

      A    No, not at this time?

      MR. GUPTA:  Okay.  Thank you, sir.

      MR. GUPTA:  Ms. Dalton?

      MS. DALTON:  I have no questions.

      HEARING OFFICER BANKS:  Okay.  Thank
you very much.

      THE WITNESS:  All right.

      MR. GUPTA:  Thanks.

      HEARING OFFICER BANKS:  Okay.  Do you
have another witness, Mr. Gupta?

      MR. GUPTA:  No, I don't.

      HEARING OFFICER BANKS:  Okay.  Ms.
Dalton, would you like to close?

      MS. DALTON:  Yes, sir.  E████ N██████ is
a 12-year-old boy with a documented learning
disability.  He was initially evaluated and placed
in special education in 2004 when he attended Arts
& Technology, which is a public charter school.
Thereafter, his mother enrolled him in his
neighborhood school, which is Stanton Elementary

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C.  20005-3701    (202) 234-4433

220

School.  She enrolled him in the beginning of the
'04-'05 school year, September of '04.

At that time, Stanton was provided with
his current -- with his IEP that was current at
that time, which was dated March 17th '04.  That
IEP called for E█████ to receive five hours of
specialized instruction.  Also, Stanton would have
been provided with all of his records, including
the evaluation from the original assessment which
was done in 2004 that required -- or recommended --
an occupational therapy evaluation.  When E█████
began Stanton Elementary School, he began with that
IEP, and in March of '05 when his IEP was -- needed
to be reviewed, Stanton conducted an IEP meeting.
And that document is Parents Document Number 3.
That IEP is dated March 17th '05, and that would
have been his first IEP drafted by Stanton
Elementary School.

On the second page of the IEP, which is
EM03, you can see that the standard scores, present
levels of educational performance were simply taken
from the '04 evaluation.  This is a year later
after he had been in special education for a year,
and the team at Stanton didn't have any idea what

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

221

E████ current levels of functioning were when they drafted this IEP.  They merely copied standard scores that were a year old.  If Stanton had done some brief educational testing, they would have known his present levels of educational performance, and they would have known that E████ was not progressing.  But without doing any updated educational testing to obtain his present levels of educational performance, they simply drafted an IEP and provided 10 hours of specialized instruction.

And as you've heard from the testimony of the parent, Ms. Brown, she has testified that on numerous occasions, E████ did not receive his specialized instruction from a special education teacher because that teacher was pulled out of the classroom to assist with teachers that were not available in the other classrooms.  She's also testified that at no time since E████ has been at Stanton has he had any books that he brings home very, very little as far as homework that she's only seen xerox copies of pages for any type of instructional assistance that E████ has received.

For the '04-05 school year and the '05-'06 school year, E████ has been in an inappropriate

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

222

placement.  At a prior hearing determination, it was -- DCPS agreed to fund an independent psycho educational and independent OT evaluation and an independent adaptive Vineland assessment.  Those were completed and the psycho educational evaluation, as Dr. Booker testified, shows that from '04 to '06, there has not been any progress for E██████.  In fact, there has been serious regression.  If you compare the evaluations that were conducted, which is EM01 and EM06, you can Stanton Elementary that his standard scores have dropped 15 to 20 points in all areas, in math, in reading, and in spelling.

When the parent attended a MDT IEP meeting in September of this school year, the team finally, with the new evaluations, developed an IEP that required E██████ to receive his services in a full-time out of general education setting. Obviously, with the new information, they realized that he was seriously behind.  This is a sixth grade student who actually, by age, should be in the seventh grade, and in fact, is reading on a first grade level.  The adaptive Vineland ruled out any concern with regard to mental retardation.

