UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VANESSA BROWN, as parent and next friend of minor child E.M., et al.,

    Plaintiffs,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 07-0368 (JDB)

## MEMORANDUM OPINION

Plaintiffs E.M., a minor child, and his mother, Vanessa Brown, bring this action against the District of Columbia (the "District") pursuant to the Individuals with Disabilities Education Improvement Act, as amended, ("IDEIA"), 20 U.S.C. §§ 1400 et seq. Plaintiffs challenge a December 14, 2006 administrative decision rejecting their request for compensatory education for E.M. Currently before the Court are the parties' cross-motions for summary judgment. Upon careful consideration of the motions, the parties' memoranda, the administrative record, the applicable law, and the entire record, and for the reasons set forth below, the Court will grant in part and deny in part plaintiffs' motion for summary judgment, will deny defendant's cross-motion, and will remand the case to the hearing officer for further proceedings.

### BACKGROUND

**I.**    **Statutory and Regulatory Background**

Under the IDEIA, all states that receive federal educational assistance must establish policies and procedures to ensure that "a free appropriate public education ["FAPE"] is available

1

to all children with disabilities residing in the State . . . ." 20 U.S.C. § 1412(a)(1)(A). A FAPE is provided through the development and implementation of an Individualized Education Program ("IEP") for each such student. The IEP describes the student's present academic level, determines the student's educational goals, and sets out required educational and related services, including the extent of the student's participation in a regular classroom. 20 U.S.C. § 1414(d)(1)(A). A student's IEP is developed by a team that includes the student's parents, a regular education teacher, a special education teacher, a representative of the school district, an individual who can interpret evaluation results, personnel with particular knowledge of the student if applicable, and sometimes the student himself. 20 U.S.C. § 1414(d)(1)(B). An IEP team may also be referred to as a multi-disciplinary team. See generally Winkelman v. Parma City Sch. Dist., 550 U.S. ___, 127 S. Ct. 1994, 2000-01 (2007); T.T. v. Dist. of Columbia, 2007 WL 2111032, at *3 (D.D.C. July 23, 2007).

Before a State or local educational agency may commence the initial provision of special education services, it must first determine whether a student is a "child with a disability," i.e., a child with a listed disorder or "specific learning disabilities" who, "by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). The "child find" provisions of the Act require each state to have policies and procedures to ensure that "[a]ll children with disabilities residing in the State . . . who are in need of special education and related services, are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). Once a child has been referred to an IEP team for an eligibility determination, the IEP team must conduct an "initial evaluation." 20 U.S.C. § 1414(a)(1)(C)(i). Upon completion of the initial evaluation, the team either indicates the reasons a student is ineligible or, if eligibility is found, provides a recommendation for an IEP

to the parent. D.C. Mun. Regs. tit. 5, §§ 3006, 3007.

If a disabled student is denied special education services, he or she is entitled to compensatory education, "i.e., replacement of educational services the child should have received in the first place." Reid v. Dist. of Columbia, 401 F.3d 516, 518 (D.C. Cir. 2005); see also Walker v. Dist. of Columbia, 157 F. Supp. 2d 11, 30 (D.D.C. 2001). An award of compensatory education "should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA." Reid, 401 F.3d at 518.

A parent who disagrees with the eligibility determination, the IEP, or the general provision of a FAPE for the student has a right to a "due process hearing" before an impartial hearing officer, which shall be conducted by a State or local educational agency. 20 U.S.C. § 1415(f)(1). The hearing officer's determination ("HOD") is a final decision, and any party aggrieved by an HOD may challenge it in a civil action. 20 U.S.C. § 1415(i)(1), (2).

## II.    Factual Background

E.M., a twelve year-old student at the time of the current complaint, attended Stanton Elementary School in the District of Columbia. Pls.' Statement of Undisputed Facts ("Pls.' Stmt.") ¶ 1. E.M. had previously been found eligible for special education services and had been classified as Learning Disabled. Id. ¶ 2. On March 17, 2005, the District developed an IEP for E.M., which required ten hours of specialized instruction each week. Id. ¶ 3. On December 20, 2005, plaintiffs filed a due process complaint, alleging that the District had failed to:

1. conduct a comprehensive occupational therapy evaluation;
2. conduct an Adaptive Vineland Assessment;
3. conduct a comprehensive psycho-educational evaluation;
4. provide special education instruction and services while [E.M.] attended Orr Elementary School;

      5. implement an IEP which reflected [E.M.'s] OHI disability of ADHD;
      6. convene an IEP meeting on March 27, 2005; and
      7. develop an appropriate IEP for the 2004 and 2005 school years.