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

223

Again, E████ is a student with serious learning disabilities.  Since September of '06, DCPS has been aware that E████ was in need of a full-time 100 percent out of general education and has not, to this date, issued a notice of placement for 100 percent out of general education placement. After the complaint was filed in October -- October 16th '06 which is EM12, DCPS had an opportunity to convene a resolution meeting.  They did not convene that meeting within the 15 day time requirement according to IDIA.  However, the parent agreed to attend the resolution meeting, even though it was outside of the 15 day time period.  When the parent and her counsel, as will be shown by the documents, EM16 -- let me back up a minute.

On his September 29th '06 IEP meeting, the meeting notes indicate that in addition to the evaluations that have already been completed, that a speech and language testing needed to be done, and that is number five -- listed number five on the meeting notes which are EM09.  However it stated that this testing will not hold up placement.  The team was very aware that his current educational placement was totally

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

224

inappropriate and that he needed to be moved quickly.

As I stated previously, that after the complaint was filed, when DCPS had not convened a placement meeting, they had an opportunity to convene a revolution meeting to, at that time, propose a placement. They did send a letter of invitation for a resolution meeting. That is EM14, and it was dated October 2nd, again, outside of the 15 day time requirement.

However, in EM15, which is dated November 3rd, and it's a letter from counsel to Stanton, counsel agreed, even though it was beyond the 15 day time period, to attend a resolution meeting and indicated, paragraph two (Reading.) "I noted on the letter of invitation that numerous purposes for the meeting were marked off that are not relevant to the complaint filed. Please note that the two issues in the complaint, one, DCPS's failure to propose an appropriate placement and two, DCPS's failure to determine a comp ed plan are the issues to be discussed at the resolution meeting." (End reading).

The resolution meeting was conducted on

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

225

November 13th, which is EM16, and at that meeting,
DCPS did propose a compensatory education plan, and
that is attached to the meeting notes.  It's toward
the back of the meeting notes, and it gave -- it
stated that DCPS would agree to provide 70 hours of
one-to-one tutoring for the time missed in
specialized instruction.

At the resolution meeting, the issue of
placement was raised by the parent.  However, the
team at that time indicated they were not prepared
to go forward with discussing placement and did not
propose a placement at that time.  And that's on
page 7 of 7 of the resolution meeting notes.  It
says, (Reading) "Summary and recommendations based
on the MDT, DCPS will look into a placement for
E██████.  DCPS is not prepared for a placement at
this time.  We will forward the placement packet.

Now his IEP was developed on September
6th.  On November 13th, DCPS was still not prepared
to propose a placement knowing that a  complaint
have been filed, knowing that it was essential
issue that he needed to be placed.  DCPS has
continued to fail to provide E█████ with an
appropriate public education from 2004 to the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

226

current time.  And for that, the parent is

requesting that DCPS be required to place E████ in

Accotink Academy, which is a full-time hundred

percent out of general education IEP that can

implement his IEP.  And the parent is also

requesting for the failure of DCPS to provide the

specialized instruction or an inappropriate IEP

that they drafted in March of '05 and the failure

to conduct an OT evaluation and the continued

failure to issue a notice of placement, that they

be required to provide compensatory education to

Enoch to make up for the passed missed services.

And this is to be -- to put E████,

hopefully, in a position he would have been in but

for the denial of FATE (phonetic).  The testimony

from Dr. Booker, who is the expert witness that the

parent called to testify, has testified under oath

that she reviewed the records, she has extensive

experience in special education, both as a teacher,

as a principal, and as program specialist and has

reviewed the information provided to her about the

regression that E████ has had in the last two

years.  And her testimony is that in order to, with

reasonable likelihood, place E████ in a position he

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

227

would have been in but for the missed services,

that he would require 633 hours of one-to-one

tutoring, and therefore the parent is requesting

that the Hearing Officer also order that DCPS be

required to provide 633 hours of tutoring, or in

the alternative, if DCPS fails to provide that 633

hours, to begin implementing those 633 hours within

a reasonable period of time, that the parent be

entitled to obtain an independent tutor at a rate

of $70.00 to provide the tutoring.

            HEARING OFFICER BANKS:  Okay.  Mr.