Id. ¶ 4; Administrative Record ("AR") at 72. A due process hearing was thereafter convened on February 17, 2006, and the parties reached a settlement on the allegations in the due process complaint. The hearing officer subsequently incorporated the parties' agreement into an HOD issued on March 6, 2006.[1] AR at 72. The HOD ordered the District to fund the evaluations requested by plaintiffs, and within fifteen days of receiving the last evaluation the District was ordered to "convene a meeting to review and revise [E.M.'s] IEP, discuss and determine placement, [and] discuss and determine whether compensatory education is warranted and develop a compensatory education plan if necessary." Id. at 73. The District was to then promptly issue a prior notice of placement for E.M. Id.

     After the psycho-educational and occupational therapy evaluations were completed, a multi-disciplinary team ("MDT") meeting was convened on September 29, 2006. Pls.' Stmt. ¶ 7. The team reviewed the evaluations and revised E.M.'s IEP to include full-time placement outside of general education classes, with twenty-seven hours a week of specialized instruction and one half hour a week of occupational therapy. Id.; AR at 97-102. According to the principal of Stanton Elementary School, Norman Brooks, it was "virtually impossible" for Stanton to provide these services as required by the revised IEP. AR at 218.

     On October 16, 2006, plaintiffs filed a due process complaint alleging: (1) that the District had denied E.M. a FAPE by failing to issue an appropriate placement for him and (2) that

---

[1] Although the HOD was issued on March 6, 2006, the parties refer to this HOD by the due process hearing date, February 17, 2006. The Court will therefore adopt the parties' convention.

the District had denied E.M. a FAPE "by failing to discuss and determine a compensatory education plan, as prescribed in the February 17, 2006 HOD." Id. at 110.  At the subsequently convened Resolution Meeting, the District admitted that it was not yet prepared to offer an appropriate placement for E.M, id. at 124, but the District did offer seventy hours of compensatory education in the form of one-on-one tutoring, id. at 123.  Brown, however, would not agree to the compensatory education proposal without first knowing how E.M. had been impacted by the lost services he was supposed to have been provided already.  Id.

      A due process hearing was held on December 12, 2006.  Pls.' Stmt. ¶ 11.  At the hearing, Brown argued that Stanton Elementary School had been an inappropriate placement for E.M. during his entire time at the school.  Dr. Ava Booker, an educational advocate, testified that E.M. had in fact regressed at Stanton between 2004 and 2006 based on the decline in his educational achievement scores.  AR at 168.  She further testified that in her opinion, if the student had been in a full-time placement since the development of his 2005 IEP, she would have expected six months of grade equivalence improvement, instead of the regression shown in the student's testing.  Id. at 172.  Dr. Booker therefore recommended E.M. be placed at Accotink Academy and be awarded 633 hours of tutorial services or a reading program to put him in the position he would have been in but for the District's denial of services.  Id. at 174.

      The District agreed that Stanton had been an inappropriate placement for E.M. and that he "may need a significant amount of compensatory education to bring him up to . . . his current levels or to provide for missed services in the past." Id. at 211.  The District, however, argued that plaintiffs' request of 633 hours of services was excessive and overstated "the alleged denial of [FAPE] over the past two years."  Id. at 231.  The District failed to present any witness to

testify on the issue of compensatory education but noted that the school system had previously offered an award of seventy hours of one-on-one tutoring.

In the hearing officer's December 14, 2006 HOD, he found that E.M.'s "educational achievement scores declined over the two year period between his 2004 and 2006 psychoeducational evaluations." Id. at 5. Regarding plaintiffs' first claim of an inappropriate placement, the hearing officer concluded that the District had denied E.M. a FAPE for the first four months of the 2006-2007 school year by failing to provide an appropriate placement for him in light of his revised IEP and Stanton Elementary School's inability to provide the necessary services. Id. at 4. The hearing officer concluded that based upon the evidence before him, Accotink Academy, a private school offering special education services for students aged 5 to 21, would be an appropriate placement to meet E.M.'s needs. Id. at 7. The hearing officer therefore ordered the District to issue an appropriate notice placing E.M. at Accotink. Id. The hearing officer also ordered the District to convene an MDT meeting at Accotink, on or before February 16, 2007, to "review all current assessments, review Petitioner's progress at Accotink, and update the IEP as necessary." Id.