Gupta?

            MR. GUPTA:  Per our testimony, DCPS is

well aware that Stanton Elementary School was not

an appropriate placement, that DCPS did not sit on

its hands while -- once we found out that student

did need a hundred percent full-time placement.

That place -- that was determined at the 9/29/06

IEP meeting.  Since then, DCPS has sent in

paperwork, the site review, to find an appropriate

placement that can implement a hundred percent

learning disabled IEP.  That is evidenced by DCPS

02, which is the site review consideration plan.

            In regards to the 600 plus hours of

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433            WASHINGTON, D.C.  20005-3701            (202) 234-4433

228

comp ed requested here, or in the alternative, a
private tutor, DCPS obviously is against not only
the amount of comp ed but also the alternative
resolution of a independent tutor.  Ms. Warnke's
testimony showed us that, at best, two hours a day
after school plus five days a week of tutoring
which would equal ten days could be provided to the
student depending on -- that's depending on if the
student, right now, could handle two hours a day.
That is nearly impossible to implement, even if the
student stayed at Accotink through the -- through
graduation age.  That would take nearly five years
if -- and that's also withstanding the fact that
his actual every day schooling is not getting in
the way.

Secondly, the HOD in March 6 of '06
order -- allowed petitioners to get an independent
evaluation, and then DCPS was to hold a meeting
within 15 days of receipt of the last evaluation.
Those evaluations, per the complaint, state that --
weren't even given to DCPS until September 29th.
So DCPS cannot be held responsible for that roughly
six month period of not developing a new IEP,
because DCPS was awaiting the results of the

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C.  20005-3701        (202) 234-4433

229

evaluations ordered by the March HOD.

And lastly, in terms of just compensatory education, DCPS, in November, recognized there was a failing to provide the student with occupational therapy services and thus offered 70 hours of occupational therapy services to make up for the passed misgivings. But that plan was -- that offer was either rejected or -- apparently, it was rejected, because we didn't hear a word on it.

And in regards to speech and language, the speech and language evaluation wasn't even conducted until October of this year, so in the IEP meeting of September, they couldn't have developed -- incorporated speech and language into that IEP, because we were still awaiting the results of the exam.

Therefore, DCPS does not deny that Stanton was or is an inappropriate placement. But however, we, in order -- in efforts to mitigate that, we are in process of searching for an appropriate public placement for him and believe those results will be coming in soon. And secondly, we deny the excessive amount of

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          (202) 234-4433

230

compensatory education for reasons of one, it is
not implement able and two, it overstates the
alleged denial of FATE (phonetic) over the past two
years.  Thanks.

HEARING OFFICER BANKS:  Let me just
understand.  The 70 hours we've been talking about
that DC offered was for OT?

MR. GUPTA:  Yes.  That's my
understanding.

MS. DALTON:  It was for missed
instruction time and OT and actually, if you look
at the document, it says zero for OT because what
they proposed to us at the meeting is so many hours
for the missed specialized instruction and so many
hours for the OT.

HEARING OFFICER BANKS:  Okay.  Just
what document?  That's the resolution section?

MS. DALTON:  Yes.  It's Document Number
16, and it's toward the back of those meeting
notes.  It says, (reading) "Student will receive
one-to-one tutoring for time missed in specialized
instruction and zero hours of comp time and OT,
because we agreed that it was more important based
on his reading skill and math skills that he receive

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C.  20005-3701          (202) 234-4433

231

the specialized instruction rather than make up for

the OT, so we agreed that it could be all in

tutoring.  They considered his missed time and OT

and specialized instruction.

       HEARING OFFICER BANKS:  I'll look at the

notes.  You're testifying.  Thank you all very much.

       MR. GUPTA:  Thank you.

       (Whereupon, the foregoing matter was

concluded.)

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
WASHINGTON, D.C.  20005-3701
(202) 234-4433                                    (202) 234-4433

232