Regarding plaintiffs' second claim, that the District denied E.M. a FAPE by failing to discuss and determine a compensatory education plan as prescribed in the February 17, 2006 HOD, id. at 110, the hearing officer first concluded that plaintiffs' counsel's opening statement "stipulated that the issue of non-compliance with an HOD was no longer at issue," id. at 3. The hearing officer further concluded that plaintiffs "did not allege in the Complaint that the 2005 IEP was inappropriate." Id. at 6. Thus, according to the hearing officer, he could not award compensatory education services dating back to IDEIA violations in the 2005-2006 school year.

Id. at 6.

Although the hearing officer concluded that E.M. was eligible for compensatory education for the District's failure to provide an appropriate placement for the first four months of the 2006-2007 school year, the hearing officer also declined to grant any award for this time frame. The hearing officer was critical of Dr. Booker's testimony, finding that her "formulation specifically violates the 'hour-for-hour' approach criticized in Reid" and that plaintiffs had therefore not met their burden of proof to justify an award of any specific amount. Id. at 5-6.

In the complaint before this Court, plaintiffs raise two main challenges to the December 14, 2006 HOD. First, they argue that the hearing officer erred in finding that compensatory education services dating back to 2005 were not at issue based upon counsel's alleged stipulation in her opening statement and based upon plaintiffs' failure properly to raise this issue in their due process complaint. Second, plaintiffs argue that the hearing officer erred in failing to order any amount of compensatory education services based upon the District's failure to provide E.M. with a FAPE for the first four months of the 2006-2007 school year. The District opposes plaintiffs' motion and has cross-moved for summary judgment, asserting that the hearing officer's determinations were correct and therefore the December 14, 2006 HOD should be affirmed.

## STANDARD OF REVIEW

Under the IDEIA, "[a]ny party aggrieved by the findings and decision" rendered during administrative proceedings may "bring a civil action" in state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415(i)(2), (i)(3)(A); 34 C.F.R. § 300.516(a). The reviewing court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of

the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); 34 C.F.R. § 300.516(c).  On review of an HOD, the burden of proof falls upon the party challenging the administrative determination, who must "'at least take on the burden of persuading the court that the hearing officer was wrong.'"  Reid, 401 F.3d at 521 (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1988)).

 The preponderance-of-the-evidence standard of review, the Supreme Court has held, does not authorize unfettered de novo review.  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206 (1982).  Rather, consideration of the record impliedly requires courts to give "due weight" to the administrative proceeding, id., and "[f]actual findings from the administrative proceeding are to be considered prima facie correct," S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003).  Therefore, courts may not substitute their own views for those of the hearing officer, see Rowley, 458 U.S. at 206; Shaw v. Dist. of Columbia, 238 F. Supp. 2d 127, 135 (D.D.C. 2002), and a court upsetting a hearing officer's decision "must at least explain its basis for doing so," Kerkam, 862 F.2d at 887.  At the same time, "the district court's authority to 'hear additional evidence at the request of a party,' and 'bas[e] its decision on the preponderance of the evidence' . . . 'plainly suggest[s] less deference than is conventional' in administrative proceedings."  Reid, 401 F.3d at 521 (quoting Kerkam, 862 F.2d at 887).  Where no additional evidence is introduced in a civil suit seeking review of an HOD, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record.  20 U.S.C. § 1415(i)(2)(C); Heather S. v. Wisconsin, 125 F.3d 1045, 1052 (7th Cir. 1997).

## DISCUSSION

I.  **Compensatory Education Based Upon the District's Violation of the February 17, 2006 HOD**

Plaintiffs argue that the hearing officer erred when he determined that the issue of compensatory education dating back to 2005 was not before him.  In reaching his conclusion, the hearing officer first claimed that plaintiffs' counsel had stipulated in her opening statement that this was no longer at issue.  AR at 4.  In fact, the transcript reveals that both parties waived opening statements at the due process hearing.  Id. at 181.  Thus, the hearing officer clearly erred in his reasoning, and his conclusion is not supported by any stipulation from plaintiffs' counsel.

In further support of his determination that services dating back to 2005 were not properly before him, the hearing officer contended that "Petitioner did not allege in the Complaint that the 2005 IEP was inappropriate." Id. at 7.  The District supports the hearing officer's conclusion in this regard and argues that in plaintiffs' due process complaint "there is no mention of the year 2005 at all." Def.'s Opp. at 6.  The District admits, however, that plaintiffs sought a determination that the District of Columbia Public Schools ("DCPS") "be required to discuss and determine a compensatory education plan for the period prescribed in the February 17, 2006 HOD," but argues that "the February 17, 2006 HOD did not specify any time frame which was to govern the amount of compensatory education the student was to receive." Id.  Thus, the District contends that plaintiffs "cannot now piggy-back onto that HOD a request for compensatory education for failures that may or may not have occurred in 2005." Id.

Upon a closer analysis of the February 17, 2006 HOD and its contents, the Court concludes that compensatory education services for the 2005 school year were properly at issue

9

before the hearing officer.  In the due process complaint preceding the February 17, 2006 HOD, plaintiffs had alleged, among other things, that the District failed to develop an appropriate IEP for E.M. for the 2004 and 2005 school years.  AR at 72.  Because the parties reached a settlement agreement, there was no administrative determination as to whether E.M. had been denied a FAPE within that time period.  Instead, the parties simply agreed and the hearing officer ordered, among other things, that the District would determine whether compensatory education was warranted and, if so, would develop an appropriate compensatory education plan for E.M.  Id. at 73.  When plaintiffs filed their October 17, 2006 due process complaint, they challenged the District's failure to develop an appropriate compensatory education plan as ordered by the hearing officer in the February 17, 2006 HOD.  The time frame for the compensatory education services could therefore only be for the period alleged in the corresponding due process complaint, and the corresponding due process complaint addressed the District's alleged failure to provide proper special education services in the 2004 and 2005 school years.

       This conclusion is further supported by the parties' conduct at the hearing.  At that time, no one argued that this issue was not properly raised.  In fact, all parties appeared to agree to the contrary.  The dispute was not as to whether compensatory education services could or should be awarded going back to 2004 and 2005; the dispute was simply over the proper amount to be awarded for this time period.  The District noted that E.M. "may need a significant amount of compensatory education to bring him up to . . . his current levels or to provide for missed services in the past," id. at 211, and explained that it had previously offered seventy hours of one-on-one tutoring, id. at 230.  The District simply argued that plaintiffs' request of 633 hours of services was excessive and "overstate[d] the alleged denial of [FAPE] over the past two years,"

i.e., from 2004-2006.  Id. at 231.

Nevertheless, the District now attempts to support the hearing officer's conclusion by arguing that even if the issue was properly before him, he correctly denied an award of compensatory education services for 2005 because Brown consented to E.M.'s 2005 IEP.  In the December 14, 2006 HOD, after the hearing officer concluded that the 2005 school year was not properly before him, he simply noted in passing that Brown had consented to the 2005 IEP and that a compensatory education award could not therefore be based on an argument that full-time special education services should have been awarded instead of just ten hours of specialized instruction each week.  Id. at 7.  Neither the hearing officer nor the District, however, cite any law to support the conclusion that Brown's signature on the 2005 IEP voids E.M.'s claim for compensatory education services.  Therefore, the hearing officer's passing reference to this fact does not alleviate the error in his determination that the 2005 school year was not properly before him.

Based upon plaintiffs' December 20, 2005 due process complaint, the February 17, 2006 HOD, and plaintiffs' October 16, 2006 due process complaint, the preponderance of the evidence establishes that plaintiffs properly raised a claim for compensatory education services going back to the 2004 and 2005 school years.  This finding is further supported by the conduct of all parties at the December 12, 2006 due process hearing.  "Because compensatory education is a remedy for past deficiencies in a student's educational program," a finding as to whether E.M. was denied a FAPE in the relevant time period is a "necessary prerequisite to a compensatory education award."  Peak v. Dist. of Columbia, 526 F. Supp. 2d 32, 36 (D.D.C. 2007).  Here, plaintiffs presented undisputed evidence that E.M.'s "educational achievement scores declined over the two

11

year period between his 2004 and 2006 psychoeducational evaluations" and that Stanton Elementary School had great difficulty meeting E.M.'s needs.  AR at 5.  The Court will therefore remand the case to the hearing officer to evaluate this evidence, to hold further proceedings to determine if E.M. was denied a FAPE in the 2004 and 2005 school years, and to determine an appropriate award of compensatory education services, if necessary.  See Peak, 526 F. Supp. 2d at 36 (remanding the case to the hearing officer "to determine in the first instance whether [the student] was denied a FAPE during the relevant time period (or any portion thereof) and, if so, to address plaintiff's request for compensatory education"); Anthony v. Dist. of Columbia, 463 F. Supp. 2d 37, 43 (D.D.C. 2006) (finding that the hearing officer erred in formulating a compensatory education award based only on the denial of services after 2003, where the plaintiffs had alleged the denial of a FAPE beginning in 1996, and remanding "the case so that the hearing officer can formulate an appropriate compensatory education award in light of any additional FAPE denials within the limitations period").

II.     **Compensatory Education Based Upon the District's Failure to Provide an Appropriate Placement for E.M.**

Plaintiffs next argue that the hearing officer erred when he failed to award any compensatory education services based upon the District's failure to provide an appropriate placement for E.M.  In September 2006, the multi-disciplinary team determined that E.M. required full-time special education placement outside of general education classes.  AR at 97-102.  The team therefore revised E.M.'s IEP to require full-time special education placement with twenty-seven hours a week of specialized instruction and one half hour a week of occupational therapy.  Id.  At the time of the due process hearing in December 2006, however, the District had

failed to provide a placement for E.M. in full-time special education classes. E.M. was left at Stanton Elementary School, where Brooks testified that E.M.'s needs could not be met, and E.M.'s academic achievement scores therefore continued to decline. Even the District concedes that it was "well aware that Stanton Elementary School was not an appropriate placement." Id. at 228. Based upon the evidence, then, the hearing officer concluded that the District denied E.M. a FAPE by failing to provide him with an appropriate placement for four months of the 2006-2007 school year. In light of the District's violation of IDEIA, the hearing officer further concluded that E.M. would be entitled to compensatory education if he met his burden of proof for establishing a specific amount of warranted services. Id. at 7.

In evaluating the evidence, the hearing officer determined that E.M. failed to satisfy his burden of proof based upon the D.C. Circuit's opinion in Reid v. Dist. of Columbia, 401 F.3d 516 (D.C. Cir. 2005). In Reid, the appellants requested a presumption that every student should be entitled to one hour of compensatory education for each hour he was denied a FAPE. Id. at 523. The D.C. Circuit rejected this proposal and explained that "this cookie-cutter approach runs counter to both the 'broad discretion' afforded by IDEA's remedial provision and the substantive FAPE standard that provision is meant to enforce." Id. Instead, the D.C. Circuit explained that a compensatory education award must be based upon a fact-specific individualized assessment of the student's needs. Id. at 524. "[T]o accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." Id.

At the due process hearing, Dr. Booker was the only witness to testify regarding the proper amount of compensatory education services that should be provided for E.M. Dr.

13

Booker's opinion was based upon her twenty-five years of experience as a special education teacher, principal, and administrator within the DCPS system; her review of E.M.'s psycho-educational evaluations; her observations of E.M. in class at Stanton Elementary School; and her observations of classes at Accotink. AR at 158, 160. Dr. Booker testified that in her opinion E.M.'s March 2005 IEP was inappropriate and E.M. should have been placed in a full-time special education program as of that date. Id. at 170. Dr. Booker testified that E.M. was denied "[s]pecialized instruction, occupational therapy, and speech and language [services] to address the language processing issues that he has." Id. at 172.

If E.M. had been placed in a full-time special education program at an earlier date, Dr. Booker testified, then E.M would have made at least six months growth instead of showing regression as he did for the past two years. Id. To put E.M. in the position he would have been in but for the District's denial of services, Dr. Booker testified that E.M. required a full-time specialized instruction program and 633 hours of compensatory education in the form of tutorial services or a reading program. Id. at 173-74. To reach the figure of 633 hours, Dr. Booker suggested that three hours of compensatory education were needed for each day that the District denied E.M. appropriate special education services. Id. at 174.

Looking at Dr. Booker's final calculation in an isolated fashion, the hearing officer concluded that her "formulation specifically violates the 'hour-for-hour' approach criticized in Reid." Id. at 7. However, this Court agrees with other opinions from this district, which have concluded that "[a] compensatory award constructed with the aid of a formula is not per se invalid." Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt, 532 F. Supp. 2d 121, 123 (D.D.C. 2008). "A formula-based award may in some circumstances be acceptable if it

represents an individually-tailored approach to meet a student's unique prospective needs, as opposed to a backwards-looking calculation of educational units denied to a student." Id.

For example, in Mary McLeod Bethune Day Academy Public Charter School v. Bland, the court upheld a hearing officer's compensatory education award even though the award reflected the exact number of service hours that the District had denied the student a FAPE. 2008 WL 2170594, at *4 (D.D.C. 2008). The court explained that the award did not violate the cookie-cutter approach rejected by Reid because the hearing officer crafted the award after reviewing the student's individual needs. Id. The hearing officer had reviewed the student's testing results and had heard testimony from an expert regarding the most appropriate course of action. The hearing officer had also considered the tutoring recommendations of the Sylvan Learning Center. Id. Thus, the court concluded that the hearing officer had properly "conducted a fact-specific inquiry" and had "tailored the award to [the student's] individual needs" to place the student in the position he would have been in but for the denial of a FAPE. Id.

Here, although Dr. Booker did rely in part on a calculation, she similarly offered an individually-tailored assessment of E.M. and his compensatory education needs. Dr. Booker testified about the District's shortcomings with regard to educating E.M. She explained how much progress E.M. would have been expected to make if the District had provided him with appropriate special education services, and she testified about what would be required to place E.M. in the position he would have been in had he not been denied appropriate services. However, Dr. Booker's testimony encompassed the total amount of compensatory education due E.M. for more than just the four-month start of the 2006-2007 school year. The hearing officer, therefore, was not satisfied with the recommendation of 633 hours, and he denied any award of

compensatory education services. In completely rejecting any award of compensatory education services in this manner, the hearing officer erred.

In Reid, when the D.C. Circuit rejected the student's cookie-cutter formula for compensatory education but determined that he was entitled "to an informed and reasonable exercise of discretion regarding what services he needs to elevate him to the position he would have occupied absent the school district's failures," the court remanded the matter for further proceedings. 401 F.3d at 527. The D.C. Circuit stated that on remand each party must have some opportunity to present evidence to aid in the computation of an appropriate compensatory education award. Id. at 526. As in Reid, E.M. was "[n]eglected by the school system charged with affording him free appropriate education," and he is similarly "entitled to compensatory instruction." Id. at 527. The Court will therefore remand the case back to the hearing officer for further testimony and evidence to determine an appropriate award of compensatory education for E.M. based upon the District's failure to provide an appropriate placement for four months of the 2006-2007 school year. See Thomas v. Dist. of Columbia, 407 F. Supp. 2d 102, 116 (D.D.C. 2005) (remanding "the case to the Hearing Officer for further proceedings to determine the amount of compensatory education required to give [the student] the benefits that would likely have accrued had he been given a FAPE").

## CONCLUSION

For the foregoing reasons, the Court finds that the hearing officer erred (1) in concluding that compensatory education services dating back to 2005 were not at issue and (2) in failing to order any amount of compensatory education services based upon the District's failure to provide E.M. with a FAPE for the first four months of the 2006-2007 school year. The Court will

therefore grant plaintiffs' motion for summary judgment in part and will deny the District's motion for summary judgment. The case will be remanded to the hearing officer for further proceedings to determine whether E.M. was denied a FAPE in the 2004 and 2005 school years, to determine an appropriate award of compensatory education services if necessary for any denial of a FAPE in that time period, and to determine an appropriate award of compensatory education services for the District's four-month denial of a FAPE in the 2006-2007 school year. A separate order accompanies this memorandum opinion.

                                                /s/ John D. Bates
                                                JOHN D. BATES
                                          United States District Judge

Date:  August 1, 2008